**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

**STANLEY GRISSOM,**

                          Plaintiff,

vs.                                   Case No. 6:09-cv-03244-SWH

**JAMES ARNOTT, et al.**

                        Defendants.

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# Table of Contents

Table of Contents ...........................................................................................................................1
Table of Authorities ......................................................................................................................1
Response to Defendants' Statement of Uncontroverted Material Facts ...............................3
Additional Uncontroverted Material Facts................................................................................27
Factual Summary............................................................................................................................50
Introduction ...................................................................................................................................51
Argument.........................................................................................................................................51
   Defendants are not entitled to judgment on Plaintiff's ADEA claim ............................51
      Direct Evidence of Defendants' Discrimination Supports Plaintiff's ADEA claim.................52
      Indirect Evidence of Defendants' Discrimination Supports Plaintiff's ADEA claim...............62
      Defendants are not entitled to summary judgment on Plaintiff's ADEA claim because
      Defendants' offered reasons for adverse employment action are pretextual ............................68
      Count II of Plaintiff's Second Amended Complaint should not be dismissed because it contains
      claims against defendants in their official capacities .................................................................79
      The allegations in Plaintiff's Second Amended Complaint do not preclude Defendants' liability
      under the ADEA because Plaintiff is entitled to plead alternative theories of liability ............80
Conclusion.......................................................................................................................................83

# Table of Authorities

## Cases

*Babcock & Wilson, Co. v. Parsson Corp.*, 430 F.2d 531 (8th Cir. 1970) ...................................81, 82
*Bryant v. Rankin*, 468 F.2d 510 (8th Cir. 1972)..............................................................................78
*Butts v. Aurora Health Care, Inc.*, 387 F.3d 921 (7th Cir. 2004) ....................................................3
*Castaneda v. Partida,* 430 U.S. 482 (1977) ...................................................................................53
*Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498 (10th Cir. 1996) .........................................75
*Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465 (8th Cir. 1984)............................................52, 54

*Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755 (8th Cir. 2005) ......................57
*Fast v. Southern Union Co., Inc.*, 149 F.3d 885 (8th Cir. 1998)....................................................51, 62
*Floyd v. State of Missouri Dept. of Social Services*, 188 F.3d 932 (8th Cir. 1999). ..........................69
*Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104 (8th Cir. 1993)...............................63, 64
*Griffith v. City of Des* Moines, 387 F.3d 733 (8th Cir. 2004) ..............................................................52
*Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343 (2009)............................................................80
*Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492 (8th Cir. 1990) ......................................68, 78
*Hazelwood School District v. United States*, 433 U.S. 299 (1977)....................................................53, 54
*Henry v. Daytop Village, Inc.*, 42 F.3d 89 (2nd Cir. 1994)...................................................................82
Hervey v. City of Little Rock, 599 F.Supp. 1524 (E.D. Ark. 1984) ......................................................54
*Id.*............................................................................................................................................................82
*Inmates of Nebraska Penal and Correctional Complex v. Greenholtz*, 567 F.2d 1368 8th Cir. 1977) ................................................................................................................................................54
*Int'l Broth. of Teamsters v. United States*, 431 U.S. 324 (1977)........................................................53
*Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847 (D. Minn. 1993)....................................................54
*MacDissi v. Valmont Industries, Inc.*, 856 F.2d 1054 (8th Cir. 1988) ...............................................69
*Matter of Interco Inc.*, 211 B.R. 667 (Bankr. E.D. Mo. 1997)............................................................75
*Mayer v. Nextel West Corp.*, 318 F.3d 803 (8th Cir. 2003) ................................................................69
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ..................................................................62
*Meyer v. Missouri State Hwy. Comm'n.*, 567 F.2d 804 (8th Cir. 1977)...............................................52
*Molsbergen v. U.S.*, 757 F.2d 1016 (9th Cir. 1985) ............................................................................82
*Morgan v. A.G. Edwards  & Sons, Inc.*, 486 F.3d 1034 (8th Cir. 2007)..............................................64
*Muldrew v. Anheuser-Busch, Inc.*, 728 F.2d 989 (8th Cir. 1984) .......................................................69
*Normand v. Research Inst. of America, Inc.*, 927 F.2d 857 (5th Cir.1991) ........................................75
*Ottaviani v. State Univ. of N.Y. at New Paltz*, 875 F.2d 365 (2nd Cir. 1989).................................53, 56
*Palmer v. Shultz*, 815 F.2d 84 (D.C. Cir. 1987) .............................................................................52, 53
*Paxton v. Desch Bldg. Block Co.*, 146 F. Supp. 32 (E.D. Pa. 1956) ...................................................82
*Paxton v. Union Nat. Bank*, 519 F.Supp. 136 (E.D. Ark. 1981) .........................................................54
*Rankin v. McPherson*, 483 U.S. 378 (1987)........................................................................................63
*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ......................................62, 63, 69
*Renfrow v. Sanborn Map Co., Inc.*, 2011 WL 1102834 (E.D. Mo. 2011) ...........................................81
*Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328 (8th Cir. 1996) ..........................................................69
*Roush v. KFC Nat. Mgt. Co.*, 10 F.3d 392 (6th Cir. 1993) .................................................................74
*Segar v. Smith*, 738 F.2d 1249 (D.C. Cir. 1984) .................................................................................52
*Spulak v. K Mart Corp.*, 894 F.2d 1150 (10th Cir. 1990) ...................................................................70
*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993) ....................................................................68
*Stewart v. Independent School Dist. No.* 196, 481 F.3d 1034 (8th Cir. 2007)....................................69
*Taylor v. Teletype Corp.*, 648 F.2d 1129 (8th Cir. 1981).....................................................................52
*Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29 (1944) .......................................................................78
*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981) ..................................................68
*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2010)....................................................62, 68
*Veatch v. Bartels Lutheran Home*, 627 F.3d 1254 (8th Cir. 2010) .....................................................80
*Walter v. KFGO Radio*, 518 F. Supp. 1309 (D.N.D. 1981) .................................................................52
*Webb v. Derwinski*, 868 F.Supp 1184 (E.D.Mo. 1994)........................................................................52
*Wierman v. Casey's General Store*, 638 F.3d 984 (8th Cir. 2011) ......................................................69

**Rules**

Fed. R. Civ. P. 8(d)(3) .............................................................................................................................80
Fed. R. Civ. Pro. 56(c)(1).........................................................................................................................3

Case 6:09-cv-03244-SWH   Document 103   Filed 11/08/11   Page 2 of 84

# Response to Defendants' Statement of Uncontroverted Material Facts[1]

1. James Arnott ("Sheriff Arnott") is the Sheriff of Greene County, Missouri, and has held that position since January of 2009. (Affidavit of James Arnott, Paragraphs 1 and 2)

   **Response**: Admit

2. After James Arnott became the Sheriff of Greene County, Missouri, he wanted the Greene County Sheriff's Department to operate at high standards. (Affidavit of James Arnott, Paragraph 3)

   **Response**: Admit

3. When he became the Sheriff of Greene County, Missouri, Sheriff Arnott instructed the supervisors of the employees of the Greene County Sheriff's Office to keep track of the performance of the employees they supervise. (Affidavit of James Arnott, Paragraph 4)

   **Response**: Admit.

4. James Jenkins is a Shift Lieutenant with the Greene County Sheriff's Department and was a supervisor of Stanley Grissom. (Affidavit of James Jenkins, Paragraph 1)

   **Response**: Admit

5. Jeff Coonrod ("Captain Coonrod") is a Captain with the Greene County Sheriff's Department. (Affidavit of Jeff Coonrod, Paragraph 1)

   **Response**: Admit

6. Jeff Coonrod is responsible for the jail operations. (Affidavit of Jeff Coonrod, Paragraph 2)

   **Response**: Admit

---

[1] Rule 56(c)(1) requires that a party asserting that a fact is genuinely disputed support the assertion by "citing to particular parts of materials in the record." Fed. R. Civ. Pro. 56(c)(1). Notably, the vast majority of the facts outlined in Defendants' statement of uncontroverted facts are supported by affidavits executed by Defendants. "Self-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004).

7. Kenneth Clayton ("Captain Clayton") is a Captain with the Greene County Sheriff's Department. (Affidavit of Kenneth Clayton, Paragraph 1)

   **Response**: Admit

8. Stanley Grissom began working for the Greene County Sheriff's Department in April of 2002 as a corrections officer. (Affidavit of James Arnott, Paragraph *5)*

   **Response**: Admit.

9. In June of 2006 Stanley Grissom was promoted to the position of Corrections Officer IV (Corporal). (Affidavit of James Arnott, Paragraph 6)

   **Response**: Admit.

10. In January of 2009, Lieutenant Jenkins, a Supervisor of Stanley Grissom, had attitude and performance issues with Stanley Grissom. (Affidavit of James Jenkins, Paragraph 1 and 2)

    **Response**: Deny. Exhibit 1, Affidavit of Stanley Grissom. ¶ 41

11. On January 4, 2009, there was a belief that Stanley Grissom was calling in sick if a fellow corporal by the name of William Friend was the acting housing sergeant. (Affidavit of James Jenkins, Paragraph 3 and Exhibit B)

    **Response**: Plaintiff cannot admit or deny what Defendant Jenkins believed or did not believe as to whether or not Plaintiff was calling in sick if William Friend was the acting housing sergeant. Plaintiff denies that he was, in fact, calling in sick if William Friend was the acting housing sergeant. Exhibit 2, Plaintiff's performance log, p. 00088, 1/4/09 entry.

12. On January 28, 2009, Lieutenant Jenkins spoke with Stanley Grissom about singling out individuals who were violating rules as opposed to locking down an entire pod. (Affidavit of James Jenkins, Paragraph 4 and Exhibit B)

    **Response**: Admit. However, Plaintiff strongly asserts that he was required to lock down the entire pod due to officer safety and security. Exhibit 1, Affidavit of Stanley Grissom, ¶ 19.

13. On March 27, 2009, Stanley Grissom requested to work in release. Lieutenant Jenkins informed Stanley Grissom that he would need to show more motivation and pay better attention to detail in order to be considered for the opportunity to work in release. (Affidavit of James Jenkins, Paragraph 5 and Exhibit B)

    **Response**: Admit.

14. On that same date, it was noted that while Stanley Grissom was on duty, the multipurpose door was open and two inmates were doing push ups near the officer's desk. (Affidavit of James Jenkins, Paragraph 6 and Exhibit B)

    **Response**: Plaintiff admits that such a notation was made in a secret computer document log; however, Plaintiff denies that the multipurpose door was open and two inmates were doing push ups near the officer's desk. Exhibit 1, Affidavit of Stanley Grissom, ¶ 44.

15. On March 28, 2009, Sergeant Smith and Lieutenant Jenkins had a meeting with Stanley Grissom. In that meeting, Sergeant Smith explained the job requirements for release and further explained to Stanley Grissom that the job was very detail oriented and required extreme multi-tasking skills. (Affidavit of James Jenkins, Paragraph 7 and Exhibit B)

    **Response**: Admit.

16. Lieutenant Jenkins also informed Stanley Grissom that he had heard him make the statement that if he did not get put into booking, he would go up front and complain to administration. Lieutenant Jenkins explained to Stanley Grissom that he could go to administration if he wished. (Affidavit of James Jenkins, Paragraph 8 and Exhibit B)

    **Response**: Admit.

17. Lieutenant Jenkins also explained to Stanley Grissom that he would like to see Stanley Grissom exercise more self-motivation in his job performance and that he should inspire and not conspire as an officer and a corporal. Lieutenant Jenkins explained to Stanley Grissom

that his name often came up in rumors being started. (Affidavit of James Jenkins, Paragraph 9 and Exhibit B)

**Response**: Plaintiff admits that Defendant Jenkins made these statements in the context of Plaintiff's qualifications to work in booking and release, not in the context of his overall job performance. Exhibit 1, Affidavit of Stanley Grissom ¶ 45; Exhibit 2, Plaintiff's performance log, p. 00088, 3/28/09 entry. Plaintiff also denies that he conspired or started rumors at any time during his employment at the Greene County Jail. Exhibit 3, Deposition of Jeff Coonrod 84:8-10, Exhibit 1, Affidavit of Stanley Grissom, ¶ 46.

18. In the meeting of March 28, 2009, Lieutenant Jenkins gave Stanley Grissom a list of items to improve upon including: 1) improving the quality of reports, spelling and proper words; 2) using proper forms for reports such as incidents and memos; 3) paying attention to detail in daily rosters and reports; 4) using more proactive performance in the pods and not simply staying behind the desk while other pod officers make all the rounds, pass out mail, etc. (Affidavit of James Jenkins, Paragraph 10 Exhibit B)

**Response**: Plaintiff admits that Defendant Jenkins made these statements in the context of Plaintiff's qualifications to work in booking and release, not in the context of his overall job performance. Exhibit 1, Affidavit of Stanley Grissom, ¶ 45.

19. In the meeting on March 28, 2009, Stanley Grissom did not admit that he was doing anything wrong, even though Lieutenant Jenkins gave him examples of his poor attitude and performance. (Affidavit of James Jenkins, Paragraph 11 and Exhibit B)

**Response**: Plaintiff admits that he did not admit that he was doing anything wrong and that Defendant Jenkins offered examples of poor attitude and performance. Plaintiff denies that he, in fact, had a poor attitude or that his performance was in any way deficient. Exhibit 4,

Deposition of James Jenkins, 14:1-5; Exhibit 3, Deposition of Jeff Coonrod 26:6-27:1, 33:19-24; 84:8-10; Exhibit 1, Affidavit of Stanley Grissom, ¶ 49.

20. On May 10, 2009, Sergeant Smith, Sergeant Canter and Lieutenant Jenkins spoke with officers assigned to work with Stanley Grissom to see how Stanley Grissom had improved since the discussion with him on March 28, 2009. (Affidavit of James Jenkins, Paragraph 12 Exhibit B)

**Response**: Admit.

21. The officers to which Lieutenant Jenkins and others spoke informed them that Stanley Grissom was disgruntled and that they did not feel safe and considered him a liability when they were assigned to work with him. (Affidavit of James Jenkins, Paragraph 13 and Exhibit B)

**Response**: Plaintiff objects to this statement of fact in that it contains hearsay statements of individuals, offered for the truth of the matters asserted. These individuals did not offer any sworn affidavits. Plaintiff has no way to admit or deny what these individuals did or did not tell Jenkins. Plaintiff denies that he was, in fact, disgruntled, dangerous, or a liability to other jail employees. Exhibit 4, Deposition of James Jenkins, 14:1-5, 75:21-24; Exhibit 3, Deposition of Jeff Coonrod 26:6-27:1, 33:19-24; Exhibit 1, Affidavit of Stanley Grissom, ¶¶ 50-51; Exhibit 2, Plaintiff's performance log, which contains no entries suggesting that Plaintiff was disgruntled, dangerous, or a liability to other jail employees..

22. The officers informed Lieutenant Jenkins that Stanley Grissom did not perform security rounds, did not go to the top tier, and avoided writing reports. (Affidavit of James Jenkins, Paragraph 14 and Exhibit B)

**Response**: Plaintiff objects to this statement of fact in that it contains hearsay statements of individuals, offered for the truth of the matters asserted. These individuals did not offer any

sworn affidavits. Plaintiff has no way to admit or deny what these individuals did or did not tell Jenkins. Plaintiff expressly denies that he did not perform security rounds, did not go to the top tier, and avoided writing reports. Exhibit 1, Affidavit of Stanley Grissom ¶ 52; Exhibit 4, Deposition of James Jenkins, 39:21-40:4; Exhibit 3, Deposition of Jeff Coonrod, 152:6-9, 179:14-21.

23. The officers further informed Lieutenant Jenkins that Stanley Grissom did not perform at the level of a corporal, did not display leadership qualities expected of a corporal, and felt that others were more deserving of the rank. (Affidavit of James Jenkins, Paragraph 15 Exhibit B)

**Response**: Plaintiff objects to this statement of fact in that it contains hearsay statements of individuals, offered for the truth of the matters asserted. These individuals did not offer any sworn affidavits. Plaintiff has no way to admit or deny what these individuals did or did not tell Jenkins. Plaintiff denies that he did not perform at the level of a corporal, did not display leadership qualities expected of a corporal, and felt that others were more deserving of the rank. Exhibit 1, Affidavit of Stanley Grissom ¶¶ 52-53; Exhibit 3, Deposition of Jeff Coonrod 19:11-23.

24. After meeting with the officers and determining that Stanley Grissom had not improved since the conference with him on March 28, 2009, a Counseling Report was prepared for Stanley Grissom. A copy of that Counseling Report is attached to Lieutenant Jenkins' Affidavit as Exhibit "A" and incorporated herein by reference. (Affidavit of James Jenkins, Paragraph 16 and Exhibit A)

**Response**: This report speaks for itself. Plaintiff denies that any improvement in his job performance as suggested during the March 28, 2009 conference was necessary and further denies that his job performance did not objectively improve. Exhibit 1, Affidavit of Stanley

Grissom ¶¶ 52-55; Exhibit 3, Deposition of Jeff Coonrod 83:10-14, 84:8-10, 130:3-9; Exhibit 4, Deposition of James Jenkins 75:21-24, 39:21-40:4; Exhibit 5, May 10, 2009 Counseling Report Plaintiff admits all other factual statements contained in paragraph 24.

25. The Counseling Report was given to Stanley Grissom and he signed the same on May 20, 2009. (Affidavit of James Jenkins, Paragraph 17 and Exhibit A)

    **Response**: Admit

26. Stanley Grissom did not make any comments on the Counseling Report. (Affidavit of James Jenkins, Paragraph 18 and Exhibit A)

    **Response**: Admit that Stanley Grissom did not make any written comments on the Counseling Report. Plaintiff denies that he didn't make any verbal comments regarding the Counseling Repot. Exhibit 1, Affidavit of Stanley Grissom, ¶ 56.

27. In May of 2009 Major Spaulding recommended to Sheriff Arnott that Stanley Grissom be demoted. (Affidavit of Kevin Spaulding, Paragraphs 2 and 3 and Exhibit A attached to the Affidavit of James Arnott)

    **Response**: Admit.

28. Based on the recommendation of Major Kevin Spaulding, Sheriff Arnott demoted Stanley Grissom from a Corrections Officer IV (Corporal) to a Corrections Officer III. (Affidavit of James Arnott, Paragraphs 7, 8, 9 and 10 and Exhibit A attached to the Affidavit of

    James Arnott)

    **Response**: Admit.

29. After Stanley Grissom was provided the Counseling Report his performance and attitude was monitored but his performance and attitude did not improve. (Affidavit of James Jenkins, Paragraph 19)

**Response**: Deny. Defendants cite to no objective facts to support this naked allegation. Jenkins' affidavit is conclusory and self-serving on this point. Furthermore, to the extent that Jenkins cites his conclusions that Plaintiff's performance and attitude DID NOT improve, Plaintiff cites to his affidavit wherein he states that his performance and attitude DID IN FACT IMPROVE. Exhibit 1, Affidavit of Stanley Grissom, ¶ 55.

30. On May 22, 2009, Stanley Grissom was asked how things were going but Grissom just stared and failed to give a response. (Affidavit of James Jenkins, Paragraph 21 and Exhibit B attached to Affidavit of James Jenkins)

**Response**: Deny. Exhibit 1, Affidavit of Stanley Grissom, ¶ 57.

31. On June 1, 2009 and June 2, 2009, Stanley Grissom failed to properly complete inspection forms. (Affidavit of James Jenkins, Paragraph 22 and Exhibit B)

**Response**: Deny. Exhibit 1, Affidavit of Stanley Grissom, ¶ 58. Further answering, Defendants have produced no reports prepared by Plaintiff that show mistakes in his report-writing. Exhibit 3, Deposition of Jeff Coonrod 179:14-21. Therefore, the only evidence of an incomplete inspection form is found in the affidavit of James Jenkins, which Plaintiff denies as being true. Exhibit 1, Affidavit of Stanley Grissom, ¶ 60.

32. On June 4, 2009, an inmate requested grievances for the way that Stanley Grissom had spoken to the inmate. (Affidavit of James Jenkins, Paragraph 23 and Exhibit B)

**Response**: Plaintiff admits that an inmate requested a grievance form. Plaintiff denies that the inmate's grievance had any merit and further states that he followed his training in issuing grievances in this instance. Exhibit 1, Affidavit of Stanley Grissom, ¶ 59.

33. On June 4, 2009, Officer Grissom was asked why it was that there were only problems when Stanley Grissom was working, and Grissom simply sat and looked at the sergeant without replying. (Affidavit of James Jenkins, Paragraph 24 and Exhibit B)

**Response**: Admit. Defendant denies that his failure to respond to the sergeant constituted a violation of the jail's policies and procedures sufficient to justify his termination. Exhibit 3, Deposition of Jeff Coonrod 19:11-23. Further answering, the sergeant's question was akin to, "When did you stop beating your wife." In order to answer it, Grissom would have to have agreed with his premise that there were problems when Grissom was working.

34. On June 5, 2009, Lieutenant Howell noted in the Performance Log of Stanley Grissom that Stanley Grissom had to be informed of the proper procedure for moving an inmate including noting the move in the computer. (Affidavit of James Jenkins, Paragraph 25 and Exhibit B).

**Response**: Plaintiff admits that Lieutenant Howell noted in the secret computer document of Stanley Grissom that Stanley Grissom had to be informed of the proper procedure for moving an inmate including noting the move in the computer. Plaintiff denies that he needed to be informed of the proper procedure for moving an inmate. Exhibit 1, Affidavit of Stanley Grissom, ¶ 1.

35. On June 7, 2009, Lieutenant Jenkins noted that the daily log reports were incomplete including the fact that the reports did not have the date recorded at the top and that entries cut off at 1700 hours although the shift lasted until 1900 hours. (Affidavit of James Jenkins, Paragraph 26 and Exhibit B)

**Response**: Plaintiff admits that Lieutenant Jenkins noted that the daily log reports were incomplete including the fact that the reports did not have the date recorded at the top and that entries cut off at 1700 hours although the shift lasted until 1900 hours. Plaintiff denies that the daily log reports were incomplete. Exhibit 3, Deposition of Jeff Coonrod 179:14-21l; Exhibit 1, Affidavit of Stanley Grissom, ¶ 1. Further answering, Defendants have produced no reports prepared by Plaintiff that show mistakes in his report-writing. Exhibit 3, Deposition of Jeff Coonrod 179:14-21.

Therefore, the only evidence of an incomplete inspection form is found in the affidavit of James Jenkins, which Plaintiff denies as being true. Exhibit 1, Affidavit of Stanley Grissom, ¶ 60.

36. On June 10, 2009, Sergeant Wallace spoke with Officer Grissom about his incomplete log report of June 7, 2009. Stanley Grissom did not admit having any problems but claimed that somebody must be "f****** with him" and removing items from his log to get him fired. (Affidavit of James Jenkins, Paragraph 27 and Exhibit B)

**Response**: Admit. Further answering, Defendants have produced no reports prepared by Plaintiff that show mistakes in his report-writing. Exhibit 3, Deposition of Jeff Coonrod 179:14-21. Therefore, the only evidence of an incomplete inspection form is found in the affidavit of James Jenkins, which Plaintiff denies as being true. Exhibit 1, Affidavit of Stanley Grissom, ¶ 60.

37. On June 10, 2009, Sergeant Wallace discussed with Stanley Grissom the fact that there were inmates sitting in chairs in the rec yard. Sergeant Wallace asked Stanley Grissom why the inmates had chairs in the rec yard and Stanley Grissom replied "I don't know. I guess they must have snuck them out there when I wasn't looking." At that time, Stanley Grissom got up and told the inmates to return the chairs to the day room. (Affidavit of James Jenkins, Paragraph 28 and Exhibit B)

**Response**: Admit.

38. On June 15, 2009, Sergeant Canter informed Lieutenant Jenkins that Grissom had failed to put the date or the name of the inspecting officers on certain pod inspection reports. (Affidavit of James Jenkins, Paragraph 29 and Exhibit B)

**Response**: Plaintiff admits that Sergeant Canter informed Defendant Jenkins that Plaintiff had failed to put the date or the name of the inspecting officers on certain pod inspection reports. Plaintiff denies that he did, in fact, fail to put the date or the name of the inspecting

officers on certain pod inspection reports. Exhibit 1, Affidavit of Stanley Grissom, ¶ 3; Exhibit 3, Deposition of Jeff Coonrod, 152:6-9, 179:14-21. Further answering, Defendants have produced no reports prepared by Plaintiff that show mistakes in his report-writing. Exhibit 3, Deposition of Jeff Coonrod 179:14-21. Therefore, the only evidence of an incomplete inspection form is found in the affidavit of James Jenkins, which Plaintiff denies as being true. Exhibit 1, Affidavit of Stanley Grissom, ¶ 60.

39. On June 16, 2009, Major Spaulding recommended to Sheriff Arnott that Stanley Grissom be terminated. (Affidavit of Kevin Spaulding, Paragraph 4 and Exhibit B attached to the Affidavit of Kevin Spaulding)

**Response**: Admit. Further answering, Plaintiff states that Plaintiff's performance log in which it was noted that Plaintiff felt he was being discriminated against based upon his age was included in the packet of documents attached to the termination recommendation. Exhibit 6, June 16, 2009 memorandum from Major Spaulding to Defendant Arnott; Exhibit 2, Plaintiff's performance log, p.00092, 6/11/09 entry. Further responding, Plaintiff states that the Sheriff read the entire document presented by Spaulding. Exhibit 7, Deposition of Defendant Arnott 14:7-13. Further answering, Plaintiff states that the Sheriff failed to investigate Plaintiff's age claims. Exhibit 1, Affidavit of Stanley Grissom, ¶ 61.

40. On June 16, 2009, Sheriff Arnott made the final decision to terminate Stanley Grissom and terminated Stanley Grissom. (Affidavit of James Arnott, Paragraphs 11 and 12)

**Response**: Admit.

41. Sheriff Arnott based his decision to terminate Stanley Grissom on the recommendation of Major Kevin Spaulding as set forth in the Memorandum of Major Spaulding. (Affidavit of James Arnott, Paragraphs 13 and 14 and Exhibit B attached to James Arnott's Affidavit)

**Response**: Admit.

42. Plaintiff Stanley Grissom admits that his logs were incomplete. (Exhibit 2, Deposition of Stanley Grissom, p. 30, 1.23-25, p. 31, 1.1-6).

**Response**: Plaintiff admits that the logs were incomplete but notified his supervisor that the logs were incomplete because other jail employees were gaining unauthorized access to his forms and changing them in an effort to get them fired.  Exhibit 2, Plaintiff's performance log, p. 00092, 6/10/09 entry; Exhibit 4, Deposition of James Jenkins, 46:23-47:6. Despite Plaintiff's notifying his supervisors that jail records were being falsified and changed, no investigation was instituted, although Major Spaulding conceded this felonious conduct should have been investigated. Exhibit 8, Deposition of Kevin Spaulding 116:25-119:7; Exhibit 4, Deposition of James Jenkins 47:13-50:22.

43. Plaintiff Stanley Grissom admits that he was "disgruntled or pissed off" in 2009. (Exhibit 2, Deposition of Stanley Grissom, p.42, 1.21-25, p.43, 1.1)

**Response**: Plaintiff admits that he was disgruntled or pissed off in 2009 because of the discriminatory manner in which Defendants treated him. Exhibit 1, Affidavit of Stanley Grissom, ¶ 51.

44. Plaintiff claims that in February of 2009 he observed a Greene County Sheriff Deputy abusing and/or mistreating a Greene County Jail prisoner in a cell while the prisoner was restrained. (Exhibit 1, Plaintiff's Second Amended Complaint, Paragraph 12)
**Response**: Admit.

45. Plaintiff alleges that he made it clear to his colleagues and superiors that he would not go along with any inmate abuse or mistreatment and that he was retaliated against for his actions. (Exhibit 1, Plaintiff's Second Amended Complaint, Paragraph 13-20)
**Response**: Admit.

46. The only way Plaintiff made it clear to his colleagues and superiors that he would not go along with inmate abuse or mistreatment was by shaking his head. (Exhibit 2, Deposition of Stanley Grissom, p.76, 1.13-25, p.77, 1.1)

**Response**: Admit.

47. That after allegedly seeing the abuse and/or mistreatment, Plaintiff made a report. (Exhibit 2, Deposition of Stanley Grissom, p.77, 1.8-9)

**Response**: Admit.

48. In his report, Stanley Grissom failed to make it clear to his colleagues and superiors that he would not go along with any inmate abuse or mistreatment. (Exhibit 2, Deposition of Stanley Grissom, p.77, 1.10-13)

**Response**: Admit. However, based upon his experience, Plaintiff knew that if he reported misconduct in his report, Jenkins would have taken steps to have me fired. Exhibit 1, Affidavit of Stanley Grissom, ¶ 62.

49. Defendants have stipulated that Plaintiff does not need to respond to facts numbered 49-75 in their statement of uncontroverted material facts.

76. Captain Coonrod did not recommend that Stanley Grissom be counseled because he allegedly shook his head or voiced concern about the treatment of an inmate. (Affidavit of Jeff Coonrod, Paragraph 7)

**Response**: Deny. Exhibit 1, Affidavit of Stanley Grissom, ¶¶ 63, 65; Defendant Coonrod based his decisions upon information he received from the chain of command below him, said information being tainted by the bias and prejudice and retaliatory motives of the individuals below Coonrod who were present at the incident involving the abuse of inmate Mansfield and knew the tenor and import of Plaintiff's head shaking while the abuse was occurring. Therefore, Coonrod's decision was connected to the Mansfield event.

77. Captain Coonrod did not recommend that Stanley Grissom be demoted because he allegedly shook his head or voiced concern about the treatment of an inmate. (Affidavit of Jeff Coonrod, Paragraph 8)

**Response**: Deny. Exhibit 1, Affidavit of Stanley Grissom, ¶¶ 63, 65; Defendant Coonrod based his decisions upon information he received from the chain of command below him, said information being tainted by the bias and prejudice and retaliatory motives of the individuals below Coonrod who were present at the incident involving the abuse of inmate Mansfield and knew the tenor and import of Plaintiff's head shaking while the abuse was occurring. Therefore, Coonrod's decision was connected to the Mansfield event.

78. Captain Coonrod did not recommend that Stanley Grissom be terminated because he allegedly shook his head or voiced concern about the treatment of an inmate. (Affidavit of Jeff Coonrod, Paragraph 9)

**Response**: Deny. Exhibit 1, Affidavit of Stanley Grissom, ¶¶ 63, 65; Defendant Coonrod based his decisions upon information he received from the chain of command below him, said information being tainted by the bias and prejudice and retaliatory motives of the individuals below Coonrod who were present at the incident involving the abuse of inmate Mansfield and knew the tenor and import of Plaintiff's head shaking while the abuse was occurring. Therefore, Coonrod's decision was connected to the Mansfield event.

79. Defendants have stipulated that that Plaintiff does not need to respond to facts numbered 79-87 in their statement of uncontroverted material facts.

88. Captain Clayton did not recommend that Stanley Grissom be terminated because he shook his head or voiced concern about the treatment of an inmate. (Affidavit of Kenneth Clayton, Paragraph 8)

**Response**: Deny. Exhibit 1, Affidavit of Stanley Grissom, ¶¶ 63, 65; Captain Clayton based his decisions upon information he received from the chain of command below him, said information being tainted by the bias and prejudice and retaliatory motives of the individuals below Clayton who were present at the incident involving the abuse of inmate Mansfield and knew the tenor and import of Plaintiff's head shaking while the abuse was occurring. Therefore, Clayton's decision was connected to the Mansfield event.

89. Defendants have stipulated that that Plaintiff does not need to respond to facts numbered 89-91 in their statement of uncontroverted material facts.

92. Prior to making the recommendation that Stanley Grissom be demoted, Kevin Spaulding was not aware that Stanley Grissom had allegedly shook his head or otherwise expressed concern that an inmate was being abused and/or mistreated. (Affidavit of Kevin Spaulding, Paragraph 6)

**Response**: Deny. Exhibit 1, Affidavit of Stanley Grissom, ¶¶ 63, 65; Spaulding based his decisions upon information he received from the chain of command below him, said information being tainted by the bias and prejudice and retaliatory motives of the individuals below Spaulding who were present at the incident involving the abuse of inmate Mansfield and knew the tenor and import of Plaintiff's head shaking while the abuse was occurring. Therefore, Spaulding's decision was connected to the Mansfield event. Exhibit 8, Deposition of Major Spaulding 73:2-14; Exhibit 3 Deposition of Defendant Coonrod 49:3-17.

93. Prior to making his recommendation that Stanley Grissom be terminated, Major Spaulding was not aware that Stanley Grissom had allegedly shook his head or otherwise expressed concern that an inmate was being abused and/or mistreated. (Affidavit of Kevin Spaulding, Paragraph 7)

**Response**: Deny. Exhibit 1, Affidavit of Stanley Grissom, ¶¶ 63, 65. Spaulding based his decisions upon information he received from the chain of command below him, said information being tainted by the bias and prejudice and retaliatory motives of the individuals below Spaulding who were present at the Mansfield event and knew the tenor and import of Plaintiff's head shaking while the abuse was occurring. Therefore, Spaulding's decision was connected to the Mansfield event. Exhibit 8, Deposition of Major Spaulding 73:2-14; Exhibit 3 Deposition of Defendant Coonrod 49:3-17.

94. Major Spaulding did not recommend that Stanley Grissom be counseled because Stanley Grissom shook his head or voiced concern about the treatment of an inmate. (Affidavit of Kevin Spaulding, Paragraph 8)

**Response**: Admit. However, Spaulding based his decisions upon information he received from the chain of command below him, said information being tainted by the bias and prejudice and retaliatory motives of the individuals below Spaulding who were present at the Mansfield event and knew the tenor and import of Plaintiff's head shaking while the abuse was occurring. Therefore, Spaulding's decision was connected to the Mansfield event. Exhibit 8, Deposition of Major Spaulding 73:2-14; Exhibit 3 Deposition of Defendant Coonrod 49:3-17.

95. Major Spaulding did not recommend that Stanley Grissom be demoted because Stanley Grissom shook his head or voiced concern about the treatment of an inmate. (Affidavit of Kevin Spaulding, Paragraph 9)

**Response**: Deny. Exhibit 1, Affidavit of Stanley Grissom, ¶¶ 63, 65. Major Spaulding based his decisions upon information he received from the chain of command below him, said information being tainted by the bias and prejudice and retaliatory motives of the individuals below Spaulding who were present at the Mansfield event and knew the tenor and import of Plaintiff's head shaking while the abuse was occurring. Therefore, Spaulding's decision was

connected to the Mansfield event. Exhibit 8, Deposition of Major Spaulding 73:2-14; Exhibit 3 Deposition of Defendant Coonrod 49:3-17.

96. Major Spaulding did not recommend that Stanley Grissom be terminated because Stanley Grissom shook his head or voiced concern about the treatment of an inmate. Affidavit of Kevin Spaulding, Paragraph 10)

**Response**: Admit. However, Spaulding based his decisions upon information he received from the chain of command below him, said information being tainted by the bias and prejudice and retaliatory motives of the individuals below Spaulding who were present at the Mansfield event and knew the tenor and import of Plaintiff's head shaking while the abuse was occurring. Therefore, Spaulding's decision was connected to the Mansfield event. Exhibit 8, Deposition of Major Spaulding 73:2-14; Exhibit 3 Deposition of Defendant Coonrod 49:3-17.

97. Defendants have stipulated that that Plaintiff does not need to respond to facts numbered 97-102 in their statement of uncontroverted material facts.

103. In Count II of his Second Amended Complaint, Plaintiff alleges age discrimination. (Exhibit 1, Plaintiff's Second Amended Complaint, Paragraph 42)

**Response**: Admit.

104. In September of 2009, Plaintiff filed a Charge of Discrimination with the Missouri Commission on Human Rights and the EEOC. (Exhibit 4; Exhibit 2, Deposition of Stanley Grissom, p. 94, 1.8-14)

**Response**: Admit.

105. That the Charge of Discrimination has multiple boxes where a charging party may check the basis for the cause of discrimination. (Exhibit 5)

**Response**: Admit.

106.     Plaintiff did not check retaliation as one of the causes of discrimination. (Exhibit 5)

**Response**: Admit.

107.     That in Exhibit 1 attached to the Charge of Discrimination, Plaintiff does not claim that he was retaliated against for complaining about being treated different due to his age. (Exhibit 5)

**Response**: The exhibit speaks for itself.  However, correspondence from the Missouri Commission on Human Rights dated June 22, 2011and attached as Exhibit 17, the MCHR treated Plaintiff's discrimination charge as if it contained an allegation of retaliation and denied him the ability to file a second charge based upon retaliation because he had already asserted that basis in the first charge, regardless of whether or not the retaliation box was specifically checked.

108.     That the Exhibit 1 attached to the Charge of Discrimination only sets forth a basis of age discrimination. (Exhibit 5)

**Response**: Plaintiff states that this paragraph is unintelligible.  Plaintiff agrees that there are factual allegations supporting age discrimination in the exhibit that was attached to the charge.

109.     Plaintiff is not aware of anybody younger than him that made mistakes in his logs that Lieutenant Jenkins did not complain to. (Exhibit 2, Deposition of Stanley Grissom, p.45, 1.19-22)

**Response**: Deny. Exhibit 6, June 16, 2009 memorandum from Major Spaulding to Defendant Arnott; Exhibit 5, May 10, 2009 Counseling Report; Exhibit 4, Deposition of Defendant Jenkins, 52:15-17, 67:7-13, 77:11-13.

110.     Plaintiff believed that Lieutenant Jenkins was out to get older people if they complained about being treated different on the basis of age. (Exhibit 2, Deposition of Stanley Grissom, p. 58, 1.25, p. 59, 1.1-5)

**Response**: Admit.

111.     Plaintiff does not know if Lieutenant Jenkins has a problem with people Plaintiffs age. (Exhibit 2, Deposition of Stanley Grissom, p.59, 1.17-19)

**Response**: Admit that Plaintiff does not know for certain if Defendant Jenkins has a problem with people Plaintiff's age, but the manner in which Defendant Jenkins treated Plaintiff leads Plaintiff to believe that he has a problem with people Plaintiff's age. Exhibit 1, Affidavit of Stanley Grissom, ¶ 67.  Furthermore, the fact that there is more than two standard deviations of difference between the expected numbers of employees over 40 who were disciplined or demoted and the actual numbers of Title VII employees who were actually disciplined or demoted proves Plaintiff's allegations of prima facie age discrimination as a matter of law. Exhibit 26, Std. Deviation Calculation.

112.     Plaintiff believes that any discrimination stems not from age but from those who complain about the way they are treated based on their age. (Exhibit 2, Deposition of Stanley Grissom, p. 60, 1.2-11)

**Response**: Deny. Exhibit 1, Affidavit of Stanley Grissom, ¶ 68.  Further answering, Plaintiff now knows, based upon analysis of the hiring/firing/discipline and demotion records provided by the Greene County Sheriff that there is a pervasive age bias among the personnel decision makers at the Sheriff's department in that more than two standard deviations of difference exist between the under/over 40 jail employees that were disciplined, demoted and fired during the period in question and that Defendant's factual basis for firing Plaintiff is purely pretextual. Exhibit 26, Std. Deviation Calculation.

113.     Plaintiff does not know if Lieutenant Jenkins tried to get him terminated just because of his age. (Exhibit 2, Deposition of Stanley Grissom, p. 61, 1.17-20)

**Response**: Admit that Plaintiff does not know for certain if Defendant Jenkins tried to get him terminated just because of his age, but the manner in which Defendant Jenkins treated Plaintiff leads Plaintiff to believe that Defendant Jenkins tried to get him terminated just because of his age. Exhibit 1, Affidavit of Stanley Grissom, ¶ 69.  Further answering, Plaintiff now knows, based upon analysis of the hiring/firing/discipline and demotion records provided by the Greene County Sheriff that there is a pervasive age bias among the personnel decision makers at the Sheriff's department in that more than two standard deviations of difference exist between the under/over 40 jail employees that were disciplined, demoted and fired during the period in question and that Defendant's factual basis for firing Plaintiff is purely pretextual. Exhibit 26, Std. Deviation Calculation.

114.     Plaintiff Stanley Grissom does not know if Sheriff Arnott terminated Plaintiff because of his age. (Exhibit 2, Deposition of Stanley Grissom, p. 62, 1.13-17)

**Response**: Admit that Plaintiff does not know for certain if Defendant Arnott terminated Plaintiff because of his age; however, substantial evidence exists establishing that Defendant Arnott did, in fact, terminate Plaintiff because of his age. Exhibit 1, Affidavit of Stanley Grissom, ¶ 70. The substantial evidence includes, but is not limited to Defendants' failure to follow the Greene County Sheriff's Office discipline policy when imposing discipline upon Plaintiff, the disparate imposition of discipline on younger employees who made mistakes in their reports and made mistakes counting trays, the disparate imposition of discipline on employees who engaged in misconduct that was more serious than Plaintiff's alleged misconduct, the lack of evidence of any misconduct by Plaintiff, and the timing of Plaintiff's demotion and termination after he complained of age discrimination.  Exhibit 10, Policy 2-21-

1, Exhibit 11, Deposition of Thomas Canter 83:8-85:7, 105:20-22, 106:4, 116:5-14; Exhibit 7, Deposition of Defendant Arnott 18:3-11, 18:21-25, 22:2-8, 29:12-19, 75:22-25, 77:9-13; Exhibit 4, Deposition of James Jenkins 39:21-40:4, 52:15-17, 60:1-6, 67:7-13, 75:5-17, 75:21-24, 76:21-25, 77:11-13, 134:5-23, 139:22-24, 150:11-18, 151:8-11, 195:10-15; Exhibit 5, May 10, 2009 Counseling Report; Exhibit 12, Defendant's First Supplemental Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, Interrogatories 11 and 12, bates stamped documents 1672 and 1673; Exhibit 8, Deposition of Kevin Spaulding 95:10-11, 96:16-19; 97:11-15; 100:7-14; 125:8-19; 189:19-190:2 Group Exhibit 13, photographs taken by Defendant Jenkins; Exhibit 14, DVDs produced by Defendants, Exhibit 3, Deposition of Jeff Coonrod 19:11-23, 83:10-14, 84:8-10, 179:14-2; Exhibit 16, May 11, 2009 memorandum from Major Spaulding to Defendant Arnott; Exhibit 5, May 10, 2009 Counseling report; Exhibit 2, Plaintiff's performance log, which contains no documentation of conduct by Plaintiff that would justify Plaintiff's termination; Exhibit 6, June 16, 2009 memorandum from Major Spaulding to Defendant Arnott; and Exhibit 2, Plaintiff's performance log, p. 00092, 6/11/09 entry. Further answering, Plaintiff now knows, based upon analysis of the hiring/firing/discipline and demotion records provided by the Greene County Sheriff that there is a pervasive age bias among the personnel decision makers at the Sheriff's department in that more than two standard deviations of difference exist between the under/over 40 jail employees that were disciplined, demoted and fired during the period in question and that Defendant's factual basis for firing Plaintiff is purely pretextual. Exhibit 26, Std. Deviation Calculation.

115.     Plaintiff does not know if Defendant James Jenkins caused Plaintiff to be terminated because of his age. (Exhibit 2, Deposition of Stanley Grissom, p. 64, 1.3-6)

**Response**: Admit that Plaintiff does not know for certain if Defendant Jenkins caused Plaintiff to be terminated because of his age; however, substantial evidence exists establishing

that Defendant Jenkins did, in fact, cause Plaintiff to be terminated because of his age. See citations to record in response to Defendants' Statement of Uncontroverted Material Facts ¶ 114.

116.     Plaintiff does not know if Captain Coonrod led to the termination of Plaintiff because of Plaintiff's age. (Exhibit 2, Deposition of Stanley Grissom, p 64, 1.15-18)

**Response**: Admit that Plaintiff does not know for certain if Defendant Coonrod led to the termination Plaintiff because of his age; however, substantial evidence exists establishing that Defendant Coonrod did, in fact, lead to Plaintiff's termination because of Plaintiff's age. See citations to record in response to Defendants' Statement of Uncontroverted Material Facts ¶ 114.

117.     Plaintiff does not know if Kenneth Clayton fired Plaintiff because of his age.

(Exhibit 2, Deposition of Stanley Grissom, p. 64, 1.25, p. 65, 1.1-2)

**Response**: Admit that Plaintiff does not know for certain if Defendant Clayton fired Plaintiff because of his age; however, substantial evidence exists establishing that Defendant Clayton did, in fact, fire Plaintiff because of his age. See citations to record in response to Defendants' Statement of Uncontroverted Material Facts ¶ 114.

118.     Defendant James Arnott did not demote Stanley Grissom because of his age.

(Affidavit of James Arnott, Paragraph 22)

**Response**: Deny. Exhibit 1, Affidavit of Stanley Grissom, ¶ 74. Substantial evidence exists establishing that Defendant Arnott did, in fact, demote Plaintiff because of his age. The substantial evidence includes, but is not limited to Defendants' failure to follow the Greene County Sheriff's Office discipline policy when imposing discipline upon Plaintiff, the disparate imposition of discipline on younger employees who made mistakes in their reports and made mistakes counting trays, the disparate imposition of discipline on employees who engaged in

misconduct that was more serious than Plaintiff's alleged misconduct, the lack of evidence of any misconduct by Plaintiff, and the timing of Plaintiff's demotion and termination after he complained of age discrimination. See citations to record in response to Defendants' Statement of Uncontroverted Material Facts ¶ 114.

119.    Sheriff Arnott did not terminate Stanley Grissom because of his age. (Affidavit of James Arnott, Paragraph 23)

**Response**: See response to Defendants' Statement of Uncontroverted Material Facts ¶ 118.

120.    James Jenkins did not recommend that Stanley Grissom be demoted because of his age. (Affidavit of James Jenkins, Paragraph 37)

**Response**: See response to Defendants' Statement of Uncontroverted Material Facts ¶ 118.

121.    James Jenkins did not recommend that Stanley Grissom be terminated because of his age. (Affidavit of James Jenkins, Paragraph 38)

**Response**: See response to Defendants' Statement of Uncontroverted Material Facts ¶ 118.

122.    Jeff Coonrod did not ever discipline Stanley Grissom because of his age. (Affidavit of Jeff Coonrod, Paragraph 13)

**Response**: See response to Defendants' Statement of Uncontroverted Material Facts ¶ 118.

123.    Captain Coonrod did not recommend that Stanley Grissom be disciplined because of his age. (Affidavit of Jeff Coonrod, Paragraph 14)

**Response**: See response to Defendants' Statement of Uncontroverted Material Facts ¶ 118.

124.    Kenneth Clayton did not ever discipline Stanley Grissom because of his age. (Affidavit of Kenneth Clayton, Paragraph 12)

**Response**: See response to Defendants' Statement of Uncontroverted Material Facts ¶ 118.

125.    Captain Clayton did not recommend that Stanley Grissom be disciplined because of his age. (Affidavit of Kenneth Clayton, Paragraph 13)

**Response**: See response to Defendants' Statement of Uncontroverted Material Facts ¶ 118.

126.     Kevin Spaulding did not ever discipline Stanley Grissom because of his age. (Affidavit of Kevin Spaulding, Paragraph 14)

**Response**: See response to Defendants' Statement of Uncontroverted Material Facts ¶ 118.

127.     Major Spaulding did not recommend that Stanley Grissom be disciplined because of his age. (Affidavit of Kevin Spaulding, Paragraph 15)

**Response**: See response to Defendants' Statement of Uncontroverted Material Facts ¶ 118.

128.     For the years 2008 and 2009, seventeen correctional officers of the Greene County Sheriff's Department were terminated or asked to resign. (Affidavit of James Arnott, Paragraph 24 and Exhibit C attached to Affidavit of James Arnott)

**Response**: Deny.  In truth and fact, there were 18 jail employees that were fired during this period in time based upon Defendant's 1,809 page response to Plaintiff's Second Interrogatories and Request for Production of Documents.  A summary of these individuals' names, dates of hire, dates of termination and other information is attached as a spreadsheet in Exhibit 15.

129.     Of the seventeen correctional officers terminated during 2008 and 2009, ten of those individuals were under the age of 40 at the time of their termination. (Affidavit of James Arnott, Paragraph 25)

**Response**: Deny.  In truth and fact, there were 18 jail employees that were fired during this period in time based upon Defendant's 1,809 page response to Plaintiff's Second Interrogatories and Request for Production of Documents.  A summary of these individuals' names, dates of hire, dates of termination and other information is attached as a spreadsheet in Exhibit 15.  Nine were over 39 and 9 were under 40

130.     Plaintiff states that his whistle blowing of the jail cell incident was the exclusive reason for his discharge. (Exhibit 2, Second Amended Complaint, Paragraph 49)

**Response**: Plaintiff is entitled as a matter of law to plead alternate and inconsistent theories of recovery. Plaintiff admits that under Missouri law, a whistle blower case of wrongful discharge requires exclusive causation. Plaintiff admits that he pleaded a whistle blower cause of action and pleaded exclusive causation and further admits this is an inconsistent theory of recovery with this Title VII and 1983 claims. However, Plaintiff denies that this allegation can be used to defeat the causation elements of this Title VII and 1983 claims due to his unfettered right to bring inconsistent claims..

131. Defendants have stipulated that that Plaintiff does not need to respond to facts numbered 131-137 in their statement of uncontroverted material facts.

# Additional Uncontroverted Material Facts

1. Videos of the jail are saved in perpetuity and if there were incidents of Grissom not doing his job, Defendant could have reasonably found those. Exhibit 3, Deposition of Defendant Coonrod 152:10-12; Exhibit 1, Affidavit of Stanley Grissom, ¶ 5.

2. Stationary video apparatus is placed around the Greene County Jail to record the day to day activities in the jail so there can be no question about what happened at a particular time. Exhibit 7, Deposition of James Arnott 29:14-18.

3. Defendants claim they fired Plaintiff for making numerous mistakes in his written reports after he was counseled regarding the quantity and significance of the mistakes he was making. Exhibit 6, June 16, 2009 memorandum from Major Spaulding to Defendant Arnott.

4. No surveillance footage from the Greene County Jail exists showing Stanley Grissom engaging in any conduct that would constitute a violation of the policies and procedures of the Greene County Sheriff's Office. Exhibit 14, DVDs produced by Defendants.[2]

---

[2] During the recent conference call, Defendants' counsel conceded to the Court, on the record, that there is nothing on the DVDs showing any misconduct by Plaintiff despite the fact that the DVDs were produced in response to a request

5. The April 10, April 11, March 29, 2009 surveillance footage depicting Plaintiff does not show him engaged in any misconduct. Exhibit 14, DVDs produced by Defendants as well as the concession of Defense counsel on the record

6. Defendant Coonrod could not produce or identify one report that was "screwed up" that the Sheriff saw before the decision was made to fire Plaintiff. Exhibit 3, Deposition of Jeff Coonrod, 152:6-9.

7. Defendants have not produced a single report authored by Plaintiff containing a single error that would in any way support or prove that Plaintiff made a single mistake in a single report. Exhibit 1, Affidavit of Stanley Grissom, ¶ 6; Exhibit 3, Deposition of Jeff Coonrod 179:14-21.

8. During Plaintiff's employment, Defendants never showed Plaintiff any mistakes in any of his reports.  Exhibit 1, Affidavit of Stanley Grissom, ¶ 7.

9. If there were any mistakes in any of his reports, they were there because other jail employees doctored or changed his reports to get him in trouble. Exhibit 1, Affidavit of Stanley Grissom, ¶ 8.

10. Defendant Jenkins testified that no investigation was ever initiated to investigate whether or not other jail employees were altering jail records. Exhibit 4, Deposition of Defendant Jenkins 47:13-50:22

11. Defendant Jenkins, Plaintiff's supervisor who wrote up Plaintiff for spelling errors and poor attitude, took photographs of Greene County Jail staff engaging in conduct that violated the policies and procedures of the Greene County Jail. Exhibit 4, Deposition of James Jenkins 60:1-6; Group Exhibit 13, photographs taken by Defendant Jenkins.

---

for production seeking any video surveillance depicting Plaintiff engaging in misconduct or doing anything which contributed to Defendants' decision to terminate his employment.

12. The photographs depict Defendant Jenkins' subordinates (1) pretending to slide down the fire escape in an inmate's bed; (2) exposing their nipples through the visitation window; (3) grabbing one another's genitals through clothing; (4) attaching leashes to employees; (5) simulated licking of each other; (6) general homo-eroticism. Group Exhibit 13, photographs taken by Defendant Jenkins.

13. Jail employees taking a daybed and sliding down the stairs like a sled would not be acceptable under the terms of the Greene County Sheriff's Office policies and procedures. Exhibit 7, Deposition of James Arnott 19:3-5.

14. Jail employees going into the visitation area and taking their uniform tops off and showing their nipples through the glass to other employees like a girlfriend of an inmate might do would not be acceptable under terms of the Greene County Sheriff's Office policies and procedures. Exhibit 7, Deposition of James Arnott 19:6-11.

15. Sheriff Arnott would expect that any supervisors who witnessed jail employees taking a daybed and sliding down the stairs like a sled or going into the visitation area and taking their uniform tops off and showing their nipples through the glass to other employees would report that conduct. Exhibit 7, Deposition of James Arnott 19:12-15.

16. Sheriff Arnott considers jail employees taking a daybed and sliding down the stairs like a sled or going into the visitation area and taking their uniform tops off and showing their nipples through the glass to other employees to be serious incidents of horseplay. Exhibit 7, Deposition of James Arnott 19:21-25.

17. The conduct depicted in the photographs attached as Exhibit 13, violates the Greene County Sheriff's Office policy prohibiting conduct unbecoming an officer. Exhibit 7, Deposition of James Arnott 23:2-8, 30:12-19.

18. No one ever reported the conduct depicted in the photographs to Defendant Arnott. Exhibit 7, Deposition of James Arnott 25:25-26:5.

19. Defendant Arnott would have expected Defendant Jenkins to write up the conduct depicted in the photographs attached as Exhibit 13. Exhibit 7, Deposition of James Arnott 30:20-22.

20. Defendant Arnott would expect that if Defendant Jenkins were writing up employees for spelling errors, he would also write up employees who were exposing their breasts and nipples through the visitation windows. Exhibit 7, Deposition of James Arnott 34:18-23.

21. The individuals in the photographs are all younger that Stanley Grissom. Exhibit 1, Affidavit of Stanley Grissom, ¶ 9.

22. Defendant Jenkins did not discipline any of the individuals he photographed as shown in Exhibit 13 at the time of the misconduct. Exhibit 4, Deposition of James Jenkins 151:8-11.

23. Defendant Jenkins signed a counseling report regarding Stanley Grissom. Exhibit 5, May 10, 2009 Counseling Report; Exhibit 4, Deposition of Defendant Jenkins, 67:7-13, 77:11-13.

24. Sergeant Canter wrote the counseling report for Defendant Jenkins. Exhibit 4, Deposition of James Jenkins, 52:15-17.

25. Defendant Arnott and Major Spaulding never personally observed any deficiencies in Plaintiff's job performance. Exhibit 8, Deposition of Kevin Spaulding 189:19-190:2.

26. In response to discovery propounded by Plaintiff, Defendants produced a memorandum dated June 16, 2009 from Major Spaulding to Defendant Arnott recommending Plaintiff's termination. Exhibit 6, June 16, 2009 memorandum from Major Spaulding to Defendant Arnott produced in response to Plaintiff's Request for Production of Documents.

27. Defendant Arnott received Plaintiff's performance review and counseling report prior to making his decision to demote and terminate Plaintiff. Exhibit 16, May 11, 2009 memorandum from Major Spaulding to Defendant Arnott recommending Plaintiff's

demotion; Exhibit 17, June 16, 2009 memorandum from Major Spaulding to Defendant
Arnott with a handwritten note by Defendant Arnott; Exhibit 7, Deposition of James Arnott
14:7-13.

28. The entry in Plaintiff's performance log made five days before Defendants fired Plaintiff
notes that Plaintiff was going to "**sue the county for among other things 'age
discrimination' and that Plaintiff had contacted an attorney**." Exhibit 2, Plaintiff's
performance log, p. 00092, 6/11/09 entry.

29. Defendants Jenkins and Sergeant Smith refused to permit Plaintiff to train in the booking
and release department of the jail. Exhibit 1, Affidavit of Stanley Grissom, ¶ 11; Exhibit 4,
Deposition of Defendant Jenkins 185:1-5.

30. Defendants disciplined Plaintiff for mistakes that were less serious than conduct engaged in
by younger employees. Exhibit 1, Affidavit of Stanley Grissom, ¶ 12.

31. Defendants singled Plaintiff out for harsh treatment because of his age. Exhibit 1, Affidavit
of Stanley Grissom, ¶ 13.

32. Defendants demoted Plaintiff after he complained of age discrimination. Exhibit 9, May 14,
2009 memorandum from Sergeant Canter to Defendant Coonrod, Major Spaulding, and
Kenneth Clayton; Exhibit 18, Personnel status form dated May 26, 2009.

33. The Greene County Sheriff's Office has a formal discipline policy that applies to all of its
employees. Exhibit 10, Policy 2-21-1 of the Greene County Sheriff's Office; Exhibit 7,
Deposition of Defendant Arnott, 64:4-15.

34. 2-21-1 provides in part, ""All members of the Greene County Sheriff's Office are required
to adopt and adhere to sound tactical practices, written or verbal directives, general orders or
written established policy and procedures.  In the event that a member shall . . . violate any
directive, general order, policy or procedure, or demonstrate any degree of negligence in the

performance of their expected duties, it shall be nece3ssary for supervisory personnel to discipline their subordinates." Exhibit 10, Policy 2-21-1 of the Greene County Sheriff's Office.

35. The policy defines "misconduct" as violating of a "general order, published rule or written policy or procedure". Exhibit 10, Policy 2-21-1 of the Greene County Sheriff's Office.

36. Section E, Subpart A of 2-21-1 provides "In the event that a member of the GCSO shall fail to meet the expected level of conduct, but it is not serious misconduct, as the first step in taking corrective action, all employees would be subject to Verbal Counseling." Exhibit 10, Policy 2-21-1 of the Greene County Sheriff's Office.

37. Whenever verbal counseling takes place, it "will be documented on an Internal Memo." Exhibit 10, Policy 2-21-1 of the Greene County Sheriff's Office, 2-21-1(E)(1)(a)(3).

38. The "Internal Memo" must "contain a brief synopsis of the event and any other information related to the incident, the violation of expected conduct, a plan of action to remedy the said action, and will be kept by the Division Captain." Exhibit 10, Policy 2-21-1 of the Greene County Sheriff's Office, 2-21-1(E)(1)(a)(4).

39. In connection with Plaintiff's demotion, Major Spaulding recommended that Plaintiff be reduced in rank, put on six months of probation, and be prohibited from off duty and extra duty assignments. Exhibit 8, Deposition of Kevin Spaulding 75:10-16.

40. Plaintiff did not receive any notice or an opportunity to be heard before the Sheriff demoted him and placed him on probation. Exhibit 8, Deposition of Kevin Spaulding 78:7-12.

41. Plaintiff was not given the opportunity to provide a written narrative documenting his actions. Exhibit 1, Affidavit of Stanley Grissom, ¶ 14; Exhibit 8, Deposition of Kevin Spaulding 85:10-18, 86:6-15.

42. Sergeant Smith, another employee at the Greene County Jail, was disciplined for slapping an inmate. Exhibit 8, Deposition of Kevin Spaulding 95:10-11.

43. Sergeant Smith's slapping the inmate was considered serious misconduct. Exhibit 8, Deposition of Kevin Spaulding 96:16-19.

44. Sergeant Smith's discipline for slapping the inmate was a written reprimand and 90 days probation. Exhibit 8, Deposition of Kevin Spaulding 97:11-15.

45. Two months before the slapping incident, Sergeant Smith had received a written reprimand for inappropriate behavior. Exhibit 8, Deposition of Kevin Spaulding 100:7-14.

46. Sergeant Smith is younger than Stanley Grissom. Exhibit 1, Affidavit of Stanley Grissom, ¶ 15; Exhibit 19, Def. 2nd Supplemental Response document number 01774

47. There were no letters of reprimand in Plaintiff's file when he was terminated. Exhibit 8, Deposition of Kevin Spaulding 103:8-11.

48. Plaintiff had no written counseling reports other than the May 10, 2009 counseling report at the time he was fired. Exhibit 8, Deposition of Kevin Spaulding 103:12-16; Exhibit 5, May 10, 2009 Counseling Report.

49. Plaintiff did not receive any verbal counseling before he was fired other than what was attached to the written counseling report. Exhibit 8, Deposition of Kevin Spaulding 103:17-22.

50. The May 10, 2009 counseling report did not state that Mr. Grissom would be terminated if he did not meet the goals and objectives set forth in the report. Exhibit 4, Deposition of James Jenkins 56:12-23.

51. The June 11, 2009 entry from Plaintiff's performance log, which states that Plaintiff is going to sue the county for age discrimination, is not included in Major Spaulding's June 16, 2009

memorandum to Defendant Arnott. Exhibit 6, June 16, 2009 Memorandum from Kevin

Spaulding to James Arnott; Exhibit 4, Deposition of James Jenkins 113:7-15.

52. The June 11, 2009 entry from Plaintiff's performance log states, "Lt. Jenkins informed by

Officer Figueroa that Grissom has informed him he is going to sue the county for among

other things 'age discrimination' and knows he has contacted an attorney. Figueroa stated he

does not want to be involved with Grissom in this manner." Exhibit 2, Plaintiff's

performance log, p. 00092, 6/11/09 entry.

53. Major Spaulding did not order an investigation into whether Plaintiff's reports were being

altered. Exhibit 8, Deposition of Kevin Spaulding 117:16-18.

54. Major Spaulding knew that Plaintiff was making age-related complaints as early as May 14,

2009. Exhibit 8, Deposition of Kevin Spaulding 125:8-19.

55. Defendant Jenkins testified that there only one Internal Memo generated relating to

Grissom's performance.  Exhibit 4, Deposition of Defendant Jenkins 130:12-16.

56. There are no "Internal Memos" documenting any verbal counseling ever given to Mr.

Grissom that comply with the Greene County Sheriff's Office policy and procedure manual.

Exhibit 1, Affidavit of Stanley Grissom, ¶ 17; Exhibit 10, Policy 2-21-1.

57. The next level of discipline following verbal counseling and preceding termination is

"Written Counseling".  Exhibit 10, 2-21-1(E)(1)(b).

58. Policy 2-21-1(E)(1)(b) provides, "In the event that an employee shall continue to conduct

themselves in a manner that is inconsistent with the accepted practices, or established

policies and procedures of this agency, yet the conduct still does not constitute serious

misconduct, the next step in obtaining corrective action would be for the supervisor to

conduct Written Counseling with the employee. The following measures shall be used to

administer the Written Counseling." Exhibit 10, Policy 2-21-1.

59. The written counseling policy further provides that "(1) The supervisor shall in writing request from the employee a written narrative documenting the employees' actions; (2) The employee shall return to the supervisor a written response to the request. The response shall detail the officer's actions and how the actions would be justified, or if clearly in violation of policy why it was necessary to deviate from the policy. The response should also contain the employees' plan of action to correct the violation; (3) Upon receipt of the written response, the supervisor shall review, and attach the response to the Written Employee Counseling form; (4) The supervisor shall schedule a face-to-face meeting with the employee to discuss the incident. A written plan of corrective actions should be documented on the employee counseling form; (5) The employee and supervisor shall review and sign the counseling form and forward it to the Division Captain for further disposition. Exhibit 10, Policy 2-21-1.

60. Defendants did not follow the written counseling procedures when they disciplined Stanley Grissom. Exhibit 11, Deposition of Thomas Canter 83:8-85:7; Exhibit 7, Deposition of Defendant Arnott 75:22-25, 77:9-13; Exhibit 1, Affidavit of Stanley Grissom, ¶ 18.

61. The May 20, 2009 written counseling report stated that on March 28, 2009 Defendant Jenkins and Sergeant Smith spoke with Plaintiff about Plaintiff's performance level and general attitude. Exhibit 5, May 10, 2009 Counseling Report.

62. The May 10, 2009 memorandum references the March 28, 2009 communication between Defendant Jenkins, Sergeant Smith, and Plaintiff, but does not say that the March 28, 2009 communication stated that Plaintiff needed to improve in certain areas if he wanted to get the booking and release position. Exhibit 3, Deposition of Jeff Coonrod 174:23-175:13; Exhibit 2, Plaintiff's performance log, p. 00088-00089, 3/28/09 entry.

63. The counseling report recited four areas that Plaintiff had been instructed to improve: (1) improve quality of report spelling and proper words; (2) Use proper forms for reports such as incident and memo; (3) attention to detail in daily rosters and again reports; and (4) More pro-active performance in the pods and not staying behind the desk, having the other [sic]. Exhibit 5, May 10, 2009 Counseling Report.

64. The counseling report, which was written by Sergeant Canter and submitted by Defendant Jenkins, contains typographical errors. Exhibit 5, May 10, 2009 Counseling Report; Exhibit 4, Deposition of Defendant Jenkins, 67:7-13, 77:11-13; Exhibit 4, Deposition of James Jenkins, 52:15-17.

65. The May 10, 2009 counseling report contains allegations that after the March 28, 2009 communication between Plaintiff, Defendant Jenkins and Sergeant Smith there were numerous instances showing that Plaintiff had not improved in the four areas outlined during the March 28, 2009. Exhibit 5, May 10, 2009 Counseling Report.

66. However, none of the instances cited as support that Plaintiff had not improved in the areas discussed during the March 28 communication actually relate to the four areas Plaintiff had been counseled improve on. Exhibit 5, May 10, 2009 Counseling Report.

67. Sergeant Canter is younger than Plaintiff. Exhibit 11, Deposition of Thomas Canter 125:16-18.

68. Sergeant Canter has made errors in the meal tray count. Exhibit 11, Deposition of Thomas Canter 105:20-21.

69. Sergeant Canter was not fired, demoted, suspended, or put on probation for making a mistake in the meal tray count. Exhibit 11, Deposition of Thomas Canter 105:22-106:4.

70. According to the Defendant Arnott, the policies are "a big deal." Exhibit 7, Deposition of James Arnott 72:15-17.

71. The Greene County Sheriff's Office policies and procedures create rights and responsibilities and are important. Exhibit 7, Deposition of James Arnott 72:18-20.

72. Sheriff Arnott expects that where the policies say "shall" then it "will occur in all cases." Exhibit 7, Deposition of James Arnott 72:21-24.

73. The whole first three sections of the five sections of the written counseling procedure were not complied with as to Mr. Grissom. Exhibit 7, Deposition of James Arnott 77:9-13.

74. Defendants did not require Plaintiff to submit a written statement about his actions. Exhibit 10, Policy 2-21-1(E)(1)(b)(1); Exhibit 4, Deposition of James Jenkins 134:5-23.

75. There was nothing prepared by Plaintiff and containing anything resembling a narrative or a plan of action that was attached to the written counseling form. Exhibit 1, Affidavit of Stanley Grissom, ¶ 14; Exhibit 8, Deposition of Kevin Spaulding 85:10-18, 86:6-15.

76. While Defendant Jenkins supervised Stanley Grissom, he signed off on Stanley Grissom's annual reviews. Exhibit 4, Deposition of James Jenkins, 12:20-22.

77. All of Stanley Grissom's annual performance reviews were very good before he was counseled in March 2009. Exhibit 4, Deposition of James Jenkins, 14:1-5.

78. "Very good" annual performance reviews are above average and mean the employee is doing more than expected. Exhibit 4, Deposition of James Jenkins, 13:20-22.

79. Up through his last review, Stanley Grissom knew how to do his job, did not receive any negative feedback, knew what was expected, and knew how to fit into the jail environment. Exhibit 4, Deposition of James Jenkins, 14:6-16; Exhibit 21, Plaintiff's 2008 annual performance review.

80. While Defendant Jenkins said Stanley Grissom's failure to make his assigned rounds was continuous, he was unable at his deposition to identify a single day or shift on which Mr. Grissom failed to make any rounds. Exhibit 4, Deposition of James Jenkins, 39:21-40:4.

81. Any correctional officers had access to Plaintiff's daily logs and could have made changes to Plaintiff's daily logs. Exhibit 4, Deposition of James Jenkins, 43:16-44:1.

82. Major Spaulding recommended that Plaintiff be demoted from the rank of corporal in part because he placed himself and others in a dangerous situation. Exhibit 16, May 11, 2009 memorandum from Major Spaulding to Defendant Arnott; Exhibit 4, Deposition of James Jenkins 75:5-17.

83. Defendant Jenkins never saw Plaintiff place himself or others in a dangerous situation. Exhibit 4, Deposition of James Jenkins 75:21-24.

84. The May 10, 2009 counseling report does not contain any reference to any dangerous situations Plaintiff placed himself or others in. Exhibit 5, May 10, 2009 Counseling report; Exhibit 4, Deposition of James Jenkins 76:21-25.

85. Plaintiff's personnel log does not reference any dangerous situations Plaintiff placed himself or others in. Exhibit 2, Plaintiff's performance log.

86. Thirty days had not elapsed from the time that Plaintiff learned of his demotion to the time the decision was made to terminate him. Exhibit 4, Deposition of James Jenkins 94:18-24.

87. Major Spaulding was not disciplined for misspelling words in his June 16, 2009 memorandum to Sheriff Arnott. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and the corresponding Bates stamped documents produced by defendants 1646-1654, 1655-1671, 1773, and 1672-1673.

88. Plaintiff was terminated five days after he said he was going to sue Greene County. Exhibit 4, Deposition of James Jenkins 114:25-115:4.

89. Defendant Jenkins did not follow the Greene County Sheriff's Office discipline policy regarding written counseling because he did not give Plaintiff a written request for a written

narrative documenting the employee's actions. Exhibit 10, Policy 2-21-1(E)(1)(b)(1); Exhibit 4, Deposition of James Jenkins 134:5-23.

90. Plaintiff was justified in locking down the B-Pod early on January 28, 2009 because the inmates were making vulgar and obscene comments to the jail nurses and other jail staff and individual discipline was ineffective to stop the inmates from acting out. Exhibit 1, Affidavit of Stanley Grissom, ¶ 19; Exhibit 22, January 28, 2009 memorandum from Officer Wade to Captain Clayton, Defendant Coonrod, and Lieutenant May.

91. B-Pod had been locked down early on January 23, 2009 by Plaintiff, January 24, 2009 by Officer Haskins, January 25, 2009 by Officer's Carr and Gostiac, January 26, 2009 by Corporal Wilcox, and January 27, 2009 by Plaintiff and Officer Wade. Exhibit 22, January 28, 2009 memorandum from Officer Wade to Captain Clayton, Defendant Coonrod, and Lieutenant May.

92. Officer Haskins is younger than Plaintiff. Exhibit 11, Deposition of Thomas Canter 37:10-12.

93. Officer Haskins was not disciplined for locking down the B-Pod early. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding documents Bates stamped 1646-1654, 1655-1671, 1773, and 1672-1673.

94. Officer Carr is younger than Plaintiff. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents 1646-1654, 1655-1671, 1773, and 1672-1673.

95. Officer Carr was not disciplined for locking down the B-Pod early. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott,

interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents 1646-1654, 1655-1671, 1773, and 1672-1673.

96. Officer Wilcox is younger than Plaintiff. Exhibit 1, Affidavit of Stanley Grissom, ¶ 85; Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents 1646-1654, 1655-1671, 1773, and 1672-1673.

97. Officer Wilcox was not disciplined for locking down the B-Pod early. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents 1646-1654, 1655-1671, 1773, and 1672-1673.

98. Officer Wade is younger than Plaintiff. Exhibit 11, Deposition of Thomas Canter 37:17-18.

99. Officer Wade was not disciplined for locking down the B-Pod early. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents 1646-1654, 1655-1671, 1773, and 1672-1673.

100. Officer Gostiac is younger than Plaintiff. Exhibit 11, Deposition of Thomas Canter 37:15-16.

101. Officer Gostiac was not disciplined for locking down the B-Pod early. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents 1646-1654, 1655-1671, 1773, and 1672-1673.

102. Sergeant Canter prepared a memorandum dated May 14, 2009 in which he wrote that Plaintiff told Corporal Hartman, "It's okay. I've still got an ace up my sleeve. I'm an old

man. If they try to do anything, I'll pull the age card and claim age discrimination." Exhibit 9, May 14, 2009 memorandum.

103.     Sergeant Canter forwarded the May 14, 2009 memorandum to Defendant Coonrod, Major Spaulding and Captain Clayton. Exhibit 9, May 14, 2009 memorandum.

104.     After Major Spaulding learned that Plaintiff intended to bring an age discrimination claim against the county, he recommended to Defendant Arnott that Plaintiff be terminated. Exhibit 9, May 14, 2009 memorandum; Exhibit 6, June 16, 2009 Memorandum from Kevin Spaulding to James Arnott.

105.     Defendant Jenkins knew that Plaintiff was making age-related complaints more than one month before he was terminated. Exhibit 4, Deposition of James Jenkins 195:10-15.

106.     Plaintiff did not violate any specific Greene County Sheriff's Office policies to justify being terminated. Exhibit 3, Deposition of Jeff Coonrod 19:11-23.

107.     Stanley Grissom was promoted to the rank of corporal on June 1, 2006. Exhibit 3, Deposition of Jeff Coonrod 25:15-21.

108.     Plaintiff was not demoted between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:1-5.

109.     Plaintiff did not receive a negative employee review between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:6-7.

110.     Plaintiff did not receive any counseling reports between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:8-9.

111.     Plaintiff did not receive any reprimands between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:10-11.

112.     There were no investigative reports prepared regarding Plaintiff between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:14-15.

113.    There are no notations in Plaintiff's personnel file that he showed up late for work between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:16-18.

114.    There are no notations in Plaintiff's personnel file that he was a bad speller between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:19-20.

115.    There are no notations in Plaintiff's personnel file between 2006 and May 2009 that Plaintiff displayed poor leadership qualities. Exhibit 3, Deposition of Jeff Coonrod 26:21-23.

116.    There are no notations in Plaintiff's personnel file between 2006 and May 2009 that Plaintiff was a bad influence or spread rumors. Exhibit 3, Deposition of Jeff Coonrod 26:24-27:1.

117.    Plaintiff's 2006 annual performance review shows that he was a very good employee. Exhibit 3, Deposition of Jeff Coonrod 27:17-20; Exhibit 23, 2006 Performance Review.

118.    A memorandum included with Plaintiff's 2008 performance review commended Plaintiff for working as housing sergeant with great results was signed by Defendant Coonrod and written by Defendant Jenkins. Exhibit 3, Deposition of Jeff Coonrod, 29:4-15; Exhibit 21, Plaintiff's 2008 performance review.

119.    The memorandum further stated that Plaintiff "performed background checks for new hire employees and as a field training officer after hiring. He has used three days of sick leave for this year, he is punctual for duty, arriving early for briefing, he assures all staff gets relief when assigned to escort." Exhibit 3, Deposition of Jeff Coonrod, 29:15-21; Exhibit 21, Plaintiff's 2008 performance review.

120.    Plaintiff's overall performance review from 2007 was very good. Exhibit 3, Deposition of Jeff Coonrod 31:7-14.

121.     The comments on Plaintiff's 2007 performance review state, "Corporal Grissom has performed as active housing sergeant, training officers as well as assisting with new employee background investigations with positive results. He has improved his use of lead time, went to shift C, is punctual for duty, accepts supervisor responsibilities with positive results, he's an asset to shift C, and this department." Exhibit 3, Deposition Jeff Coonrod 31:16-25; Exhibit 25, Stanley Grissom's 2007 performance review.

122.     Plaintiff's 2006 annual performance review was very good. Exhibit 3, Deposition of Jeff Coonrod 32:9-13.

123.     Plaintiff's 2004 annual performance review was very good. Exhibit 3, Deposition of Jeff Coonrod 32:20-33:2.

124.     The comments on Plaintiff's 2004 annual performance review state, "Officer Grissom worked for my shifts this entire period. He's performed several post assignments including pod officer, escort and master control. Grissom works well with other officers as well as inmates and his overall performance has been very good." Exhibit 3, Deposition of Jeff Coonrod 33:4-10; Exhibit 24, Plaintiff's 2004 annual performance review.

125.     Plaintiff's 2002 annual performance review was very good. Exhibit 3, Deposition of Jeff Coonrod 33:16-18.

126.     Plaintiff was an above average, very good performing employee. Exhibit 3, Deposition of Jeff Coonrod 33:19-24.

127.     The day after Plaintiff received a written counseling report, Mr. Grissom was demoted and was placed on six months probation. Exhibit 3, Deposition of Jeff Coonrod 50:23-25, 53:22-54:1-2.

128.     Giving somebody one day to meet five goals and objectives is insufficient time to see if they improve before demotion. Exhibit 3, Deposition of Jeff Coonrod 66:14-17.

129.     Written reprimands are more serious than written counseling reports. Exhibit 3,
         Deposition of Jeff Coonrod 52:16-22.

130.     Even though Plaintiff was demoted the day after receiving a written counseling,
         employees who received written reprimands were not demoted. Exhibit 3, Deposition of Jeff
         Coonrod 53:7-11.

131.     None of the employees who received written reprimands for their involvement in the
         photographs attached as Exhibit 13 received days off without pay or were placed on
         probation. Exhibit 3, Deposition of Jeff Coonrod 53:12-21.

132.     Defendant Jenkins made errors in the reports he prepared regarding Plaintiff's
         alleged misconduct. Exhibit 3, Deposition of Jeff Coonrod 81:8-17.

133.     Defendant Jenkins was not disciplined for the errors in the reports he prepared
         regarding Plaintiff's alleged misconduct. Exhibit 20, Defendants' Answers to Plaintiff's
         Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8,
         11-14 and corresponding Bates stamped documents produced by defendants 1646-1654,
         1655-1671, 1773, and 1672-1673.

134.     The counseling report does not record a single incident that should have been
         reported by Plaintiff, but was not. Exhibit 3, Deposition of Jeff Coonrod 83:10-14.

135.     The counseling report does not identify a single rumor spread by Plaintiff. Exhibit 3,
         Deposition of Jeff Coonrod 84:8-10.

136.     Plaintiff was not allowed to work in booking and release because Sergeant Smith did
         not feel comfortable with Plaintiff working in booking and release. Exhibit 3, Deposition of
         Jeff Coonrod 88:15-23.

137.     Prior to terminating Plaintiff, Defendant Arnott reviewed Plaintiff's performance log
         for the time period after Plaintiff's demotion which included Plaintiff's allegations of age

discrimination, threats to sue the County for age discrimination, and the fact that Plaintiff had contacted an attorney about his age discrimination claim. Exhibit 3, Deposition of Jeff Coonrod 91:6-14; Exhibit 7, Deposition of Defendant Arnott 14:7-13.

138.     Defendant Coonrod would have expected the lieutenant and sergeant to investigate Plaintiff's allegations that someone was removing items from Plaintiff's logs. Exhibit 3, Deposition of Jeff Coonrod 126:17-127:1.

139.     Defendant Coonrod is not aware of the existence of any documents that show that anyone investigated Plaintiff's allegations that someone was removing items from Plaintiff's logs. Exhibit 3, Deposition of Jeff Coonrod 128:8-19.

140.     Before January 2009, there are no entries in Plaintiff's personnel file suggesting that Plaintiff had any deficiencies in his reports. Exhibit 3, Deposition of Jeff Coonrod 130:3-9.

141.     The March 28, 2009 communication between Defendant Jenkins, Sergeant Smith, and Plaintiff did not say that Plaintiff needed to improve in certain areas to keep his job. Exhibit 3, Deposition of Jeff Coonrod 174:18-22; Exhibit 2, Plaintiff's performance log, p. 00088-00089.

142.     The only two **new events** that occurred after Plaintiff received the written counseling and before the recommendation was made to demote Plaintiff was Plaintiff calling in sick with a kidney stone and Plaintiff stating that he would file suit for age discrimination. Exhibit 11, Deposition of Thomas Canter, 116:5-14.

143.     Defendant Arnott made the decision to terminate Plaintiff on the recommendation of Defendant, Kevin Spaulding. Exhibit 7, Deposition of James Arnott 3:5-7, 10-11.

144.     Defendant Arnott is not aware of any investigation to determine if anyone was, in fact, altering Plaintiff's reports. Exhibit 7, Deposition of James Arnott 106:2-8.

145.     Sergeant Canter received no discipline for the errors he made in the written counseling report. Exhibit 12, Defendant's First Supplemental Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, Interrogatories 11 and 12, bates stamped documents 1672 and 1673.

146.     The employees disciplined for their roles in the photographs attached as group Exhibit 13 each received a written reprimand. Exhibit 4, Deposition of Defendant Jenkins 139:22-24.

147.     At the time of Plaintiff's termination, he was one of the oldest employees at the Greene County Jail. Exhibit 1, Affidavit of Stanley Grissom, ¶ 22.

148.     On March 27, 2009, Plaintiff requested that he be able to participate in training to working the booking and release area of jail. Exhibit 2, Plaintiff's performance log, p. 00088, 3/27/09 entry.

149.     Being trained in booking and release would have helped Plaintiff acquire the skills necessary to be promoted to a sergeant position. Exhibit 3, Deposition of Jeff Coonrod 165:3-8; Exhibit 4, Deposition of Defendant Jenkins 170:1-12.

150.     Defendant Arnott admitted that one of the reasons he can make erroneous decisions is if his decision is based on inaccurate information. Exhibit 7, Deposition of Defendant Arnott 110:11-15.

151.     Sheriff Arnott is responsible for hiring and firing at the jail and has been since he was sworn in on December 31, 2008. Exhibit 1, Affidavit of Stanley Grissom, ¶ 90.

152.     Exhibit 15 is a true and accurate demonstrative summary of the employment data for employees disclosed by Sheriff Arnott in response to Plaintiff's Second Interrogatories and Requests for Production of documents.  Exhibit 15 Summary of Employment Data; Exhibit 27 Affidavit of Donna Aasby (Donna Aasby reviewed the data and created the

demonstrative summary Exhibit 15; her affidavit sets forth the foundation for the summary exhibit)[3].

153.    As of 10/7/11, there were 164 workers that either worked at the jail or were hired to work at the jail. Of these 164 workers, 39 are 40 and over (24.07%) and 123 are under (75.93%). Their average (mean) age on this date is 34.5. Exhibit 15, Summary of Employment Data.

154.    In addition to the 17 individuals listed in Sheriff Arnott's affidavit, he also fired 50 year old Yvonne Lassley on July 8, 2009. Exhibit 15, Summary of Employment Data.

155.    For 2008 and 2009, 18 jail employees were fired and/or asked to resign. Of this group, 9 were 40 and over and 9 were under. Exhibit 15; Exhibit 26, Std. Dev. Calculation (Exhibit 26 is simply a mathematical calculation using the formula set forth by the 8th Circuit as discussed more fully herein).

156.    The Sheriff's Department's firings from 2008 through 2009 of employees 40 and over is 2.6 standard deviations from the expected amount. Exhibit 26, Std. Dev. Calculation.

157.    For the fired employees referenced in the preceding paragraph, there is only an approximate 1 in 100 probability that chance, and not age was the factor in terminating these older, protected employees. http://en.wikipedia.org/wiki/Standard_deviation; *See Ottaviani v. State Univ. of New York at New Paltz*, 875 F.2d 365, 372 (2d Cir. 1989).

158.    From 1/1/08 to present, the Greene County Sheriff discharged 28 individuals, with 16 being 40 and over. Exhibit 15, Summary of Employment Data.

159.    Based upon the average age of the male population, only 7 of the 40 and over discharges should have occurred during the 1/1/08 to present time period. Exhibit 26, Std. Dev. Calculation.

---

[3] Summaries of voluminous employment records are admissible under FRE 1006 and have been admitted in Title VII cases. *See E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 553 (8th Cir. 1998).

160.     The actual number of 40 and over discharges from 1/1/08 to present varies from the expected result by 4.1 standard deviations. Exhibit 26, Std. Dev. Calculation.

161.     The odds of the 1/1/08 to present discharges being chance and not related to age where the Z score is 4.1 standard deviations less than 1 in 15,787. http://en.wikipedia.org/wiki/Standard_deviation.

162.     Since 1/1/08, there were 15 individuals working at the Greene County Jail that were disciplined.  10 were 40 and over and 5 were under 50.  Exhibit 15, Summary of Employment Data.

163.     Based upon the age distributions of males in the US population, the difference in standard deviation is 3.86.  Exhibit 26, Std. Dev. Calculation.

164.     A standard deviation difference (or Z score) of 3.89 translates into a probability fraction of approximately 1/10,000 and accounts for 99.99% of all outcomes. http://en.wikipedia.org/wiki/Standard_deviation.

165.     In 2010, of the working age population age 20 - 64, 45% were 39 and below and 55% were 40 and above.  http://www.census.gov/compendia/statab/2012/tables/12s0.

166.     From 2008 to present, 121 individuals were hired to work in the Jail.  Exhibit 15, Summary of Employment Data.

167.     Of those hired to work at the jail from 2008 to present, only 20 out of 120 were 40 or older.  Exhibit 15, Summary of Employment Data.

168.     The actual number of 40+ hires from 2008 to present was 9.08 standard deviations less than it was expected to be based upon the percentage of 40+ individuals in the U.S. population.  Exhibit 26, Std. Dev. Calculation.

169.     The chances of the number of 40 and over hires from 2008 to present being random

where the Z score is 8.4 and not due to age bias is less than 1 in 500 billion.

http://en.wikipedia.org/wiki/Standard_deviation.

170.     No prior certification or degree is required to assume the role of correctional officer.

Exhibit 1, Affidavit of Stanley Grissom, ¶ 88.

171.     From 2008 to present, the Sheriff's department only hired individuals 40 and over to

work in the jail division 16.5% of the time.  However, jail division employees 40 and over

have been fired 57% of the time.  Exhibit 15, Summary of Employment Data.

172.     Younger employees were routinely permitted to train in the booking and release

areas of jail when older employees, like Plaintiff, were not. Exhibit 1, Affidavit of Stanley

Grissom, ¶ 91; Exhibit 11, Deposition of Thomas Canter 128:15-18.

173.     Each of the areas in which Plaintiff worked at the Greene County Jail and where

Defendants claim Plaintiff failed to fulfill his responsibilities were covered by video

surveillance. Exhibit 1, Affidavit of Stanley Grissom, ¶ 89.

174.     The written counseling report was attached to Major Spaulding's memo to Defendant

Arnott recommending Plaintiff's demotion. Exhibit 7, Deposition of Defendant Arnott

43:19-44:11.

175.     Plaintiff's performance log was attached to the memorandum recommending

Plaintiff's termination. Exhibit 6, June 16, 2006 memorandum from Major Spaulding to

Defendant Arnott recommending Plaintiff's termination.

176.     Mr. Grissom suffered demotion days after he made his first age-related complaints.

Exhibit 9, May 14, 2006 memorandum from Sergeant Canter; Exhibit 2, Plaintiff's

performance log p. 00091, 5/20/09 entry.

177.     After Plaintiff was fired, the Sheriff hired two 30 year old male jailers on July 8,

2009—Benjamin Julina and Nicholas Shepard.  That month he also hired 35 year old Jason

Humphrey, 36 year old Donnell Evans, 35 year old David Carnagey, and 28 year old

Christopher Sowers. He also hired 24 year old Matthew Roper on August 5, 2009. Exhibit

15, Summary of employment data.

# Factual Summary

Plaintiff was employed as a jailer at the Greene County Jail from April 2002 until June 26,

2009, when Defendants terminated his employment. *Defendants' Statement of Uncontroverted*

*Material Facts* ¶ 8, 40. At the time of his termination, Plaintiff was the one of the oldest employee

at the jail. *Statement of Additional Uncontroverted Material Facts (hereinafter "SAUMF") ¶* 147.

Prior to March 2009, Plaintiff received positive feedback in his annual performance reviews and

was promoted to the rank of corporal in June, 2006. *SAUMF* ¶¶ 77, 107. In 2009, however,

Defendants embarked on a Kafkaesque crusade to force Plaintiff out his job due to his age.

Defendants disciplined Plaintiff for mistakes that were less serious than conduct engaged in by

younger employees and singled Plaintiff out for harsh treatment because of his age. *SAUMF* ¶¶ 30-

31. On March 27, 2009, Plaintiff requested training in the booking and release area of jail. *SAUMF*

¶ 148. Receiving this training would have been beneficial in Plaintiff's efforts to qualify for a

promotion. *SAUMF* ¶ 149. Defendant Jenkins and Sergeant Smith rejected Plaintiff's request.

*SAUMF* ¶ 29. Beginning in March, 2009, Defendants also began scrutinizing Plaintiff and kept a

secret log identifying mistakes they believed Plaintiff had made and comments about his complaints

of age discrimination and plans to sue the Sheriff's department. *See Exhibit 2 generally, Plaintiff's*

*performance log*. They also began to more overtly discriminate against Plaintiff. The discrimination

included, but was not limited to, counseling Plaintiff verbally and in writing when there was no

proof of misconduct, demoting Plaintiff from his rank as corporal, placing Plaintiff on six month's

probation, singling him out for more harsh treatment, altering Plaintiff's reports to make it appear as though Plaintiff was incompetent, failing to investigate his allegations of report tampering, deviating from the discipline policies and procedures governing discipline, and ultimately firing Plaintiff on June 26, 2009. *SAUMF* ¶¶ 9, 10, 31, 53, 60, 73-75, 88, 127, 138. Plaintiff timely filed his charge of discrimination with the Missouri Commission on Human Rights and with the Equal Employment Opportunity Commission and brought this suit against Defendants. Plaintiff sued each defendant in his individual and official capacities.

## Introduction

Count II of Plaintiff's amended complaint is an action brought under the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"). Plaintiff alleges that Defendants discriminated against Plaintiff with respect to the "compensation, terms, conditions, and privileges of his employment" because of Plaintiff's age. *Plaintiff's Second Amended Complaint*, ¶ 42. Plaintiff seeks his damages and attorney fees in connection with his age discrimination claim.

Defendants have moved for summary judgment claiming that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law. Defendants claim that they are entitled to summary judgment on Plaintiff's age discrimination claim because they disciplined and fired Plaintiff for reasons other than age. For the reasons set forth below the Court should deny Defendants' motion for summary judgment.

## Argument

### *Defendants are not entitled to judgment on Plaintiff's ADEA claim*

Defendants are not entitled to summary judgment on Plaintiff's age discrimination claim because genuine issues of material fact exist regarding the reason for Plaintiff's discipline and termination. Plaintiff may establish his ADEA claim against Defendants by direct or indirect evidence. *See Fast v. Southern Union Co., Inc.*, 149 F.3d 885, 889 (8th Cir. 1998). "Direct evidence

is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated." *Griffith v. City of Des* Moines, 387 F.3d 733, 736 (8th Cir. 2004).

## Direct Evidence of Defendants' Discrimination Supports Plaintiff's ADEA claim

STATISTICAL PROOF

Direct evidence exists to prove that Defendants' actions were motivated by Plaintiff's age. Proof that age was a determining factor in an employee's discharge may be established by "statistical evidence demonstrating a pattern of unwarranted discharges of older employees." *Walter v. KFGO Radio*, 518 F. Supp. 1309, 1314 (D.N.D. 1981) (citing *Taylor v. Teletype Corp.*, 648 F.2d 1129 (8th Cir. 1981)). According to the 8th Circuit, in both individual and class action Title VII ages cases, "[S]tatistical and other evidence is relevant to the individual claims because it is often a telltale sign of purposeful discrimination." *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 471 (8th Cir. 1984). The Eighth Circuit has used statistical evidence in both disparate treatment and disparate impact Title VII cases. *See Talley v. U.S. Postal Service*, 720 F.2d 505, 507-508 (8th Cir. 1983); *Meyer v. Missouri State Hwy. Comm'n.*, 567 F.2d 804, 810 (8th Cir. 1977); *see also Webb v. Derwinski*, 868 F.Supp 1184, 1187 (E.D.Mo. 1994) (citing *Crutchfield v. Maverick Tube Corp.*, 664 F.Supp. 455, 457 (E.D. Mo. 1987) (statistical as well as pattern and practice evidence are admissible to show discriminatory motive). Statistical proof is crucial to advancing the purposes of Title VII. *Segar v. Smith*, 738 F.2d 1249, 1279 (D.C. Cir. 1984). In fact, Title VII provides that if the disparity between selection for protected class employment decisions is sufficiently large so that the probability that the disparities resulted from chance is small, then a court will infer from the numbers alone that the disparity was a product of unlawful discrimination-unless the defendant can introduce evidence of a nondiscriminatory explanation for the disparity or can rebut the inference of discrimination in some other way. *Palmer v. Shultz*, 815 F.2d 84, 91 (D.C. Cir. 1987).

"Statistical analyses have served and will continue to serve an important role in cases in which the existence of discrimination is a disputed issue." *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 339 (1977). Courts frequently rely upon statistical evidence to prove a violation of Title VII because "In many cases the only available avenue of proof is the use of . . . statistics to uncover clandestine and covert discrimination by the employer or union involved." *Id.* 1884 [n. 20]. In its decision in *Hazelwood School District v. United States,* 433 U.S. 299, 307-08, (1977) the Supreme Court held, "Where gross statistical disparities can be shown, they alone in a proper case constitute prima facie proof of a pattern or practice of discrimination."

Said another way, "[W]hen a plaintiff's methodology focuses on the appropriate labor pool and generates evidence of [a disparity] at a statistically significant level," this evidence alone will be "sufficient to support an inference of discrimination." *Palmer v. Shultz*, 815 F.2d 84, 91 (D.C. Cir. 1987) (citing *Hazelwood*, supra). "If the difference between the expected value and the observed number is greater than two or three standard deviations, then the hypothesis that [the disparity] was random would be suspect." *Castaneda v. Partida,* 430 U.S. 482, 497 n. 17, (1977); *Hazelwood*, supra; see also *Palmer v. Shultz*, 815 F.2d 84, 92 (D.C. Cir. 1987).

District and appellate courts regularly perform statistical calculations *sua sponte* upon age and race data produced by parties. From their calculations, courts make decisions as to the likelihood that certain conduct was the result of a pattern and practice of discrimination.

The 2nd Circuit provided a detailed analysis of the use of statistical calculations in ADEA cases in *Ottaviani v. State Univ. of N.Y. at New Paltz*, 875 F.2d 365, 371 (2nd Cir. 1989).[4] There, the court outlined a statistical method for analyzing age discrimination case stating:

---

[4] Its principles apply to the standard deviation calculation formula announced and adopted in *Hameed v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 637 F.2d 506 (8th Cir. 1980). The calculation itself is simple enough that courts have preformed the calculation without the use of expert testimony. *See id.* at 513-514; *Truesdale v. Sabourin*, 2006 WL 118370, *12 fn 6

Before a deviation from a predicted outcome can be considered probative, the deviation must be "statistically significant." Statistical significance is a measure of the probability that a disparity is simply due to chance, rather than any other identifiable factor. . .

One unit of measurement used to express the probability that an observed result is merely a random deviation from a predicted result is the "standard deviation." The standard deviation "is a measure of spread, dispersion or variability of a group of numbers." Generally, the fewer the number of standard deviations that separate an observed from a predicted result, the more likely it is that any observed disparity between predicted and actual results is not really a "disparity" at all but rather a random fluctuation. Conversely, "[t]he greater the number of standard deviations, the less likely it is that chance is the cause of any difference between the expected and observed results." A finding of two standard deviations corresponds approximately to a one in twenty, or five percent, chance that a disparity is merely a random deviation from the norm, and most social scientists accept two standard deviations as a threshold level of "statistical significance." . . . Most courts follow the conventions of social science which set 0.05 [two standard deviations or a "Z Score" of 2] as the level of significance below which chance explanations become suspect. The existence of a 0.05 level of statistical significance indicates that it is fairly unlikely that an observed disparity is due to chance, and it can provide indirect support for the proposition that disparate results are intentional rather than random. (Extensive citations omitted).

The U.S. Supreme Court, the 8th Circuit Court of Appeals, and district courts agree that in Title VII cases, where the observed number of firings exceeds two standard deviations, chance no longer accounts for the behavior being challenged. *Hazelwood School Dist. v. U.S.*, 433 U.S. 299 (1977); *Craik v. Minnesota State University Bd.*, 731 F.2d 465 (8th Cir. 1984); *Inmates of Nebraska Penal and Correctional Complex v. Greenholtz*, 567 F.2d 1368 8th Cir. 1977); *Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847 (D. Minn. 1993); Hervey v. City of Little Rock, 599 F.Supp. 1524 (E.D. Ark. 1984); *Paxton v. Union Nat. Bank*, 519 F.Supp. 136 (E.D. Ark. 1981). The statistical significance of more than two standard deviations indicates that discriminatory bias is at play. In fact, plaintiffs may rely upon the fact that there are more than two standard deviations of difference from the expected result in proving their prima facie case.

---

(S.D. N.Y. 2006). The precise method to perform the calculation is set forth most clearly in *E.E.O.C. v. W. Elec. Co., Inc.*, 713 F.2d 1011, 1019 (4th Cir. 1983).

To perform the statistical analysis employed by the courts, we look first at the population of individuals Defendant Arnott hired and fired and disciplined/demoted to determine whether or not there has been any disparate treatment based upon age. Absent age discrimination, probability suggests that the Sheriff would hire, fire, discipline and demote individuals working in his jail in the same proportion as the age groups he initially hired over a period of time.

In examining whether or not discrimination has occurred, we first sample the Sheriff's Department's jail employees to determine the percentage of 40 and over workers. According to Defendant Arnott, there were 164 jail employees on October 7, 2011. *SAUMF*, ¶ 153. Thirty-nine were 40 and over (24.07%) and 123 were under (75.93%). *SAUMF*, ¶ 153. Their average (mean) age this date was 34.5. *SAUMF*, ¶ 153. Absent discrimination, the Sheriff should fire individuals in proportion to their percentage among his jail workforce. This is true because poor work performance does not favor the young or old. Assuming no other variables, and controlling for age, if the Sheriff discharged ten individuals, we would expect to see 2.4 individuals 40 and over discharged and 7.6 individuals 39 and younger discharged based upon the October 7, 2011 age mix, There will, of course, be slight disparities in the firing percentages due to chance. In these instances, courts use standard deviation calculations to determine whether there is some evidence of a pattern and practice of discrimination.


DISCHARGE

Sheriff Arnott's own affidavit in support of his motion for summary judgment proves a statistically significant pattern and practice of discrimination in his terminations. According to the affidavit, Defendant Arnott fired 17 individuals from 2008 to 2009. In fact, he left off one jail employee that was discharged -- 50 year old Yvonne Lassley who was fired 7/8/09. *SAUMF*, ¶ 154. Adding in the omitted employee shows he fired 18 individuals, 9 of whom were 40 and over and 9

of whom were under. Exhibit 15, Summary of Employment Data. Applying the standard deviation formula, we see that the Sheriff's actual firings of employees 40 and over are 2.6 standard deviations. *SAUMF*, ¶ 156. This means that there is only an approximate 1 in 100 probability that chance, and not age was the factor in terminating these older, protected employees. *SAUMF*, ¶ 157.

Analyzing all 40 and over discharged employees from 1/1/08 to present, shows a more alarming picture of discrimination. During this period, there were 28 total discharges with 16 being 40 and over. Only 7 of the 40 and over discharges were expected. The actual result varied from the expected result by 4.1 standard deviations. *SAUMF*, ¶ 160. The odds of this being chance and not related to age is nearly 1 in 15,787. *SAUMF*, ¶ 161. Summary judgment is inappropriate on Plaintiff's Title VII claim because the standard deviations exceed two with respect to Defendants' firing practices.

DISCIPLINE

Since 2008, Defendant disciplined 15 individuals. Ten were 40 and over and five were under 50. Exhibit 15, Summary of Employment Data. Based upon their expected prevalence in the population, the standard deviation was 3.86. Exhibit 26, Standard Deviation Calculation. Four standard deviations corresponds to approximately a 1 in 15,787 chance of randomness. *See Ottaviani*, 875 F.2d at 372 (2d Cir. 1989). It is, therefore, HIGHLY LIKELY that the disciplined individuals were singled out based upon their age. For this reason, summary judgment is inappropriate on Plaintiff's Title VII claim.

HIRING

The Sheriff's hiring data shows age bias as well. According to 2010 US census data, of the working age population age 20 - 64, 45% were 39 and below and 55% were 40 and above.[5]

---

[5] This government record can be found at: http://www.census.gov/compendia/statab/2012/tables/12s0. It is summarized as follows:
 2010 Population Working Age
21585999        20-24

*SAUMF*, ¶ 165.  From 2008 to present, 121 individuals were hired to work in the Greene County

Jail by Sheriff Arnott.  *SAUMF*, ¶ 166. Of those, only 20 were 40 or older.  *SAUMF*, ¶ 167. The

actual number of 40+ hires was 9.08 standard deviations less than expected based upon the

percentage of 40+ individuals in the US population.  Exhibit 26, Std. Dev. Calc.  The chance of this

being random is more than 1 in 500 billion.  This is irrefutable evidence of discriminatory bias in

the Sheriff's employment practices. Summary judgment is inappropriate on Plaintiff's Title VII

claim because of Defendants' clear discriminatory bias.

Plaintiff acknowledges that for some employees no dates of hire were provided by the

Sheriff's Department and were not factored into the statistical model.   See Exhibit 15, Summary of

Employment Data.  Plaintiff requested the hire dates in his second interrogatories number 1 and 2

where he asked for dates of hire for all employees in the jail division from January 1, 2008 to

present, collectively.  Defendant's response omitted dates of hire for eight employees. Exhibit 20,

Def. Supp. Resp. to Plaintiff's 2nd Interrogatories.[6] Any inferences about the missing dates of hire

should be resolved against the Sheriff due to his failure to provide the requested dates.   "The

adverse inference rule applies ...when a party has relevant evidence within its control which it fails

to produce." *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 762 (8th Cir.

2005).  Defendant was the sole party in possession of the age data.  For purposes of summary

judgment, all questions of fact must be resolved in favor of the non-moving party.  Therefore, it is

not improper to assume/adversely infer that for the omitted data, producing their ages would have

---

| 21101849 | 25-29 | | | |
| 19963099 | 30-34 | Subtotals | | |
| 20179642 | 35-39 | 82830589 | 39 and below | 45% |
| 20890964 | 40-44 | 102380409 | 40 and above | 55% |
| 22708591 | 45-49 | | | |
| 22298125 | 50-54 | | | |
| 19664805 | 55-59 | | | |
| 16817924 | 60-64 | | | |
| 185210998 | Total | | | |

[6] No dates of hire for employees:  Young, Thompson, J. Smith, RT (on Sheriff's affidavit), Routh, RN (on Sheriff's affidavit), Ritterhoff, and Holliday.

been unfavorable to Plaintiff and made the standard deviation difference even more compelling in Plaintiff's favor.

Anecdotal statistics would also allow a jury to find age bias. The Sheriff's data from 2008 to present shows that he only hires individuals 40 and over 16.5% of the time. However, he fires employees 40 and over 57% of the time. There is simply no explanation for this glaring disparity in the treatment of two similarly situated age groups other than age bias. A reasonable jury could find a Title VII violation by Defendant based upon the facts above, which prove the Sheriff's pattern and practice of hiring the young and firing and disciplining the old. Furthermore, this evidence is so compelling, it also rebuts Defendant's evidence of any legitimate non-discriminatory reason for terminating Plaintiff. For this reason, summary judgment is inappropriate on Plaintiff's Title VII claim.

ANECDOTAL PROOF

Furthermore, Defendants cannot produce evidence that they would have taken the same adverse employment action against Defendant if he was younger. Younger employees at the jail routinely avoided discipline for violations of the jail's internal policies and procedures, even where those violations were more serious than Plaintiff's purported violations.

Younger employees who engaged in serious misconduct avoided termination and even demotion, but Plaintiff, who was never accused of serious misconduct during his employment at the Greene County Jail, suffered both demotion and termination. Sergeant Smith, who is younger than Plaintiff, engaged in serious misconduct when he hit an inmate in the face after the inmate had already been handcuffed. *SAUMF* ¶¶ 42-43, 46. The only discipline Smith received for his serious misconduct was a written reprimand and 90 days probation. *SAUMF* ¶ 44. For Plaintiff's alleged spelling errors and attitude, he was demoted, given six month's probation and then fired. Sgt. Smith was not given time off without pay and was not put on probation for six months in any respect.

*Exhibit 8, Deposition of Kevin Spaulding  p. 98 and 99.*  Two months before Sgt. Smith was reprimanded for violating the inmate's civil rights, he received another written reprimand.  *SAUMF* ¶ 45. Unlike Smith, Plaintiff was never accused of causing another person physical harm. Plaintiff also was never accused of exposing Greene County to any civil liability, which Smith risked when he slapped the inmate. Even though Defendants admit that Smith's actions constituted serious misconduct, he received less discipline than Plaintiff for more serious misconduct. Plaintiff's probationary period was twice as long as Smith's. Smith did not lose a single moment of work through suspension or termination, yet Plaintiff lost his job.

Other employees, including many who directly participated in Plaintiff's disciplinary process, were involved in a series of scandalous photographs for which they received less severe discipline than Plaintiff. All of the individuals shown in the photographs are younger than Plaintiff. *SAUMF* ¶ 21. Defendant Jenkins, Plaintiff's supervisor who wrote up Plaintiff for spelling errors and poor attitude, took photographs of jail staff engaging in conduct that violated jail policies and procedures. *SAUMF* ¶ 11. The photographs depict Defendant Jenkins' subordinates (1) pretending to slide down the fire escape in an inmate's bed; (2) exposing their nipples through the visitation window; (3) grabbing one another's genitals through clothing; (4) attaching leashes to employees; (5) simulating licking each other; and (6) general homo-eroticism. *SAUMF* ¶ 12.

Sheriff Arnott testified that jail employees sliding down the stairs on a daybed would not be acceptable under the Sheriff's Office policies and procedures. *SAUMF* ¶¶ 13-14. He also stated that Jail employees going into the visitation area and taking their uniform tops off and showing their nipples through the glass to other employees would not be acceptable under the policies and procedures. *SAUMF* ¶¶ 13-14. Sheriff Arnott classified the conduct as serious and stated that it violated the Greene County Sheriff's Office policy prohibiting conduct unbecoming an officer.

*SAUMF* ¶¶ 16-17. No one ever reported the egregious conduct in the photographs to Sheriff Arnott. *SAUMF* ¶ 18.

Sheriff Arnott expects that supervisors who witness this behavior report it. *SAUMF* ¶ 15. Sheriff Arnott expected Defendant Jenkins to write up the employees shown in the photographs. *SAUMF* ¶ 19. Defendant Arnott testified that if Defendant Jenkins was writing up Plaintiff for spelling errors, he should also have written up the employees who were exposing their breasts and nipples through the visitation windows. *SAUMF* ¶ 20. Contrary to these expectations, Defendant Jenkins did not discipline any of the younger, similarly-situated individuals he photographed as shown in Exhibit 13 at the time of the misconduct. *SAUMF* ¶ 22.

The only punishment levied against the employees in the photographs was a written reprimand. *SAUMF* ¶ 146. Defendant Jenkins also skated by with a written reprimand. *SAUMF* ¶ 146. Written reprimands are more serious than written counseling reports. *SAUMF* ¶ 129. However, Plaintiff was demoted and fired even though he never received a written reprimand. *SAUMF* ¶ 47. Not only did Plaintiff not receive a written reprimand before his termination, he only had one written counseling report in his file and did not receive any verbal counseling other than what was attached to the written counseling report. *SAUMF* ¶¶ 48-49. In spite of the potentially damaging nature of the photographs, Plaintiff received harsher punishment. None of the photographed employees were demoted, received days off without pay, were placed on probation or were terminated after they received the reprimand. *SAUMF* ¶¶ 130-131.

Sergeant Thomas Canter, who is younger than Plaintiff and was involved in Plaintiff's disciplinary process, committed the same errors that Defendants allege Plaintiff committed, but was not disciplined. *SAUMF* ¶¶ 64, 67-68. One of the primary complaints leveled against Plaintiff was that his reports contained spelling, typographical, and other errors. *SAUMF* ¶¶ 3, 11. Sergeant

Canter wrote and Defendant Jenkins signed[7] the written counseling in Plaintiff's case. *SAUMF* ¶ 23-24. That report contains a number of typographical errors in it including an incomplete sentence in the fourth paragraph of the areas Plaintiff was supposed to improve on. *SAUMF* ¶ 64; *Exhibit 5, 5/10/09 Counseling Report*. Sergeant Canter also incorrectly wrote, "Since this conversation on 03/28/09, there has [sic] been numerous instances . . ." *Exhibit 5, 5/10/09 Counseling Report*. Sergeant Canter also improperly capitalized the words "officer" and "corporal" repeatedly in the report. *Exhibit 5, 5/10/09 Counseling Report*. The second page of the report begins with the sentence: "It is recommended . . . that you that you [sic] be reduced in rank." *Exhibit 5, 5/10/09 Counseling Report*.

Canter also received no discipline for making errors when he conducted the tray count at meal time. *SAUMF* ¶ 69.One of the complaints made in Plaintiff's performance log was that on March 27, 2009 he made an error on the tray count. *Exhibit 2, Plaintiff's performance log, labeled 00088, 3/27/09 entry*. Sergeant Canter admitted that he has made mistakes during tray count, but has never been disciplined. *SAUMF* ¶¶ 68-69.

Plaintiff's written counseling was also based on Plaintiff's locking down the B-Pod early on January 27, 2009. *Exhibit 5, May 10, 2009 Counseling Report*. Younger employees who locked down B-Pod avoided discipline. On January 28, 2009, Plaintiff and Officer Wade locked B-Pod down early because inmates were making vulgar and obscene comments to jail staff. *SAUMF* ¶ 90. B-Pod had also been locked down early on January 23, 2009 by Plaintiff, January 24, 2009 by Officer Haskins, January 25, 2009 by Officer's Carr and Gostiac, and January 26, 2009 by Corporal Wilcox. *SAUMF* ¶ 91. The younger employees who also locked the POD down before Plaintiff,

---

[7] Defendant Jenkins was also not disciplined for submitting the report with typographical errors. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 including the corresponding Bates stamped documents produced by defendants 1646-1654, 1655-1671, 1773, and 1672-1673. Major Spaulding was not disciplined even though his June 16, 2009 memorandum to Defendant Arnott contained two spelling errors. *SAUMF* ¶¶ 118-119.

including Officers Haskins, Carr, Wilcox, Wade, and Gostiac, avoided any discipline even though they made the same decision as Plaintiff. *SAUMF ¶¶ 92-101.*

The disparate manner in which Defendants disciplined Plaintiff is direct evidence that they discriminated against him with respect to his age. As shown above, younger employees who made errors in their reports, engaged in serious misconduct, used excessive force on inmates, and locked down the B-Pod early avoided the harsh punishment imposed on Plaintiff. Had Plaintiff been younger, he, like the other younger employees, would likely have avoided discipline.

## Indirect Evidence of Defendants' Discrimination Supports Plaintiff's ADEA claim

There is also indirect evidence of Defendants' discrimination sufficient to overcome Defendants' motion for summary judgment. When a plaintiff cannot produce direct evidence of age discrimination, courts apply the burden-shifting approach described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To avoid summary judgment when the court applies the *McDonnell Douglas* analysis, the plaintiff must create "the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2010). Under the *McDonnell Douglas* approach, plaintiffs must first establish a prima facie case of discrimination. *Id*. at 890. The burden then shifts to the defendant employer, who must offer a non-discriminatory reason for the adverse employment action. *Id*. The burden then shifts back to the plaintiff to "show that the employer's explanation is actually a pretext for discrimination." *Id*. At this stage, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000). Once a plaintiff proves his or her prima facie case and "the evidence is sufficient to allow a reasonable jury to reject the defendant's non-discriminatory explanations," the ultimate question of whether the employer intentionally discriminated against the

employee because of the employee's age <u>must</u> be left to the trier of fact to decide. *Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104, 1110 (8th Cir. 1993).

In the *Reeves* case, the Supreme Court resolved a conflict among courts regarding whether a plaintiff's prima facie case together with evidence that an employer's alleged nondiscriminatory reason for taking adverse employment action was pretextual was adequate for a finding of discrimination. *Id*. at 140. The *Reeves* plaintiff was a 57 year old supervisor. *Id*. at 137. He supervised one line of products while another employee in his mid thirties supervised another line. *Id*. Both employees were supervised by a manager who was 45 years old. *Id*. During an audit, it was determined that all three employees committed timekeeping errors and misrepresentations. *Id*. at 138. The two older employees were both fired after the audit, but the younger supervisor kept his job. *Id*. The 57 year old filed suit under the ADEA and his employer claimed that he was fired because of the errors discovered during the audit. *Id*. At trial, the plaintiff introduced evidence that he had not made the alleged errors as evidence of pretext. *Id*. The jury found in favor of the employee, but the Fifth Circuit court of appeals reversed, finding that the employee "had not introduced sufficient evidence to sustain the jury's finding of unlawful discrimination." *Id*. at 139.

Reversing the Fifth Circuit's decision, the Court stated:

> It is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation . . . Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt . . . Thus, <u>a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.</u> *Id*. at 143-148 (emphasis added).

The Court concluded that the *Reeves* plaintiff had satisfied the evidentiary requirements set forth in *McDonnell Douglas*, making it reasonable for the jury to find in his favor. *Id*. at 153-154.

The *Reeves* decision upheld an Eighth Circuit case from 1993 in which the Eighth Circuit found that if (1) the elements of a prima facie case are present, and (2) there exists sufficient evidence for a reasonable jury to reject the defendant's proffered reasons for its actions, then the evidence is sufficient to allow the jury to determine whether intentional discrimination has occurred. *See Gaworksi*, 17 F.3d at 1109. In *Gaworski*, the Eighth Circuit stated that if these two prongs are satisfied "We are without power to reverse the jury's finding." *Id*. Thus, if Plaintiff in this case makes out his prima facie case and shows that Defendants' purported reasons for taking adverse action against him are pretextual, the evidence is legally sufficient for a jury to find that Defendants intentionally discriminated against Plaintiff based on his age.

To make a prima facie age discrimination claim, Plaintiff must show (1) Plaintiff was at least forty years old; (2) Plaintiff suffered adverse employment action; (3) Plaintiff was meeting his employer's legitimate expectations at the time of the adverse employment action; and (4) Plaintiff was replaced by someone substantially younger. *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1039 (8th Cir. 2007). Plaintiff has met each of these elements.

Defendants concede that Mr. Grissom was older than forty at the time of his termination. *See Defendants' Suggestions in Support of Motion for Summary Judgment (doc. 52)*, p. 32. Plaintiff suffered adverse employment action when Defendants refused to permit Plaintiff to work in booking and release, demoted Plaintiff, and terminated him. Plaintiff requested training in booking and release so that he would be qualified for a promotion. *Exhibit 1, Affidavit of Stanley Grissom*, ¶ 92. Defendants have offered conflicting reasons when questioned about their reasons for denying Plaintiff's request. Defendant Coonrod stated that Plaintiff was not allowed to work in booking and release because Sergeant Smith did not feel comfortable with Plaintiff working in booking and release. *SAUMF* ¶ 136. Plaintiff's performance log suggests that he needed to improve in certain areas to work in booking and release. *Exhibit 2, Plaintiff's performance log, p.* 00088, 3/28/09

entry. Defendant Jenkins testified that Plaintiff could not train in booking and release because another employee had already been assigned there. *Exhibit 4, Deposition of Defendant Jenkins 169:9-19.* The varying reasons for why Defendants denied Plaintiff's request suggests that the reasons are inaccurate and Defendants are not being truthful. Because younger employees routinely trained in booking and release, it is reasonable to infer that Defendants rejected Plaintiff's request because of his age. *SAUMF* ¶ 172.

Defendants contend that Plaintiff was not meeting expectations; however, substantial evidence proves otherwise. During the seven years he worked at the Greene County Jail, Plaintiff was a good employee who received positive evaluations from his superiors. Plaintiff received a "very good" rating on his annual performance reviews from 2002 until he was terminated. *SAUMF* ¶ 77. "Very good" annual performance reviews are above average and mean the employee is doing more than expected. *SAUMF* ¶ 78. Stanley Grissom knew how to do his job, did not receive any negative feedback, knew what was expected, and knew how to fit into the jail environment. *SAUMF* ¶ 79. Defendant Jenkins, who submitted Plaintiff's written counseling and recommended that Plaintiff be demoted, supervised Plaintiff from 2006 to 2009 and signed off on each of Plaintiff's positive performance reviews during that period of time. *SAUMF* ¶ 76.

Plaintiff was promoted to the rank of corporal on June 1, 2006. *SAUMF* ¶ 107. While Defendant Jenkins supervised Plaintiff from 2006 to May 2009, Plaintiff was not demoted, did not receive a negative employee review, did not receive any counseling reports, did not receive any reprimands, did not show up late for work, and was not subjected to any investigations into his conduct. *SAUMF* ¶¶ 108-113. Also, Plaintiff did not receive any notations in his file that he was a bad speller, that he displayed poor leadership qualities, or that he was a bad influence and spread rumors. *SAUMF* ¶¶ 114-116. In fact, Mr. Grissom's personnel file contains memoranda commending him. Plaintiff's 2004 annual performance review states, "Officer Grissom worked for

my shifts this entire period. He's performed several post assignments including pod officer, escort and master control. Grissom works well with other officers as well as inmates and his overall performance has been very good." *SAUMF* ¶ 124. Plaintiff's 2007 performance review states, "Corporal Grissom has performed as active housing sergeant, training officers as well as assisting with new employee background investigations with positive results. He has improved his use of lead time, went to shift C, is punctual for duty, accepts supervisor responsibilities with positive results, he's an asset to shift C, and this department." *SAUMF* ¶ 121. In his 2008 performance review, Plaintiff was lauded for his work as housing sergeant. The review states, "[Plaintiff] performed background checks for new hire employees and as a field training officer after hiring. He has used three days of sick leave for this year, he is punctual for duty, arriving early for briefing, he assures all staff get relief when assigned to escort." *SAUMF* ¶¶ 118-119.

Furthermore, there is no evidence that Plaintiff engaged in any misconduct to justify his being subject to discipline and termination. Defendant Coonrod testified that Plaintiff did not violate any specific Greene County Sheriff's Office policies to justify being terminated. *SAUMF* ¶ 106. Even though the areas in which Plaintiff worked were covered by video surveillance, Defendants have not produced surveillance footage showing Plaintiff engaged in misconduct. *SAUMF* ¶¶ 4-5. Videos of the jail are saved in perpetuity and if there were incidents of Grissom not doing his job, Defendant could have reasonably found those. *SAUMF* ¶ 1. Sheriff Arnott testified that the stationary video apparatus records the day-to-day jail activities so there can be no question about what happened at a particular time. *SAUMF* ¶ 2. The Sheriff also testified that surveillance allows him to see what happened at a particular point in time so there is no question about it. *SAUMF* ¶ 2. The reasonable inference from Defendants lack of production of any video depicting Plaintiff failing to perform is that Plaintiff did not fail to perform his job duties.

The lack of evidence of flaws in Plaintiff's report writing also proves that Plaintiff was fulfilling his job duties. While Defendants claim they disciplined Plaintiff because he made numerous mistakes in his reports, Defendants have not produced a single report with an error. *SAUMF* ¶¶ 3, 7. While Plaintiff was working at the jail, Defendants did not show him any of his reports containing errors. *SAUMF* ¶ 8. Defendant Coonrod could not show one report that was "screwed up" that the Sheriff saw before the decision was made to fire Plaintiff. *SAUMF* ¶ 6. Even if there were mistakes made in Plaintiff's daily logs or other reports, they were there because other jail employees doctored or changed Plaintiff's reports to get Plaintiff in trouble. *SAUMF* ¶ 9.

The lack of proof of misconduct by Plaintiff supports Plaintiff's position that he was fulfilling his job duties. Defendant Arnott, who made the final decision to terminate Plaintiff, never personally observed any deficiencies in Plaintiff's job performance. *SAUMF* ¶ 25. While Defendant Jenkins said Stanley Grissom's failure to make his assigned rounds was continuous, he was unable at his deposition to identify a single day or shift on which Mr. Grissom failed to make any rounds. *SAUMF* ¶ 80. Even though Major Spaulding recommended that Plaintiff be demoted because he placed himself and others in dangerous situations, Defendant Jenkins never saw Plaintiff place himself or others in a dangerous situations, the May 10, 2009 counseling report does not contain any reference to any dangerous situations, and Plaintiff's personnel log does not reference any dangerous situations. *SAUMF* ¶¶ 82-85. Plaintiff's counseling report or log does not contain any specific notes about incidents that should have been reported by Plaintiff, but were not. *SAUMF* ¶ 134. They also do not contain notes about rumors that Plaintiff started or spread. *SAUMF* ¶ 135.

Defendants refer to Plaintiff's locking down B-Pod as a failure to execute his job duties; however, Plaintiff was justified in locking down the pod. *SAUMF* ¶ 90. On January 28, 2009, Plaintiff locked the pod down early because inmates were making vulgar comments to a jail nurse and to the jailers and individual discipline was ineffective. *SAUMF* ¶ 90.

Plaintiff's personnel file, his work history, and Defendants' own testimony, show that Defendants' claim that Plaintiff was not fulfilling his job duties is meritless. Plaintiff was, in fact, meeting the expectations of this employer at the time of his discipline.

Hiring data shows that younger correctional officers replaced Plaintiff. After Plaintiff was fired, the Sheriff hired two 30 year old male jailers on July 8, 2009—Benjamin Julina and Nicholas Shepard. That month he also hired 35 year old Jason Humphrey, 36 year old Donnell Evans, 35 year old David Carnagey, and 28 year old Christopher Sowers. He also hired 24 year old Matthew Roper on August 5, 2009. *SAUMF*, ¶ 177. Thus, the overwhelming evidence shows that younger correctional officers replaced Plaintiff.

Because Plaintiff has satisfied the first prong of the *McDonnell Douglas* analysis, the burden shifts to Defendants to show that they had a legitimate, non-discriminatory reason for terminating Plaintiff. Here, Defendants recite a number of supposed reasons for disciplining and terminating Plaintiff. Assuming without admitting that Defendants' purported reasons for terminating Plaintiff satisfy the second prong of the *McDonnell Douglas* test, the burden shifts back to Plaintiff to show that Defendants' purported justification for termination is pretextual. *See Torgerson*, 643 F.3d at 1046.

## Defendants are not entitled to summary judgment on Plaintiff's ADEA claim because Defendants' offered reasons for adverse employment action are pretextual

Once the burden shifts back to Plaintiff, Plaintiff must show that "the proffered reason was not the true reason for the employment decision." *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 494 (8th Cir. 1990) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981)). To rebut an employer's reasons for the employment action, Plaintiff must prove by a preponderance of the evidence that defendant's offered reasons were a pretext for discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (quoting *Burdine*, 450 U.S. at 253). At

this stage, Plaintiff must show that his age was the "but-for" cause of Defendants' decision. "As a matter of both common sense and federal law, an employer's submission of a discredited explanation for firing a member of a protected class is itself evidence which may persuade the finder of fact that such unlawful discrimination actually occurred." *MacDissi v. Valmont Industries, Inc.*, 856 F.2d 1054, 1059 (8th Cir. 1988).

      An ADEA plaintiff can avoid summary judgment after the employer produces a legitimate, non-discriminatory reason for terminating the employee if the evidence "(1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision." *Mayer v. Nextel West Corp.*, 318 F.3d 803, 807 (8th Cir. 2003) (quoting *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1336-1337 (8th Cir. 1996)). In determining whether Defendants' purported reasons for terminating Plaintiff are pretextual, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case "and inferences properly drawn therefrom." *Reeves*, 530 U.S. at 143. The Eighth Circuit has found that a plaintiff may rely solely on the evidence it presented in establishing the prima facie case or it may introduce additional evidence to rebut the employer's offered justification. *Muldrew v. Anheuser-Busch, Inc.*, 728 F.2d 989, 991 (8th Cir. 1984). Whether an employer's reason for terminating an employee is pretextual is a question of fact. *Stewart v. Independent School Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007). Credibility determinations and the weighing of the evidence are jury functions, not those of a judge. *Wierman v. Casey's General Store*, 638 F.3d 984, 993 (8th Cir. 2011) (citing *Reeves*, 530 U.S. at 150).

      Defendants singling Plaintiff out for discipline when younger employees who committed duty violations received no discipline or less severe discipline shows that Defendants' supposed reasons for terminating Plaintiff are pretextual. *See Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1167-1168 (10th Cir. 2007). For disparate application of discipline policies to

support an inference of pretext, the plaintiff and the other employees who received more lenient forms of discipline must have been similarly situated. *EEOC v. Kohler Co.*, 335 F.3d 766,775-776 (8th Cir. 2003). Employees are similarly situated only when they are involved in or accused of the same offense and are disciplined in different ways. *Harvey v. Anheuser-Busch, Inc.,* 38 F.3d 968, 972 (8th Cir. 1994). "To be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of comparable seriousness." *Id*. (internal citations omitted).

In *Spulak v. K Mart Corp.*, the employee claimed that he was constructively discharged because of his age. *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1154 (10th Cir. 1990). After the employer presented non-discriminatory reasons to support the actions taken against the employee, the employee successfully rebutted the offered reasons by showing that the policy violations upon which K Mart relied were selectively enforced against the employee. *Id*. at 1155.

In the *Kohler* case[8] cited above, the employer claimed that it terminated the plaintiff employee because of the company's zero-tolerance policy for employees who accepted pay for time that the employee did not work. *Id*. at 774-775. The employer claimed that the plaintiff employee was not similarly situated because of other violations of company policy. *Id*. 775. The EEOC, however, offered evidence of four other employees who violated the zero-tolerance policy, but were not terminated. *Id*. at 775. The court found that the employer's lax enforcement of company policies for employee discipline undermined its reasons for terminating the plaintiff. *Id*. The court stated that it had long held that "[i]n a jury case, where conflicting inferences reasonably can be drawn from evidence, it is the function of the jury to determine what inference shall be drawn." *Id*. at 777 (internal citations omitted). The court found that the *Kohler* jury reasonably inferred that the employer's reasons for terminating the plaintiff were pretextual. *Id*.

---

[8] The *Kohler* case was a Title VII case in which the plaintiff brought retaliation claims based on his complaints of racial discrimination. The standards applied in *Kohler* are identical to those applied in age discrimination cases. *See Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 448 (8th Cir. 1993) (The allocation of the burden of proof in ADEA cases is the same as in cases arising under Title VII); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008).

A reasonable jury could infer that Defendants' purported reasons for discharging Plaintiff are pretextual in light of the disparate enforcement of the discipline policy and Defendants' failure to investigate changes made to Plaintiff's reports. Like the defendants in *Kohler*, Defendants here failed to administer the same level of discipline to similarly situated employees. As discussed above, Sergeant Canter made several mistakes on Plaintiff's written counseling report, but did not receive any discipline. Defendant Jenkins also made errors in the reports he prepared, but avoided any discipline for those errors. *SAUMF*, ¶¶ 64, 132-133. Plaintiff, on the other hand, received a written counseling report, a demotion, and was ultimately discharged. This assumes, however, that Plaintiff made the errors in the reports. Defendants never showed Plaintiff any reports he prepared that contained errors. Also Defendants have not produced in discovery any reports that contain errors made by Plaintiff. Both Plaintiff and Canter made mistakes during tray count, but only Plaintiff had the mistake noted in his performance log. Had the discipline policy been administered uniformly, both Plaintiff and Canter would have received the same discipline. Because Plaintiff was older than Sergeant Canter, however, only he was disciplined for the alleged violations.

Not only did similarly situated employees avoid discipline, other employees avoided discipline when their conduct was more serious than Plaintiff's. As discussed above, Sergeant Smith, who slapped an inmate in the face, kept his job, was not demoted, and even had a probationary period one-half as long as Plaintiff's. The jail employees involved in the photo scandal all avoided demotion and termination. In connection with Plaintiff's demotion, however, Major Spaulding recommended that Plaintiff be reduced in rank, put on six months of probation, and be prohibited from off duty and extra duty assignments. *SAUMF*, ¶ 39.

Defendants claim that they disciplined Plaintiff because he did not follow jail policy; however, like the defendant in *Kohler*, Defendants failed to follow the Sheriff's Office's policies and procedures when they disciplined Plaintiff. "An employer's failure to follow its own policies

may support an inference of pretext." *Floyd v. State of Missouri Dept. of Social Services*, 188 F.3d 932, 937 (8th Cir. 1999). The Greene County Sheriff's Office has a formal discipline policy that applies to all of its employees. *SAUMF* ¶ 33. Sheriff Arnott testified that the policies are a big deal and that he expects his employees to abide by them where mandated. *SAUMF* ¶¶ 70, 72. Defendant Arnott admits that the policies create rights and responsibilities. *SAUMF* ¶ 71. Policy 2-21-1 provides: "In the event that a member shall . . . violate any directive, general order, policy or procedure, or demonstrate any degree of negligence in the performance of their expected duties, it shall be necessary for supervisory personnel to discipline their subordinates." *SAUMF* ¶ 34. The policy also defines misconduct as violating a "general order, published rule or written policy or procedure." *SAUMF* ¶ 35.

The first level of discipline if the employee has not engaged in serious misconduct is verbal counseling. *SAUMF* ¶ 36. In conjunction with verbal counseling, the jail officer administering the counseling is **required** to prepare an internal memo. *SAUMF* ¶ 37. The internal memo is to contain a synopsis of the event or other information, the violation of expected conduct, a plan of action to remedy the action, and is to be kept by the division captain. *SAUMF* ¶ 38. Defendants claim that one internal memo was prepared in Plaintiff's case; however, that memo does not comport with the discipline policy. *SAUMF* ¶¶ 55-56. There are no internal memos contained in Plaintiff's personnel file that document any verbal counseling. *SAUMF* ¶ 56. The only thing in Plaintiff's personnel file that resembles an internal memo is Plaintiff's performance log, which documents a discussion that took place between Plaintiff and Defendants. *Exhibit 2, Performance Log* p. 00088-00089, 3/28/09 entry. That March 28, 2009 conversation was prompted by Plaintiff's request to train in booking and release and was not instigated by any misconduct on Plaintiff's part. Defendants did not tell Plaintiff that he needed to improve his work performance or he risked losing his job. *SAUMF* ¶ 62. Instead he was only counseled that he needed to improve in certain areas if he wanted to work in

booking and release. *SAUMF* ¶ 62. Because there was no misconduct, there was no verbal counseling. Because there was no verbal counseling, Plaintiff's performance record cannot constitute an internal memo. By failing to prepare the internal memo, Defendants clearly violated the Sheriff's Office's policies and procedures concerning verbal counseling.

If the employee <u>continues to</u> violate the policies and procedures, the discipline policy states that the employee is to receive written counseling. *SAUMF* ¶¶ 57-58. With written counseling, the administering official <u>must</u> request from the employee in writing a written narrative documenting the employees' actions. *SAUMF* ¶ 59. The employee then returns the request with the narrative and a plan of action to remedy the situation. *SAUMF* ¶ 59. The supervisor then attaches the employee's submission to the written counseling form and schedules a meeting with the employee to discuss the incident and to sign the written counseling form. *SAUMF* ¶ 59.

Defendants admit that they did not follow any of the first three subsections of the provision governing written counseling. *SAUMF* ¶ 73. They did not require Plaintiff to submit a written statement about his actions. *SAUMF* ¶ 74. There was nothing prepared by Plaintiff and containing anything resembling a narrative or a plan of action that was attached to the written counseling form. *SAUMF* ¶ 75; Exhibit 5, Written Counseling Report.

Just as the court in *Kohler* found pretext based in part on the employer's failure to follow its own discipline policy, the court should find that Defendants' reasons for taking adverse employment action against Plaintiff are pretextual. Furthermore, it is hypocritical for Defendants to discipline Plaintiff for his failure to abide by the Sheriff's Department's policies and procedures, then ignore them while administering discipline.

In addition to the violation of the 2-21-1, the discipline procedures employed by Defendants were unfair and contrary to notions of due process. Plaintiff did not receive any notice or an opportunity to be heard before the Sheriff demoted him and placed him on probation. *SAUMF* ¶ 40.

The counseling report alleges that Plaintiff failed to show improvement in these areas, which justified the written counseling; however, none of the instances cited as support that Plaintiff had not improved in the areas discussed during the March 28 communication actually relate to the four areas Plaintiff had been counseled improve on. *SAUMF* ¶ 66.

Plaintiff was demoted from the rank of corporal only one day after the written counseling. *SAUMF* ¶ 130. Defendant Coonrod acknowledged that one day was insufficient time for Plaintiff to show improvement in five areas. *SAUMF* ¶ 128. Also, the memorandum from Major Spaulding recommending Plaintiff's termination states that Major Spaulding reviewed Plaintiff's performance log for the thirty days since Plaintiff's demotion; however, thirty days had not elapsed since the demotion. *SAUMF* ¶¶ 86.

The inherent unfairness in the discipline process and Defendants' rejection of the discipline policy prove the pretextual nature of Defendants' offered reasons for terminating Plaintiff. Had Defendants been justified in taking adverse action against Plaintiff, they would not have attempted to short circuit the disciplinary process in order to deprive Plaintiff of his opportunity to be heard and to contest Defendants' allegations.

Employees have also successfully rebutted the proffered non-discriminatory reasons for discharge by showing that even with some performance issues, the employee would not have been discharged but for her age. *Roush v. KFC Nat. Mgt. Co.*, 10 F.3d 392, 396-397 (6th Cir. 1993). In *Roush*, the employee had been "informed in a number of performance reviews that her performance was inadequate in four areas. *Id*. She also received four disciplinary notices and was put on employment probation. *Id*. The court relied on the employee's evidence that in spite of the disciplinary issues, her performance reviews showed that she was either meeting or exceeding expectations in finding that a reasonable jury could have concluded that the employer's reason for terminating the plaintiff were pretextual.

Like the Plaintiff in *Roush* who received positive performance reviews, Plaintiff received positive annual performance reviews from 2002 to 2008. *SAUMF* ¶ 77. Plaintiff's reviews showed that Plaintiff was an above average employee. *SAUMF* ¶¶ 77-78. Stanley Grissom's evaluations showed that he knew how to do his job, did not receive any negative feedback, knew what was expected, and knew how to fit into the jail environment. *SAUMF* ¶ 79. If Defendants are to be believed, Plaintiff, who had no history of misconduct or discipline issues and had proven to be an above-average employee over his seven year service at the jail, suddenly became such a poor employee that Defendants had no choice but to terminate him within six months of the first entry on his performance log. Plaintiff's past performance belies Defendants' claims that Plaintiff's conduct justified his termination and shows that Defendants' claimed reasons for terminating Plaintiff are pretextual.

Plaintiffs can also "establish pretext by introducing evidence to prove that the reason stated by the employer, 'though facially adequate, was untrue as a matter of fact or was, although true, a mere cover or pretext' for illegal discrimination.'" *Matter of Interco Inc.*, 211 B.R. 667, 681 (Bankr. E.D. Mo. 1997) (citing *Normand v. Research Inst. of America, Inc.,* 927 F.2d 857, 859 (5th Cir.1991)).

In *Corneveaux v. CUNA Mut. Ins. Group*, a potential employee offered contradictory evidence to each of the five reasons offered by the employer who refused to hire her. *Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1503-1504 (10th Cir. 1996). Reversing the trial court's decision to grant the employer judgment as a matter of law, the Tenth Circuit Court of Appeals stated:

> For each reason CUNA gave for not hiring Ms. Corneveaux, she introduced contradictory evidence from which a reasonable jury could conclude CUNA's explanations were pretextual. It was a matter of whether the jury believed Ms. Corneveaux or CUNA's representatives. . . This case presented material factual disputes which should have been resolved by the trier of fact. If the jury had found

CUNA's reasons to be pretexts for age discrimination then it could have inferred intentional discrimination and found in favor of Ms. Corneveaux." *Id*. at 1504.

Like the Plaintiff in *Corneveaux*, Plaintiff has rebutted Defendants' reasons for taking adverse action against him.

As discussed in detail above, there is no evidence in this case (aside from Defendants' self-serving statements) to establish that Plaintiff did any of the things Defendants claim justify his demotion and termination. There is no video footage of Plaintiff committing the policy violations. *SAUMF* ¶ 4. Defendants did not document in Plaintiff's performance log or written counseling any dangerous situations Plaintiff created for himself or others, any rumors that Plaintiff started or spread, or any incidents that Plaintiff should have documented but didn't. *SAUMF* ¶¶ 84-85, 134-135.

Defendants also have not produced any reports authored by Plaintiff containing errors. *SAUMF* ¶¶ 6-7. There is nothing in Plaintiff's personnel file from before January 2009 to suggest that there were any deficiencies in Plaintiff's reports. *SAUMF* ¶ 140. When Defendants confronted Plaintiff about errors in his reports, Plaintiff offered an explanation for the errors. He stated that someone else must be altering the reports to mess with him. *SAUMF* ¶ 9. Defendants admit that anyone could have accessed and altered Plaintiff's daily logs. *SAUMF* ¶ 81. Even after Plaintiff told Defendants that someone was changing his logs, Defendants took no action to investigate Plaintiff's allegations. *SAUMF* ¶¶ 10, 53, 138-139, 144 Defendants simply ignored Plaintiff's claims and fired him. Because Defendants' purported reasons for taking adverse employment action against Plaintiff are unsupported by facts, they are necessarily pretextual.

After Major Spaulding learned that Plaintiff intended to bring an age discrimination claim against Greene County, he recommended to Defendant Arnott that he terminate Plaintiff. *SAUMF* ¶ 104. The timing of Plaintiff's discipline, demotion, and termination also suggests that Defendants' reasons for disciplining and terminating Plaintiff are pretextual. Defendant Jenkins knew that

Plaintiff was making age-related complaints more than one month before he was terminated. *SAUMF* ¶ 105. Major Spaulding received a memorandum from Sergeant Canter reciting a statement by Plaintiff that, "It's okay. I've still got an ace up my sleeve. I'm an old man. If they try to do anything, I'll pull the age card and claim age discrimination." *SAUMF* ¶¶ 102-103. The only two new events that occurred between Plaintiff's written counseling and his demotion were his calling in sick with a kidney stone and his making a statement that he would file a suit for age discrimination. *SAUMF* ¶ 142. An entry in Plaintiff's performance log nine days before he was terminated states that Plaintiff was going to "sue the county for among other things 'age discrimination' and knows he has contacted an attorney." *SAUMF* ¶ 28. Major Spaulding and Defendant Arnott knew about Plaintiff's intention to sue the county before his termination because Plaintiff's performance log for the time following his demotion was attached to Major Spaulding's June 16, 2009 memorandum. *Exhibit 6, June 16, 2009 memorandum from Major Spaulding to Defendant Arnott*. In fact, Defendant Arnott received Plaintiff' performance review and counseling report prior to making his decisions to demote and terminate Plaintiff. *SAUMF* ¶ 27. Major Spaulding attempted to conceal the fact that Plaintiff's complaints of age discrimination motivated Defendants to terminate Plaintiff by omitting the entry containing these complaints when listing reasons for Plaintiff's termination on the June 16, 2009 memorandum. *SAUMF* ¶¶ 51-52.

The short passage of time after Plaintiff complained about age discrimination to Defendants' decision to demote and terminate Plaintiff, suggests Defendants' other reasons for Plaintiff's discipline are pretextual. Had Defendants' reasons for Plaintiff's been lawful, Plaintiff's statements about age discrimination would not have instigated such a swift response from Defendants.

The undisputed facts in this case are sufficient to convince a jury that "the employer's reason was pretextual and that the plaintiff's prima facie proof sustained the case." *See Haglof*, 910 F.2d at 494. As a general rule, courts defer to the inferences drawn by juries. *Bryant v. Rankin*, 468 F.2d

510, 519 (8th Cir. 1972) (quoting *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29 (1944)). In

*Tennant*, the Supreme Court stated:

> It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. at 34.

Plaintiff has presented sufficient evidence from which a reasonable jury could infer that Defendants have lied about their reasons for terminating Plaintiff. *See Weisbrot v. Medical College of Wisconsin*, 79 F.3d 677, 682 (7th Cir. 1996). Therefore, this case turns upon the credibility of the witnesses, which is a jury question. *Id.* (An ADEA case turns upon the credibility of witnesses when the employee offers evidence from which the fact finder may reasonably infer that the employer's proffered reasons for the adverse job action do not represent the truth).

Defendant Arnott may deny liability based on his lack of involvement during the early phases of Plaintiff's discipline. But Defendant Arnott is responsible for the hiring and firing at the Greene County Jail and has been since he was sworn in non December 31, 2008. *SAUMF* ¶ 1. Defendant Arnott made the final decision to demote and terminate Plaintiff based on recommendations made by Major Spaulding. *SAUMF* ¶ 143. Major Spaulding attached the counseling report submitted by Defendant Jenkins to his memorandum recommending Plaintiff's demotion. *SAUMF* ¶ 174. Plaintiff' performance log was attached to the memorandum recommending Plaintiff's termination. *SAUMF* ¶ 175. Thus, Defendant Arnott relied on the information provided by Major Spaulding, Defendant Jenkins, Sergeant Canter, Defendant Clayton and others.

However, reliance on the recommendations of others does not relieve Defendant Arnott from liability. Defendant Arnott testified that decisions based on inaccurate

information can be erroneous. *SAUMF* ¶ 150. In this case, Defendant Arnott's information on which he based his decisions was inaccurate, which led to erroneous ultimate decisions.

Before demoting and terminating Plaintiff, Defendant Arnott instituted no investigation into whether Plaintiff's reports had been altered or whether Plaintiff was being discriminated against. *SAUMF*, ¶ 144. Defendant Arnott had Plaintiff's daily performance log at the time he made the decision to terminate Plaintiff. The performance log documents a statement by Plaintiff that he intended to sue the county and that he had hired an attorney. Because Defendant Arnott based his decision to discipline Plaintiff on bad information and conducted no investigation into the merits of the claims, it is certain that the decision was bad.

As such, Defendants are not entitled to summary judgment. Based on the facts stated above and after vigorous cross-examination of the defendants, a jury could find that the reasons for termination offered by Defendants are pretextual and that Defendants discriminated against Plaintiff because of his age. *See Bethea v. Levi Strauss & Co.*, 827 F.2d 355, 358 (8th Cir. 1987) (finding that district court correctly denied defendant employers motion for directed verdict because the court could not say that no reasonable trier of fact could have found in favor of the employee). In this case, the factual dispute concerning the validity of Defendants' offered reasons for disciplining and terminating Plaintiff suggests that a reasonable jury could enter a verdict for either party. Therefore, summary judgment on Plaintiff's ADEA claim is improper.

## Count II of Plaintiff's Second Amended Complaint should not be dismissed because it contains claims against defendants in their official capacities

Defendants argue that they are also entitled to summary judgment on Count II of Plaintiff' Second Amended Complaint because Defendants cannot be held individually liable under the Age Discrimination in Employment Act. Because Plaintiff has filed suit against all Defendants in their

individual **and** official capacities, Defendants are not entitled to judgment on Count II of Plaintiff's complaint.

Even if Defendants are not individually liable for violations of the ADEA, Defendants do not provide any legal support to show that Plaintiff is not entitled to bring his ADEA claim against the Greene County Sheriff's Office. Plaintiff's action against Defendants in their official capacities is the same as a suit against the Greene County Sheriff's Office. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1256 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity").

## The allegations in Plaintiff's Second Amended Complaint do not preclude Defendants' liability under the ADEA because Plaintiff is entitled to plead alternative theories of liability

Defendants contend that Plaintiff cannot establish that age was the "exclusive" reason for Plaintiff's termination because Plaintiff has alleged in Count III of the Complaint that his whistle blowing was the exclusive reason for his termination. To be clear, "but for" is the causal standard in a Title VII case. In order to prevail on an ADEA claim, Plaintiff must show that age was the "but-for" cause of the adverse employment action. *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2350 (2009).The fact that Plaintiff alleged in Count III that his whistleblowing caused his termination is inconsequential because a Plaintiff is entitled to plead inconsistent theories of liability. Rule 8(d)(3) of the Federal Rules of Civil Procedure states, "A party may state as a many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). The inclusion of two different exclusive causes for Plaintiff's discharge in Plaintiff's Second Amended Complaint, does not establish that Defendant is entitled to summary judgment on Plaintiff's ADEA claim; rather, it simply shows that Plaintiff has alternate theories of liability.

Judge Hamilton of the Eastern District faced this issue in a recent motion to dismiss. *See Renfrow v. Sanborn Map Co., Inc.*, 2011 WL 1102834 (E.D. Mo. 2011). In *Renfrow*, the plaintiff

alleged that her employer discriminated against her based on her race, gender, and age. *Id*. at *1.
The defendant moved to dismiss the age discrimination claim because the complaint alleged that
age was one of several reasons for Plaintiff's termination (race, sex, retaliation), not that age was
the but-for cause of her termination. *Id*. at *3. The defendant relied primarily on the *Gross* case
cited above for its position. *Id*. The court granted the defendant's motion to dismiss the age claim
due to flaws in the form of the plaintiff's pleading, but stated:

> *Gross* does not preclude an ADEA plaintiff from pleading alternative theories of
> relief. *Ries v. Winona County,* No. 10–1715, 2010 U.S. Dist. LEXIS 90914, at *30–
> 31,2010 WL 3515722 (D.Minn. July 28, 2010); *Belcher v. Serv. Corp. Int'l,* No.
> 2:07–CV–285, 2009 U .S. Dist. LEXIS 102611, at *8 (E.D.Tenn. Nov. 4, 2009)
> ("While Gross arguably makes it impossible for a plaintiff to ultimately recover on
> an age and a gender discrimination claim in the same case, the undersigned does not
> read *Gross* as taking away a litigant's right to plead alternate theories under the
> Federal Rules.") *Id*. at *4.

Following the reasoning set forth in *Renfrow*, this court should not grant Defendant
summary judgment on Plaintiff's age discrimination claim simply because he pleads an alternate
theory of liability.

The court's decision in *Renfrow* is consistent with holdings from the Eighth Circuit and
other jurisdictions that have permitted alternative pleading even where the facts alleged seem to
nullify a cause of action. The Eighth Circuit rejected an appellant's contention that the district court
should have considered factual allegations raised in the first two counts of a plaintiff's complaint
when assessing the validity and scope of the third count. *Babcock & Wilson, Co. v. Parsson Corp.*,
430 F.2d 531, 536 (8th Cir. 1970). In *Babcock*, the court stated that to consider the factual
allegations from other counts would be "contrary to the principle that, under the federal rules a
claimant may plead inconsistent facts in support of alternative theories of recovery." *Id*.

In a Title VII case involving allegations of racial discrimination, the Second Circuit stated,
"The flexibility afforded by Rule 8(e)(2) is especially appropriate in civil rights cases, in which
complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent

claims." *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2nd Cir. 1994) (emphasis added). In *Henry*, the plaintiff seemed to concede that she had committed some misconduct in one count because her discipline had been more severe than others, but denied the misconduct in her other claims. *Id.* at 94. Relying on Rule 8(e)(2), the court did not find that the Plaintiff's first claim constituted an admission against the other alternative, inconsistent claim. *Id.* at 95. The *Henry* court cited a Ninth Circuit decision in which the court reversed a district court's construction of one count of a plaintiff's complaint as an admission against another count stating:

> To permit such a construction would undermine the clear intent of the Federal Rules of Civil Procedure, which explicitly authorize litigants to present alternative and inconsistent pleadings . . . Clearly, a policy which permits one claim to be invoked as an admission against an alternative or inconsistent claim would significantly restrict, if not eliminate, the freedom to plead inconsistent claims provided by Rule 8(e)(2). Thus, courts have been reluctant to permit one pleading to be read as a judicial or evidentiary admission against an alternative or inconsistent pleading. *Molsbergen v. U.S.*, 757 F.2d 1016, 1019 (9th Cir. 1985)

Cases are legion upholding a plaintiff's right to assert alternative and inconsistent legal theories within a single lawsuit. "Under the federal rules, great leeway in the pleadings is assured to the plaintiff and he can include alternative legal remedies, even in one action. *Paxton v. Desch Bldg. Block Co.*, 146 F. Supp. 32, 37 (E.D. Pa. 1956). Like the cases cited above, Plaintiff has pleaded alternative and inconsistent theories of liability. The factual allegations in each count should not be construed as admissions that would entitle Defendants to summary judgment on either count.

Defendants argue that Plaintiff's allegations in Count III establish that Plaintiff's age was not the exclusive reason for his termination. As stated above, Count III of Plaintiff's complaint contains his state law "whistle blower" claim. Defendants cite to paragraphs 46 and 49 of Plaintiff's Second Amended Complaint in support of their position. Paragraph 46 states, "Because of his reporting of the incident of abuse/misconduct at the Greene County Jail, to his supervisors and to the Springfield Mayor's Commission on Human Rights, Plaintiff is entitled to protection as a "whistle blower." Paragraph 49 states, "Defendant's whistleblowing was the exclusive cause of

Plaintiff's discharge and any reasons offered by Defendants were merely pretextual." While Plaintiff clearly alleges within Count III that his whistle blowing was the exclusive cause of his termination, Defendants' argument does not mention that Plaintiff has raised alternative factual allegations in Count II of his amended complaint. Defendants also fail to address how Rule 8(d)(2) affects Plaintiff's alternative allegations.

Count II of Plaintiff's Second Amended Complaint alleges that Plaintiff's age was the cause of his termination. Paragraphs 42 and 43 of the amended complaint state, "In violation of 29 U.S.C. § 623, Defendants discriminated against Plaintiff with respect to the compensation, terms, conditions, and privileges of his employment because of his age. As a direct and proximate result of Defendants' violation of 29 U.S.C. § 623, Plaintiff suffered damages." Based on Rule 8, Plaintiff has pleaded alternative factual allegations in separate counts just as the Plaintiffs in *Renfrow*, *Babcock*, and *Henry* did.

This case, like *Henry*, involves complex questions of Defendants' motives for terminating Plaintiff's employment. Plaintiff should be permitted, like the *Henry* plaintiff, to plead in the alternative. Just as the courts in *Renfrow*, *Babcock*, and *Henry* refused to construe factual allegations in one count against the allegations raised in another count, this court should not enter summary judgment in favor of Defendant on Plaintiff's ADEA claim simply because Plaintiff has pleaded an alternative, inconsistent cause for his termination in a separate count.

## Conclusion

Defendants are not entitled to summary judgment on Plaintiff's second amended complaint as a matter of law. Contested material facts exist with respect to Plaintiff's age discrimination claim such that summary judgment is inappropriate. A reasonable jury could find, based on the facts recited above, that Defendants' alleged reasons for firing Plaintiff are pretextual and that the true reason for the adverse employment action was Plaintiff's age.

**WHEREFORE,** Plaintiff respectfully prays this court enter its order denying Defendant's motion for summary judgment and granting Plaintiff such other relief as the court deems just and proper.

**DOUGLAS, HAUN & HEIDEMANN, P.C.**
111 West Broadway, P.O. Box 117
Bolivar, Missouri 65613
Telephone: (417) 326-5261
Facsimile: (417) 326-2845
cheidemann@bolivarlaw.com


By____/s/ Nathan A. Duncan_____
Craig R. Heidemann
Missouri Bar No. 42778
Nathan A. Duncan
Missouri Bar No. 60186
Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Greggory D. Groves
John W. Housley
Lowther Johnson LLC
901 St. Louis St., 20th Floor
Springfield, MO 65806

**DOUGLAS, HAUN & HEIDEMANN, P.C.**


By__/s/ Nathan A. Duncan_____