# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

STANLEY GRISSOM,                   )
                                          )
                 Plaintiff,           )
                                          )
        vs.                           )  Case No. 09-3244-CV-S-SWH
                                          )
                                          )
JAMES ARNOTT, et al.,           )
                                          )
                 Defendants.       )

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

OFFICE OF GREENE COUNTY COUNSELOR

John W. Housley
Missouri Bar Number 28708
Greggory D. Groves
Missouri Bar Number 35526
901 St. Louis Street, 20th Floor
Springfield, MO 65806
Telephone: 417-866-7777
Facsimile: 417-866-1752
Attorney for Defendants

# TABLE OF CONTENTS

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT.........................................................................1

I.   REPLY TO PORTIONS OF PLAINTIFF'S RESPONSES TO
     DEFENDANTS' STATEMENT OF UNCONTROVERTED
     MATERIAL FACTS ............................................................................1

     A.   Reply to Plaintiff's Response to Defendant's Uncontroverted
          Material Fact 17 ........................................................................1

     B.   Reply to Plaintiff's Responses to Defendant's Statement of
          Uncontroverted Material Facts 112-128 ....................................2

II.  DEFENDANTS' RESPONSE TO PLAINTIFF'S "ADDITIONAL
     UNCONTROVERTED MATERIAL FACTS".....................................3

III. DEFENDANTS' REPLY TO PLAINTIFF'S FACTUAL SUMMARY ................48

IV.  REPLY TO PLAINTIFF'S INTRODUCTION........................................49

V.   ARGUMENT ......................................................................................49

     A.   PORTIONS OF THE AFFIDAVIT OF PLAINTIFF STANLEY
          GRISSOM ARE INADMISSIBLE AND SHOULD BE
          DISREGARDED ........................................................................49

          1.  The affidavit is not based on personal knowledge and does
              not show that the affiant or declarant is competent to testify
              on the matters stated..................................................................49

          2.  Portions of the affidavit are completely inconsistent with
              Plaintiff's own prior pleadings and deposition testimony .........50

     B.   PLAINTIFF'S OFFER OF EVIDENCE, DIRECT OR INDIRECT,
          DOES NOT DEFEAT DEFENDANTS' ENTITLEMENT TO
          SUMMARY JUDGMENT ..........................................................52

          1.  Plaintiff's evidence does not refute Plaintiff's own admissions
              That reasons other than age lead to his demotion and termination.............52

a. Plaintiff's pleadings establish that age was not the exclusive factor ...................................................................................53

b. Plaintiff's deposition testimony established that age was not the exclusive reason for his discipline and termination ........................54

c. Plaintiff's Affidavit attached as an exhibit to his Response to Defendants' Motion for Summary Judgment establishes that age was not the exclusive reason for his termination ...........................55

d. Plaintiff's original Response to Defendants' Motion for Summary Judgment establishes that age was not the exclusive reason ................55

e. Plaintiff's Second Response to Defendants' Motion for Summary Judgment establishes that age was not the exclusive reason ................56

2. Plaintiff's statements, if taken as true, justify summary judgment in favor of Defendants ...............................................................58

3. Plaintiff does not plead alternative theories of liability ............................58

C. PLAINTIFF'S RELIANCE ON STATISTICAL EVIDENCE SHOULD BE EXCLUDED ................................................................................60

D. PLAINTIFF'S ANECDOTAL PROOF DOES NOT DEFEAT DEFENDANTS' CLAIM FOR SUMMARY JUDGMENT .........................65

1. Much of the anecdotal evidence is based on inadmissible photographs...............................................................................66

2. Plaintiff's anecdotal evidence ignores the totality of circumstances...........................................................................66

E. PLAINTIFF WAS NOT MEETING HIS EMPLOYER'S LEGITIMATE EXPECTATIONS AT THE TIME OF THE ADVERSE EMPLOYMENT ACTION .........................................................67

F. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT SHOW THAT DEFENDANTS' OFFERED REASONS FOR ADVERSE EMPLOYMENT ACTION ARE PRETEXTUAL.................................................................................69

G. DEFENDANTS CANNOT BE HELD INDIVIDUALLY LIABLE UNDER THE AGE DISCRIMINATION AND EMPLOYMENT ACT.........................................................................................................71

      H.  PLAINTIFF'S ALLEGATIONS IN HIS SECOND AMENDED
          COMPLAINT PRECLUDE DEFENDANTS' LIABILITY ............................72

VI.    CONCLUSION.......................................................................................................75

CERTIFICATE OF SERVICE ............................................................................................77

# TABLE OF AUTHORITIES

## Cases

*Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531 (8th Cir. 1970)...................................... 74

*Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983)................................. 52

*Clark v. Matthews Int'l Corp.*, 639 F.3d 391 (8th Cir. 2011)................................................ 58

*Corneveaux v. CUNA Mut. Inc. Group*, 76 F.3d 1498 (10th Cir. 1996)........................................ 69

*E.E.O.C. v. Kohler Co.*, 335 F.3d 766 (8th Cir. 2003) ...................................................... 69

*E.E.O.C. v. W. Elec. Co., Inc.*, 713 F.2d 1011 (4th Cir. 1983) ............................................. 61

*Frevert v. Ford Motor Co.*, 614 F.3d 466 (8th Cir. 2010)............................................... 51, 52

*Gross v. FVL Financial Services, Inc.*, 129 S.Ct. 2343 (2009) ......................................... 58, 69

*Hameed v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 637 F.2d 506 (8th Cir. 1980) ............................................................................................ 61

*Henry v. Daytop Village, Inc.*, 42 F.3d 89 (2nd Cir. 1994)............................................ 50, 73

*Howard v. Columbia Public Sch. Dist.*, 363 F.3d 797 (8th Cir. 2004)...................................... 50

*Janes v. Chicago Board of Education*, 2002 W.L. 31557619 (N.D. Ill. 2002) ........................... 60

*Jenkins v. Winter*, 540 F.3d 742 (8th Cir. 2008)........................................................... 50

*King v. Hardesty*, 517 F.3d 1049 (8th Cir. 2008) ..................................................... 72, 73

*Maze v. Regions Bank, Inc.*, 2009 W.L. 2565141 (E.D. Mo. 2009) ......................................... 66

*Orthoarm, Inc. v. Forestadent USA, Inc.*, 2007 W.L. 4457409 at *2 (E.D. Mo. 2007) ......... 51, 52

*Ottaviani v. State Univ. of N.Y. at New Paltz*, 875 F.2d 365 (2nd Cir. 1989)............................... 60

*Pippin v. Burlington Resources Oil & Gas Co.*, 440 F.3d 1186 (10th Cir. 2006)........................ 63

*Renfrow v. Sanborn Map Co., Inc.*, 2011 W.L. 1102834 (E.D. Mo. 2011)................................... 72

*Roush v. K of C Nat. Mgt. Co.*, 10 F.3d 392 (6th Cir. 1993) ............................................. 69

*Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.*, 976 F.2d 58 (1st Cir. 1992) ................................................................................................ 73

*Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir. 1996)........................................... 62

*Spulak v. K-Mart Corp.*, 894 F.2d 1150 (10th Cir. 1990)................................................... 69

*Truesdale v. Sabourin*, 2006 W.L. 118370.............................................................. 61, 62

## Statutes

29 U.S.C. §623.......................................................................................... 59, 74

Fed.R.Civ.P. 56(c)(3).................................................................................... 50

<u>**DEFENDANTS' REPLY IN SUPPORT OF THEIR**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

**COME NOW** Defendants, James Arnott, James Jenkins, Jeff Coonrod and Kenneth Clayton, by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, state the following for their Reply in Support of their Motion for Summary Judgment:

**I. REPLY TO PORTIONS OF PLAINTIFF'S RESPONSES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS.**

Defendants will not reply to each and every one of Plaintiff's Responses to Defendants' Statement of Uncontroverted Material Facts. Nevertheless, some of Plaintiff's responses are completely unsupported, or rely on "expert evidence" without naming or obtaining an expert, that they require a specific response from Defendant. By replying to some of Plaintiff's responses, Defendants are not admitting to Plaintiff's responses to which Defendants do not reply. The ones set forth below, however, are so egregious that they require further reply.

**A. Reply to Plaintiff's Response to Defendant's Uncontroverted Material Fact 17.**

17. Lieutenant Jenkins also explained to Stanley Grissom that he would like to see Stanley Grissom exercise more self motivation in his job performance and that he should inspire and not conspire as an officer and a corporal. Lieutenant Jenkins explained to Stanley Grissom that his name often came up in rumors being started. (Affidavit of James Jenkins, Paragraph 9 and Exhibit B)

**PLAINTIFF'S RESPONSE**: Plaintiff admits that Defendant Jenkins made these statements in the context of Plaintiff's qualifications to work in booking and release, not in the context of his overall job performance. Exhibit 1, Affidavit of Stanley Grissom, ¶45; Exhibit 2, Plaintiff's

1

performance log.p.00088, 3/28/09 entry. Plaintiff also denies that he conspired or started rumors at any time during his employment at the Greene County Jail. Exhibit 3, Deposition of Jeff Coonrod 84:8-10, Exhibit 1, Affidavit of Stanley Grissom, ¶46.

**DEFENDANTS' REPLY**:    In his response, Plaintiff denies that he conspired or started rumors at any time during his employment at the Greene County Jail and cites paragraph 46 of his own Affidavit. There is nothing in Plaintiff's Affidavit, paragraph 46, or any other paragraph of Plaintiff's Affidavit which supports his denial that he conspired or started rumors at any time during his employment at the Greene County Jail.

>    **B.**    **Reply to Plaintiff's Responses to Defendant's Statement of Uncontroverted Material Facts 112-128.**

In his response to Defendants' Statements 112-128, Plaintiff lists several references to support his denial of Defendants' Statements of Fact. Two references claimed by Plaintiff need special attention. These references include Plaintiff's Exhibit 26 (Std. Deviation Calculation) and Plaintiff's Group Exhibit 13. (Photographs taken by Defendant Jenkins).

Plaintiff's Exhibit 26 should be completely disregarded by this Court. First, there is no Affidavit stating who prepared Exhibit 26, how it was prepared, or what factors were taken into consideration in the preparation of Exhibit 26. Additionally, statistical evidence in this case should be supported by expert testimony, but Plaintiff fails to name or otherwise disclose any expert.

Defendants cannot tell from Exhibit 26 whether the individual preparing Exhibit 26 corrected for any potential explanatory variables other than age. There is nothing in Exhibit 26 which suggests that the preparer of Exhibit 26 took into consideration the fact that the individuals named held a variety of different jobs or the type of jobs held by any of the

2

individuals. It does not appear that Exhibit 26 takes into account the reason for discharge and whether the termination was for poor work performance, criminal charges, or other non-age related matters.

In response to Defendant's Facts 114-128, Plaintiff also references Group Exhibit 13. Plaintiff's Group Exhibit 13 should be disregarded by the Court for the reason that there is a lack of foundation concerning the photographs in Group Exhibit 13. Although Plaintiff refers to deposition testimony that suggests Defendant Jenkins took at least some of the photographs, there is no foundation for when the photographs were taken or if the photographs were taken during a period of time that Defendant Arnott was the acting sheriff. Without this foundation, and without knowing whether the photographs were taken while Defendant Arnott was the sheriff, the photographs are inadmissible. Plaintiff should not be allowed to base his opposition to Defendants' Motion for Summary Judgment on photographs without providing an adequate foundation for those photographs.

## II. DEFENDANTS' RESPONSE TO PLAINTIFF'S "ADDITIONAL UNCONTROVERTED MATERIAL FACTS."

1. Videos of the jail are saved in perpetuity and if there were incidents of Grissom not doing his job, Defendant could have reasonably found those. Exhibit 3, Deposition of Defendant Coonrod 152:10-12; Exhibit 1, Affidavit of Stanley Grissom, ¶5.

**RESPONSE**:     Deny. Defendants admit that the videos of April 10 and 11 do not show incidents of Plaintiff not doing his job because Plaintiff is not on the videos of April 10 and 11. Although scheduled for that night, Plaintiff evidently switched assignments with another officer and he is not observed on April 10 or 11. Defendants state that Plaintiff's Exhibit 14, "Grissom B-Pod" for 3-29-09 shows Grissom failing to perform a head count after the meal was complete at 12:10. Additionally, Plaintiff spends most of his time behind the desk.

3

Defendants further state that Plaintiff says the cameras frequently do not work. Exhibit 2, Grissom Depo. 34:18-22.

2. Stationary video apparatus is placed around the Greene County Jail to record the day to day activities in the jail so there can be no question about what happened at a particular time. Exhibit 7, Deposition of James Arnott 29:14-18.

**RESPONSE**:      Admit.

3. Defendants claim they fired Plaintiff for making numerous mistakes in his written reports after he was counseled regarding the quantity and significance of the mistakes he was making. Exhibit 6, June 16, 2009 memorandum from Major Spaulding to Defendant Arnott.

**RESPONSE**:      Deny.  The June 16, 2009 memorandum relied on by Plaintiff speaks for itself but includes a variety of reasons in addition to the numerous mistakes made by Plaintiff in his written reports.

4. No surveillance footage from the Greene County Jail exists showing Stanley Grissom engaging in any conduct that would constitute a violation of the policies and procedures of the Greene County Sheriff's Office. Exhibit 14, DVDs produced by Defendants.

**RESPONSE**:      See Defendants' response to Plaintiff's "Additional Uncontroverted Fact 1.

5. The April 10, April 11, March 29, 2009 surveillance footage depicting Plaintiff does not show him engaged in any misconduct. Exhibit 14, DVDs produced by Defendants as well as the concession of Defense counsel on the record.

**RESPONSE**:      Defendants admit the April 10 and April 11 surveillance footage does not depict Plaintiff engaging in any misconduct as it does not depict Plaintiff.  Defendants deny

the March 29, 2009 surveillance footage does not show Plaintiff engaging in misconduct. See Defendants' response to Plaintiff's "Additional Uncontroverted Material Fact 1."

6.  Defendant Coonrod could not show one report that was "screwed up" that the Sheriff saw before the decision was made to fire Plaintiff. Exhibit 3, Deposition of Jeff Coonrod, 152:6-9.

**RESPONSE**:       Defendants admit that at the time of his deposition, Defendant Coonrod could not show one report that was "screwed up" that the Sheriff saw before the decision was made to fire Plaintiff.  Plaintiff, however, admits that he had mistakes in his reports.  Exhibit 2, Deposition of Stanley Grissom 39:9-25.

7.  Defendants have not produced a single report authored by Plaintiff containing a single error that would in any way support or prove that Plaintiff made a single mistake in a single report. Exhibit 1, Affidavit of Stanley Grissom, ¶6; Exhibit 3, Deposition of Jeff Coonrod 179:14-21.

**RESPONSE**:       The references cited by Plaintiff do not support the fact asserted by Plaintiff.  Additionally, Plaintiff admits that he made mistakes in his logs and that Defendant Jenkins pointed those mistakes out to him.  Exhibit 2, Deposition of Stanley Grissom 39:9-22.

8.  During Plaintiff's employment, Defendants never showed Plaintiff any mistakes in any of his reports.  Exhibit 1, Affidavit of Stanley Grissom, ¶7.

**RESPONSE**:       Deny.  Exhibit 2, Deposition of Stanley Grissom 39:9-22.

9.  If there were any mistakes in any of his reports, they were there because other jail employees doctored or changed his reports to get him in trouble. Exhibit 1, Affidavit of Stanley Grissom, ¶8.

5

**RESPONSE**: Objection. This is pure speculation. Additionally, Plaintiff admits that he made mistakes in his reports. Exhibit 2, Deposition of Stanley Grissom 39:9-22.

10. Defendant Jenkins testified that no investigation was ever initiated to investigate whether or not other jail employees were altering jail records. Exhibit 4, Deposition of Defendant Jenkins 47:13-50:22.

**RESPONSE**: Admit.

11. Defendant Jenkins, Plaintiff's supervisor who wrote up Plaintiff for spelling errors and poor attitude, took photographs of Greene County Jail staff engaging in conduct that violated the policies and procedures of the Greene County Jail. Exhibit 4, Deposition of James Jenkins 60:1-6; Group Exhibit 13, photographs taken by Defendant Jenkins.

**RESPONSE**: Objection. The references cited by Plaintiff do not support the asserted fact. Additionally, Defendants object to the materiality of this statement for the reason that there is no foundation as to when the photographs were taken and whether said photographs were taken before or after Defendant Arnott became sheriff.

12. The photographs depict Defendant Jenkins' subordinates (1) pretending to slide down the fire escape in an inmate's bed; (2) exposing their nipples through the visitation window; (3) grabbing one another's genitals through clothing; (4) attaching leashes to employees; (5) simulated licking of each other; (6) general homo-eroticism. Group Exhibit 13, photographs taken by Defendant Jenkins.

**RESPONSE**: Objection. Defendants object to the photographs for lack of foundation in that the Plaintiff does not provide any date(s) the photographs were taken. Defendants further object to the photographs for the reason that they are irrelevant and/or immaterial in

that there is no evidence that the photographs were taken during the period of time that Defendant Arnott was the sheriff.

13. Jail employees taking a daybed and sliding down the stairs like a sled would not be acceptable under the terms of the Greene County Sheriff's Office policies and procedures. Exhibit 7, Deposition of James Arnott 19:3-5.

**RESPONSE**:      Objection.  Defendants object to the photographs for lack of foundation in that the Plaintiff does not provide any date(s) the photographs were taken.  Defendants further object to the photographs for the reason that they are irrelevant and/or immaterial in that there is no evidence that the photographs were taken during the period of time that Defendant Arnott was the sheriff.

14. Jail employees going into the visitation area and taking their uniform tops off and showing their nipples through the glass to other employees like a girlfriend of an inmate might do would not be acceptable under terms of the Greene County Sheriff's Office policies and procedures. Exhibit 7, Deposition of James Arnott 19:6-11.

**RESPONSE**:      Objection.  Defendants object to the photographs for lack of foundation in that the Plaintiff does not provide any date(s) the photographs were taken.  Defendants further object to the photographs for the reason that they are irrelevant and/or immaterial in that there is no evidence that the photographs were taken during the period of time that Defendant Arnott was the sheriff.

15. Sheriff Arnott would expect that any supervisors who witnessed jail employees taking a daybed and sliding down the stairs like a sled or going into the visitation area and taking their uniform tops off and showing their nipples through the glass to other employees would report that conduct. Exhibit 7, Deposition of James Arnott 19:12-15.

**RESPONSE**:        Admit.

16. Sheriff Arnott considers jail employees taking a daybed and sliding down the stairs like a sled or going into the visitation area and taking their uniform tops off and showing their nipples through the glass to other employees to be serious incidents of horseplay. Exhibit 7, Deposition of James Arnott 19:21-25.

**RESPONSE**:        Admit.

17. The conduct depicted in the photographs attached as Exhibit 13, violates the Greene County Sheriff's Office policy prohibiting conduct unbecoming an officer. Exhibit 7, Deposition of James Arnott 23:2-8, 30:12-19.

**RESPONSE**:        Objection. Defendants object to the photographs for lack of foundation in that the Plaintiff does not provide any date(s) the photographs were taken. Defendants further object to the photographs for the reason that they are irrelevant and/or immaterial in that there is no evidence that the photographs were taken during the period of time that Defendant Arnott was the sheriff. Subject to this objection, Defendants admit.

18. No one ever reported the conduct depicted in the photographs to Defendant Arnott. Exhibit 7, Deposition of James Arnott 25:25-26:5.

**RESPONSE**:        Objection. Defendants object to the photographs for lack of foundation in that the Plaintiff does not provide any date(s) the photographs were taken. Defendants further object to the photographs for the reason that they are irrelevant and/or immaterial in that there is no evidence that the photographs were taken during the period of time that Defendant Arnott was the sheriff, but Defendant Arnott admits that no one ever reported the conduct depicted in the photographs to Defendant Arnott.

19. Defendant Arnott would have expected Defendant Jenkins to write up the conduct depicted in the photographs attached as Exhibit 13. Exhibit 7, Deposition of James Arnott 30:20-22.

**RESPONSE**:    Objection.  Defendants object to the photographs for lack of foundation in that the Plaintiff does not provide any date(s) the photographs were taken.  Defendants further object to the photographs for the reason that they are irrelevant and/or immaterial in that there is no evidence that the photographs were taken during the period of time that Defendant Arnott was the sheriff, but Defendant Arnott admits that if the conduct took place during Defendant Arnott's time as the sheriff, Defendant Arnott would have expected Defendant Jenkins to write up the conduct.

20. Defendant Arnott would expect that if Defendant Jenkins were writing up employees for spelling errors, he would also write up employees who were exposing their breasts and nipples through the visitation windows. Exhibit 7, Deposition of James Arnott 34:18-23.

**RESPONSE**;    Admit.

21. The individuals in the photographs are all younger that Stanley Grissom. Exhibit 1, Affidavit of Stanley Grissom, ¶9

**RESPONSE**:    Objection.  Plaintiff does not specifically identify the photographs.  To the extent that Plaintiff is referring to the photographs in Plaintiff's Exhibit 13, Defendants admit that the individuals in the photographs are all younger than Plaintiff.

22. Defendant Jenkins did not discipline any of the individuals he photographed as shown in Exhibit 13 at the time of the misconduct.  Exhibit 4, Deposition of Defendant Jenkins 151:8-11.

9

**RESPONSE**:        Objection.  Defendants object to the photographs for lack of foundation in that the Plaintiff does not provide any date(s) the photographs were taken.  Defendants further object to the photographs for the reason that they are irrelevant and/or immaterial in that there is no evidence that the photographs were taken during the period of time that Defendant Arnott was the sheriff.  Subject to said objection, Defendants admit.

23. Defendant Jenkins signed a counseling report regarding Stanley Grissom. Exhibit 5, May 10, 2009 Counseling Report; Exhibit 4, Deposition of Defendant Jenkins, 67:7-13, 77:11-13.

**RESPONSE**:        Admit.

24. Sergeant Canter wrote the counseling report for Defendant Jenkins. Exhibit 4, Deposition of James Jenkins, 52:15-17.

**RESPONSE**:        Admit.

25. Defendant Arnott and Major Spaulding never personally observed any deficiencies in Plaintiff's job performance. Exhibit 8, Deposition of Kevin Spaulding 189:19-190:2.

**RESPONSE**:        Admit.

26. In response to discovery propounded by Plaintiff, Defendants produced a memorandum dated June 16, 2009 from Major Spaulding to Defendant Arnott recommending Plaintiff's termination. Exhibit 6, June 16, 2009 memorandum from Major Spaulding to Defendant Arnott produced in response to Plaintiff's Request for Production of Documents.

**RESPONSE**:        Admit.

27. Defendant Arnott received Plaintiff's performance review and counseling report prior to making his decision to demote and terminate Plaintiff. Exhibit 16, May 11, 2009 memorandum from Major Spaulding to Defendant Arnott recommending Plaintiff's

demotion; Exhibit 6, June 16, 2009 memorandum from Major Spaulding to Defendant Arnott with a handwritten note by Defendant Arnott; Exhibit 7, Deposition of James Arnott 14:7-13.

**RESPONSE**:     Admit.

28. The entry in Plaintiff's performance log made five days before Defendants fired Plaintiff notes that Plaintiff was going to "**sue the county for among other things 'age discrimination' and that Plaintiff had contacted an attorney**." Exhibit 2, Plaintiff's performance log, p. 00092, 6/11/09 entry.

**RESPONSE**:     The document speaks for itself.

29. Defendant Jenkins and Sergeant Smith refused to permit Plaintiff to train in the booking and release department of the jail. Exhibit 1, Affidavit of Stanley Grissom, ¶11; Exhibit 4, Deposition of Defendant Jenkins 185:1-5.

**RESPONSE**:     Admit.

30. Defendants disciplined Plaintiff for mistakes that were less serious than conduct engaged in by younger employees. Exhibit 1, Affidavit of Stanley Grissom, ¶12.

**RESPONSE**:     Objection.  This assertion is conclusionary and self-serving and does not set forth sufficient information for Defendants to admit or deny in that Plaintiff does not set forth what mistakes were made, by whom they were made, when they were made, and the nature of any discipline received by the younger employees.  Without that additional information, it is simply impossible for Defendants to admit or deny the asserted fact and therefore Defendants deny the fact.

31. Defendants singled Plaintiff out for harsh treatment because of his age. Exhibit 1, Affidavit of Stanley Grissom, ¶13.

**RESPONSE**:      Objection.  The asserted fact is conclusionary, self-serving, and assumes that Plaintiff was singled out and further assumes that Plaintiff received harsh treatment. Defendants deny the allegation in that the decision to terminate Plaintiff was due to Plaintiff's own behavior.  Exhibit 4, Affidavit of James Arnott previously filed, ¶¶13-14 and Exhibits attached thereto.  Additionally, Plaintiff states that he was singled out for treatment, at least in part, due to his speaking out about an inmate that he believed was abused.  Exhibit 3, Plaintiff's Second Amended Complaint, ¶¶12-26, 47, 49.  See also, Exhibit 2, Deposition of Stanley Grissom 95:16-25; 108:12-20; Affidavit of Stanley Grissom filed in response to Defendants' Motion for Summary Judgment, ¶¶23, 24, 29, 32, 61, 63, 64; and Plaintiff's Response to Defendants' Motion for Summary Judgment, Doc. 103, ¶¶44, 45, 48, 76, 77, 78, 88, 92, 93, 94, 95 and 96.

32. Defendants demoted Plaintiff after he complained of age discrimination. Exhibit 9, May 14, 2009 memorandum from Sergeant Canter to Defendant Coonrod, Major Spaulding, and Kenneth Clayton; Exhibit 18, Personnel status form dated May 26, 2009.

**RESPONSE**:      Deny.  Exhibit 9 cited by Plaintiff does not state that Plaintiff complained of age discrimination.  Rather, Exhibit 9 reflects that Plaintiff stated that if something happened to him, he would "pull the age card."  Additionally, Plaintiff denies making that statement.  Exhibit 2, Deposition of Stanley Grissom, 168:11-15.  To the extent that Plaintiff is asserting he was retaliated against, such assertion would further show that he wasn't discriminated against on the basis of his age, but on the basis of his conduct in complaining.

33. The Greene County Sheriff's Office has a formal discipline policy that applies to all of its employees. Exhibit 10, Policy 2-21-1 of the Greene County Sheriff's Office; Exhibit 7, Deposition of Defendant Arnott, 64:4-15.

**RESPONSE**:    Admit.

34. 2-21-1 provides in part, ""All members of the Greene County Sheriff's Office are required to adopt and adhere to sound tactical practices, written or verbal directives, general orders or written established policy and procedures.  In the event that a member shall . . . violate any directive, general order, policy or procedure, or demonstrate any degree of negligence in the performance of their expected duties, it shall be nece3ssary (sic) for supervisory personnel to discipline their subordinates." Exhibit 10, Policy 2-21-1 of the Greene County Sheriff's Office.

**RESPONSE**:    The document speaks for itself.

35. The policy defines "misconduct" as violating of a "general order, published rule or written policy or procedure". Exhibit 10, Policy 2-21-1 of the Greene County Sheriff's Office.

**RESPONSE**:    The document speaks for itself, but Plaintiff has omitted part of the definition of "misconduct" and therefore Defendants deny the asserted fact.

36. Section E, Subpart A of 2-21-1 provides "In the event that a member of the GCSO shall fail to meet the expected level of conduct, but it is not serious misconduct, as the first step in taking corrective action, all employees would be subject to Verbal Counseling." Exhibit 10, Policy 2-21-1 of the Greene County Sheriff's Office.

**RESPONSE**:    The document speaks for itself.

37. Whenever verbal counseling takes place, it "will be documented on an Internal Memo." Exhibit 10, Policy 2-21-1 of the Greene County Sheriff's Office, 2-21-1(E)(1)(a)(3).

**RESPONSE**:    The document speaks for itself.

38. The "Internal Memo" must "contain a brief synopsis of the event and any other information related to the incident, the violation of expected conduct, a plan of action to remedy the said action, and will be kept by the Division Captain." Exhibit 10, Policy 2-21-1 of the Greene County Sheriff's Office, 2-21-1(E)(1)(a)(4).

**RESPONSE**:     The document speaks for itself.

39. In connection with Plaintiff's demotion, Major Spaulding recommended that Plaintiff be reduced in rank, put on six months of probation, and be prohibited from off duty and extra duty assignments. Exhibit 8, Deposition of Kevin Spaulding 75:10-16.

**RESPONSE**:     Admit.

40. Plaintiff did not receive any notice or an opportunity to be heard before the Sheriff demoted him and placed him on probation. Exhibit 8, Deposition of Kevin Spaulding 78:7-12.

**RESPONSE**:     Admit.

41. Plaintiff was not given the opportunity to provide a written narrative documenting his actions. Exhibit 1, Affidavit of Stanley Grissom, ¶14; Exhibit 8, Deposition of Kevin Spaulding 85:10-18, 86:6-15.

**RESPONSE**:     Objection.   The asserted fact does not reference a time period.   The asserted fact does not say whether Plaintiff was given an opportunity to provide a written narrative documenting his actions concerning counseling, demotion, termination, for any period of time during the seven years that he was employed with Greene County. Additionally, Plaintiff signed a copy of the counseling report and there was certainly space on the counseling report for him to have made any comments had he chosen to do so, so

without waiving the objection, Defendants deny the asserted fact. Exhibit 1, Affidavit of James Jenkins previously filed with the Court, ¶17 and Exhibit A attached thereto.

42. Sergeant Smith, another employee at the Greene County Jail, was disciplined for slapping an inmate. Exhibit 8, Deposition of Kevin Spaulding 95:10-11.

**RESPONSE**: Admit.

43. Sergeant Smith's slapping the inmate was considered serious misconduct. Exhibit 8, Deposition of Kevin Spaulding 96:16-19.

**RESPONSE**: Admit.

44. Sergeant Smith's discipline for slapping the inmate was a written reprimand and 90 days probation. Exhibit 8, Deposition of Kevin Spaulding 97:11-15.

**RESPONSE**: Admit.

45. Two months before the slapping incident, Sergeant Smith had received a written reprimand for inappropriate behavior. Exhibit 8, Deposition of Kevin Spaulding 100:7-14.

**RESPONSE**: Deny. The reference cited by Plaintiff does not support the assertion of fact. Additionally, Major Spaulding stated he didn't recall the dates. Plaintiff's Exhibit 8, Deposition of Kevin Spaulding 100:7-22.

46. Sergeant Smith is younger than Stanley Grissom. Exhibit 1, Affidavit of Stanley Grissom, ¶15; Exhibit 19, Def. 2nd Supplemental Response document number 01774

**RESPONSE**: Admit.

47. There were no letters of reprimand in Plaintiff's file when he was terminated. Exhibit 8, Deposition of Kevin Spaulding 103:8-11.

**RESPONSE**: Admit.

48. Plaintiff had no written counseling reports other than the May 10, 2009 counseling report at the time he was fired. Exhibit 8, Deposition of Kevin Spaulding 103:12-16; Exhibit 5, May 10, 2009 Counseling Report.

**RESPONSE**:      Admit.

49. Plaintiff did not receive any verbal counseling before he was fired other than what was attached to the written counseling report. Exhibit 8, Deposition of Kevin Spaulding 103:17-22.

**RESPONSE**:      Deny.   Exhibit 1, Affidavit of James Jenkins previously filed with this Court, and Exhibit B attached thereto.

50. The May 10, 2009 counseling report did not state that Mr. Grissom would be terminated if he did not meet the goals and objectives set forth in the report.  Exhibit 4, Deposition of James Jenkins 56:12-23.

**RESPONSE**:      Admit

51. The June 11, 2009 entry from Plaintiff's performance log, which states that Plaintiff is going to sue the county for age discrimination, is not included in Major Spaulding's June 16, 2009 memorandum to Defendant Arnott. Exhibit 6, June 16, 2009 Memorandum from Kevin Spaulding to James Arnott; Exhibit 4, Deposition of James Jenkins 113:7-15.

**RESPONSE**:      The document speaks for itself.

52. The June 11, 2009 entry from Plaintiff's performance log states, "Lt. Jenkins informed by Officer Figueroa that Grissom has informed him he is going to sue the county for among other things 'age discrimination' and knows he has contacted an attorney. Figueroa stated he does not want to be involved with Grissom in this manner." Exhibit 2, Plaintiff's performance log, p. 00092, 6/11/09 entry.

**RESPONSE**:      The document speaks for itself.

53. Major Spaulding did not order an investigation into whether Plaintiff's reports were being altered. Exhibit 8, Deposition of Kevin Spaulding 117:16-18.

**RESPONSE**:      Admit.

54. Major Spaulding knew that Plaintiff was making age-related complaints as early as May 14, 2009. Exhibit 8, Deposition of Kevin Spaulding 125:8-19.

**RESPONSE**:      Deny.   Defendants deny the assertion of fact because it assumes that Plaintiff was actually making age-related complaints as early as May 14, 2009.   The statement to which Plaintiff is referring to support his assertion is the statement that Corporal Hartman reported that Grissom said he's an old man and if anybody tries to do anything he'll pull the age card and claim age discrimination.   Corporal Hartman did not say that Grissom was making age-related complaints.    Additionally, Plaintiff denied that he made the statement to which Kevin Spaulding was referring to in the deposition testimony cited by Plaintiff.  Exhibit 2, Deposition of Stanley Grissom 168:11-15.

55. Defendant Jenkins testified that there only one Internal Memo generated relating to Grissom's performance.  Exhibit 4, Deposition of Defendant Jenkins 130:12-16.

**RESPONSE**:      Admit.

56. There are no "Internal Memos" documenting any verbal counseling ever given to Mr. Grissom that comply with the Greene County Sheriff's Office policy and procedure manual. Exhibit 1, Affidavit of Stanley Grissom, ¶17; Exhibit 10, Policy 2-21-1.

**RESPONSE**:      Deny.   Exhibit 1, Affidavit of James Jenkins previously filed with this Court and Exhibit B attached thereto.

57. The next level of discipline following verbal counseling and preceding termination is "Written Counseling". Exhibit 10, 2-21-1(E)(1)(b).

**<u>RESPONSE</u>**:     The document speaks for itself.

58. Policy 2-21-1(E)(1)(b) provides, "In the event that an employee shall continue to conduct themselves in a manner that is inconsistent with the accepted practices, or established policies and procedures of this agency, yet the conduct still does not constitute serious misconduct, the next step in obtaining corrective action would be for the supervisor to conduct Written Counseling with the employee. The following measures shall be used to administer the Written Counseling." Exhibit 10, Policy 2-21-1.

**<u>RESPONSE</u>**:     The document speaks for itself.

59. The written counseling policy further provides that "(1) The supervisor shall in writing request from the employee a written narrative documenting the employees' actions; (2) The employee shall return to the supervisor a written response to the request. The response shall detail the officer's actions and how the actions would be justified, or if clearly in violation of policy why it was necessary to deviate from the policy. The response should also contain the employees' plan of action to correct the violation; (3) Upon receipt of the written response, the supervisor shall review, and attach the response to the Written Employee Counseling form; (4) The supervisor shall schedule a face-to-face meeting with the employee to discuss the incident. A written plan of corrective actions should be documented on the employee counseling form; (5) The employee and supervisor shall review and sign the counseling form and forward it to the Division Captain for further disposition. Exhibit 10, Policy 2-21-1.

**<u>RESPONSE</u>**:     The document speaks for itself.

60. Defendants did not follow the written counseling procedures when they disciplined Stanley Grissom. Exhibit 11, Deposition of Thomas Canter 83:8-85:7; Exhibit 7, Deposition of Defendant Arnott 75:22-25, 77:9-13; Exhibit 1, Affidavit of Stanley Grissom, ¶18.

**RESPONSE**:     Admit.

61. The May 20, 2009 written counseling report stated that on March 28, 2009 Defendant Jenkins and Sergeant Smith spoke with Plaintiff about Plaintiff's performance level and general attitude. Exhibit 5, May 10, 2009 Counseling Report.

**RESPONSE**:     The document speaks for itself.

62. The May 10, 2009 memorandum references the March 28, 2009 communication between Defendant Jenkins, Sergeant Smith, and Plaintiff, but does not say that the March 28, 2009 communication stated that Plaintiff needed to improve in certain areas if he wanted to get the booking and release position. Exhibit 3, Deposition of Jeff Coonrod 174:23-175:13; Exhibit 2, Plaintiff's performance log, p. 00088-00089, 3/28/09 entry.

**RESPONSE**:     The May 10, 2009 memorandum speaks for itself.

63. The counseling report recited four areas that Plaintiff had been instructed to improve: (1) improve quality of report spelling and proper words; (2) Use proper forms for reports such as incident and memo; (3) attention to detail in daily rosters and again reports; and (4) More pro-active performance in the pods and not staying behind the desk, having the other [sic]. Exhibit 5, May 10, 2009 Counseling Report.

**RESPONSE**:     The document speaks for itself.

64. The counseling report, which was written by Sergeant Canter and submitted by Defendant Jenkins contains typographical errors. Exhibit 5, May 10, 2009 Counseling

Report; Exhibit 4, Deposition of Defendant Jenkins, 67:7-13, 77:11-13; Exhibit 4, Deposition of James Jenkins, 52:15-17.

**RESPONSE**:        The document speaks for itself.

65. The May 10, 2009 counseling report contains allegations that after the March 28, 2009 communication between Plaintiff, Defendant Jenkins and Sergeant Smith there were numerous instances showing that Plaintiff had not improved in the four areas outlined during the March 28, 2009. Exhibit 5, May 10, 2009 Counseling Report.

**RESPONSE**:        The document speaks for itself, although Defendants admit Plaintiff had not improved.

66. However, none of the instances cited as support that Plaintiff had not improved in the areas discussed during the March 28 communication actually relate to the four areas Plaintiff had been counseled improve on. Exhibit 5, May 10, 2009 Counseling Report.

**RESPONSE**:        The document speaks for itself, but Defendants deny.  The reference cited by Plaintiff does not support the asserted fact.  The reference cited by Plaintiff in fact shows that one of the reasons for counseling was staying behind the desk and more pro-active performance in the pods, yet Item 3 of the list of feedback received about Plaintiff's recent performance a reference that Plaintiff is not leaving the "officer's desk to perform security rounds. . .".

67. Sergeant Canter is younger than Plaintiff. Exhibit 11, Deposition of Thomas Canter 125:16-18.

**RESPONSE**:        Admit.

68. Sergeant Canter has made errors in the meal tray count. Exhibit 11, Deposition of Thomas Canter 105:20-21.

**RESPONSE**:        Admit.

69. Sergeant Canter was not fired, demoted, suspended, or put on probation for making a mistake in the meal tray count. Exhibit 11, Deposition of Thomas Canter 105:22-106:4.

**RESPONSE**:        Admit.

70. According to the Defendant Arnott, the policies are "a big deal."   Exhibit 7, Deposition of James Arnott 72:15-17.

**RESPONSE**:        Admit.

71. The Greene County Sheriff's Office policies and procedures create rights and responsibilities and are important. Exhibit 7, Deposition of James Arnott 72:18-20.

**RESPONSE**:        Admit.

72. Sheriff Arnott expects that where the policies say "shall" then it "will occur in all cases." Exhibit 7, Deposition of James Arnott 72:21-24.

**RESPONSE**:        Admit.

73. The whole first three sections of the five sections of the written counseling procedure were not complied with as to Mr. Grissom.  Exhibit 7, Deposition of James Arnott 77:9-13.

**RESPONSE**:        Deny.  In support of this assertion, Plaintiff cites the depositions of James Arnott.  The deposition testimony cited, however, does not state that the whole first three sections of the five sections of the written counseling procedure were not complied with as to Mr. Grissom.   Rather, Defendant Arnott simply said he was unaware of any evidence showing that the procedures were complied with as to Mr. Grissom.

74. Defendants did not require Plaintiff to submit a written statement about his actions. Exhibit 10, Policy 2-21-1(E)(1)(b)(1); Exhibit 4, Deposition of James Jenkins 134:5-23.

**RESPONSE**:     Admit.

75. There was nothing prepared by Plaintiff and containing anything resembling a narrative or a plan of action that was attached to the written counseling form. Exhibit 1, Affidavit of Stanley Grissom, ¶ 14; Exhibit 8, Deposition of Kevin Spaulding 85:10-18, 86:6-15.

**RESPONSE**:     Defendants admit that Plaintiff prepared nothing resembling a narrative or a plan of action that was attached to the written counseling form.

76. While Defendant Jenkins supervised Stanley Grissom, he signed off on Stanley Grissom's annual reviews. Exhibit 4, Deposition of James Jenkins, 12:20-22.

**RESPONSE**:     Admit.  This fact shows that Defendant Jenkins did not discriminate against Plaintiff on the basis of his age.

77. All of Stanley Grissom's annual performance reviews were very good before he was counseled in March 2009. Exhibit 4, Deposition of James Jenkins, 14:1-5.

**RESPONSE**:     Admit.  This fact shows that Plaintiff was not discriminated against on the basis of his age.

78. "Very good" annual performance reviews are above average and mean the employee is doing more than expected. Exhibit 4, Deposition of James Jenkins, 13:20-22.

**RESPONSE**:     Admit.

79. Up through his last review, Stanley Grissom knew how to do his job, did not receive any negative feedback, knew what was expected, knew how to fit into the jail environment. Exhibit 4, Deposition of James Jenkins, 14:6-16; Exhibit 21, Plaintiff's 2008 annual performance review.

**RESPONSE**:     Admit.

22

80. While Defendant Jenkins said Stanley Grissom's failure to make his assigned rounds was continuous, he was unable at his deposition to identify a single day or shift on which Mr. Grissom failed to make any rounds. Exhibit 4, Deposition of James Jenkins, 39:21-40:4.

**RESPONSE**: Admit. Defendants further state that Defendant Jenkins said he was unable to identify a single day or shift because he was not looking at a monitor while he was at the deposition.

81. Any correctional officers had access to Plaintiff's daily logs and could have made changes to Plaintiff's daily logs. Exhibit 4, Deposition of James Jenkins, 43:16-44:1.

**RESPONSE**: Admit. Defendants further state that just because any correctional officers may have had access to any other person's logs does not mean anyone was making changes to Plaintiff's daily logs. Plaintiff has cited no specific example of anyone making changes to his logs.

82. Major Spaulding recommended that Plaintiff be demoted from the rank of corporal in part because he placed himself and others in a dangerous situation. Exhibit 16, May 11, 2009 memorandum from Major Spaulding to Defendant Arnott; Exhibit 4, Deposition of James Jenkins 75:5-17.

**RESPONSE**: Admit.

83. Defendant Jenkins never saw Plaintiff place himself or others in a dangerous situation. Exhibit 4, Deposition of James Jenkins 75:21-24.

**RESPONSE**: Admit.

84. The May 10, 2009 counseling report does not contain any reference to any dangerous situations Plaintiff placed himself or others in. Exhibit 5, May 10, 2009 Counseling report; Exhibit 4, Deposition of James Jenkins 76:21-25.

**RESPONSE**:       Admit.

85. Plaintiff's personnel log does not reference any dangerous situations Plaintiff placed himself or others in. Exhibit 2, Plaintiff's performance log.

**RESPONSE**:       Admit.

86. Thirty days had not elapsed from the time that Plaintiff learned of his demotion to the time the decision was made to terminate him. Exhibit 4, Deposition of James Jenkins 94:18-24.

**RESPONSE**:       Admit.

87. Major Spaulding was not disciplined for misspelling words in his June 16, 2009 memorandum to Sheriff Arnott. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and the corresponding Bates stamped documents produced by defendants 1646-1654, 1655-1671, 1773, and 1672-1673.

**RESPONSE**:       Admit.

88. Plaintiff was terminated five days after he said he was going to sue Greene County. Exhibit 4, Deposition of James Jenkins 114:25-115:4.

**RESPONSE**:       Admit.

89. Defendant Jenkins did not follow the Greene County Sheriff's Office discipline policy regarding written counseling because he did not give Plaintiff a written request for a written narrative documenting the employee's actions. Exhibit 10, Policy 2-21-1(E)(1)(b)(1); Exhibit 4, Deposition of James Jenkins 134:5-23.

**RESPONSE**:       Admit.

90. Plaintiff was justified in locking down the B-Pod early on January 28, 2009 because the inmates were making vulgar and obscene comments to the jail nurses and other jail staff and individual discipline was ineffective to stop the inmates from acting out. Exhibit 1, Affidavit of Stanley Grissom, ¶19; Exhibit 22, January 28, 2009 memorandum from Officer Wade to Captain Clayton, Defendant Coonrod, and Lieutenant May.

**RESPONSE**:    Objection. The assertion calls for a conclusion as to whether Plaintiff was justified. Without waiving the objection, Defendants state vulgar and obscene comments to the jail nurses and other staff were being made and Plaintiff was unable to effectively control the situation by addressing the individuals involved as opposed to the whole pod.

91. B-Pod had been locked down early on January 23, 2009 by Plaintiff, January 24, 2009 by Officer Haskins, January 25, 2009 by Officer's Carr and Gostiac, January 26, 2009 by Corporal Wilcox, and January 27, 2009 by Plaintiff and Officer Wade. Exhibit 28, January 28, 2009 memorandum from Officer Wade to Captain Clayton, Defendant Coonrod, and Lieutenant May.

**RESPONSE**:    Admit.

92. Officer Haskins is younger than Plaintiff. Exhibit 11, Deposition of Thomas Canter 37:10-12.

**RESPONSE**:    Admit.

93. Officer Haskins was not disciplined for locking down the B-Pod early. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding documents Bates stamped 1646-1654, 1655-1671, 1773, and 1672-1673.

**RESPONSE**:    Defendants deny for the reason that the references cited by Plaintiff do not state the fact which Plaintiff asserts.

94. Officer Carr is younger than Plaintiff. Exhibit 20. Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents 1646-1654, 1655-1671, 1773, and 1672-1673.

**RESPONSE**:    Admit.

95. Officer Carr was not disciplined for locking down the B-Pod early. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents 1646-1654, 1655-1671, 1773, and 1672-1673.

**RESPONSE**:    Defendants deny for the reason that the references cited by Plaintiff do not state the fact which Plaintiff asserts.

96. Officer Wilcox is younger than Plaintiff. Exhibit 1, Affidavit of Stanley Grissom, ¶85; Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents 1646-1654, 1655-1671, 1773, and 1672-1673.

**RESPONSE**:    Admit.

97. Officer Wilcox was not disciplined for locking down the B-Pod early. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents 1646-1654, 1655-1671, 1773, and 1672-1673.

**RESPONSE**:     Defendants deny for the reason that the references cited by Plaintiff do not state the fact which Plaintiff asserts.

98. Officer Wade is younger than Plaintiff. Exhibit 11, Deposition of Thomas Canter 37:17-18.

**RESPONSE**:     Admit.

99. Officer Wade was not disciplined for locking down the B-Pod early. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents 1646-1654, 1655-1671, 1773, and 1672-1673.

**RESPONSE**:     Defendants deny for the reason that the references cited by Plaintiff do not state the fact which Plaintiff asserts.

100.     Officer Gostiac is younger than Plaintiff. Exhibit 11, Deposition of Thomas Canter 37:15-16.

**RESPONSE**:     Admit.

101.     Officer Gostiac was not disciplined for locking down the B-Pod early. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents 1646-1654, 1655-1671, 1773, and 1672-1673.

**RESPONSE**:     Defendants deny for the reason that the references cited by Plaintiff do not state the fact which Plaintiff asserts.

102.     Sergeant Canter prepared a memorandum dated May 14, 2009 in which he wrote that Plaintiff told Corporal Hartman, "It's okay. I've still got an ace up my sleeve. I'm an

old man. If they try to do anything, I'll pull the age card and claim age discrimination."
Exhibit 9, May 14, 2009 memorandum.

**RESPONSE**:     Admit.

103.     Sergeant Canter forwarded the May 14, 2009 memorandum to Defendant Coonrod, Major Spaulding and Captain Clayton. Exhibit 9, May 14, 2009 memorandum.

**RESPONSE**:     Admit.

104.     After Major Spaulding learned that Plaintiff intended to bring an age discrimination claim against the county, he recommended to Defendant Arnott that Plaintiff be terminated. Exhibit 9, May 14, 2009 memorandum; Exhibit 6, June 16, 2009 Memorandum from Kevin Spaulding to James Arnott.

**RESPONSE**:     Admit, but Defendants deny that the references cited establish that Major Spaulding recommended Plaintiff be terminated because Plaintiff intended to bring an age discrimination claim.   To the extent that Plaintiff is asserting that Major Spaulding recommended that Plaintiff be terminated because he was bringing an age discrimination claim against the county, Plaintiff has shown that his termination was not based on his age status, but on his conduct in complaining.  Additionally, Plaintiff asserts that the decisions of Spaulding were made as a result of the Mansfield incident.  Grissom Affidavit ¶64 attached as, Exhibit 1 to Plaintiff's Response to Defendants' Motion for Summary Judgment.

105.     Defendant Jenkins knew that Plaintiff was making age-related complaints more than one month before he was terminated. Exhibit 4, Deposition of James Jenkins 195:10-15.

**RESPONSE**:     Admit.

106.     Plaintiff did not violate any specific Greene County Sheriff's Office policies to justify being terminated. Exhibit 3, Deposition of Jeff Coonrod 19:11-23.

**RESPONSE**:     Deny.  The references cited only support that Defendant Coonrod could not provide a specific or exact policy that he violated, not that he did not violate any policy or guidelines under the policy.

107.     Stanley Grissom was promoted to the rank of corporal on June 1, 2006. Exhibit 3, Deposition of Jeff Coonrod 25:15-21.

**RESPONSE**:     Admit.

108.     Plaintiff was not demoted between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:1-5.

**RESPONSE**:     Admit.

109.     Plaintiff did not receive a negative employee review between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:6-7.

**RESPONSE**:     Deny.  The reference cited is the deposition of Jeff Coonrod, but Jeff Coonrod is merely stating that there were no negative employee reviews in his personnel file, not that Plaintiff did not receive a negative employee review.

110.     Plaintiff did not receive any counseling reports between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:8-9.

**RESPONSE**:     Deny.  The reference cited is the deposition of Jeff Coonrod, but Jeff Coonrod is merely stating that there were no counseling reports in his personnel file, not that Plaintiff did not receive a counseling report.

111.     Plaintiff did not receive any reprimands between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:10-11.

**RESPONSE**:     Deny.   The reference cited is the deposition of Jeff Coonrod, but Jeff Coonrod is merely stating that there were no reprimands in his personnel file, not that Plaintiff did not receive a reprimand.

112.     There were no investigative reports prepared regarding Plaintiff between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:14-15.

**RESPONSE**:     Deny.   Exhibit 1, Affidavit of James Jenkins previously filed with the Court and Exhibit B attached thereto.

113.     There are no notations in Plaintiff's personnel file that he showed up late for work between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:16-18.

**RESPONSE**:     Admit.

114.     There are no notations in Plaintiff's personnel file that he was a bad speller between 2006 and May 2009. Exhibit 3, Deposition of Jeff Coonrod 26:19-20.

**RESPONSE**:     Admit.

115.     There are no notations in Plaintiff's personnel file between 2006 and May 2009 that Plaintiff displayed poor leadership qualities. Exhibit 3, Deposition of Jeff Coonrod 26:21-23.

**RESPONSE**:     Defendants admit there are no notations in Plaintiff's personnel file between 2006 and May 2009 that Plaintiff displayed poor leadership qualities, but this specific statement of fact does not state that Plaintiff did not receive counseling about those poor leadership qualities.

116.     There are no notations in Plaintiff's personnel file between 2006 and May 2009 that Plaintiff was a bad influence or spread rumors. Exhibit 3, Deposition of Jeff Coonrod 26:24-27:1.

**RESPONSE**:    Defendants admit there are no notations in Plaintiff's personnel file between 2006 and May 2009 that Plaintiff was a bad influence or spread rumors, but this specific statement of fact does not assert that Plaintiff did not receive counseling considering the fact that he was a bad influence or spread rumors.

117.    Plaintiff's 2006 annual performance review shows that he was a very good employee. Exhibit 3, Deposition of Jeff Coonrod 27:17-20; Exhibit 23, 2006 Performance Review.

**RESPONSE**:    The review speaks for itself, but Defendants deny the 2006 review shows Plaintiff was a very good employee.

118.    A memorandum included with Plaintiff's 2008 performance review commended Plaintiff for working as housing sergeant with great results was signed by Defendant Coonrod and written by Defendant Jenkins. Exhibit 3, Deposition of Jeff Coonrod, 29:4-15; Exhibit 21, Plaintiff's 2008 performance review.

**RESPONSE**:    The memorandum speaks for itself.

119.    The memorandum further stated that Plaintiff "performed background checks for new hire employees and as a field training officer after hiring. He has used three days of sick leave for this year, he is punctual for duty, arriving early for briefing, he assures all staff get relief when assigned to escort." Exhibit 3, Deposition of Jeff Coonrod, 29:15-21; Exhibit 21, Plaintiff's 2008 performance review.

**RESPONSE**:    The memorandum speaks for itself.

120.    Plaintiff's overall performance review from 2007 was very good. Exhibit 3, Deposition of Jeff Coonrod 31:7-14.

**RESPONSE**:    The review speaks for itself.

121.     The comments on Plaintiff's 2007 performance review state, "Corporal Grissom has performed as active housing sergeant, training officers as well as assisting with new employee background investigations with positive results. He has improved his use of lead time, went to shift C, is punctual for duty, accepts supervisor responsibilities with positive results, he's an asset to shift C, and this department." Exhibit 3, Deposition Jeff Coonrod 31:16-25; Exhibit 25, Stanley Grissom's 2007 performance review.

**RESPONSE**:     The comments on the review speak for themselves.

122.     Plaintiff's 2006 annual performance review was very good. Exhibit 3, Deposition of Jeff Coonrod 32:9-13.

**RESPONSE**:     The review speaks for itself.

123.     Plaintiff's 2004 annual performance review was very good. Exhibit 3, Deposition of Jeff Coonrod 32:20-33:2.

**RESPONSE**:     The review speaks for itself.

124.     The comments on Plaintiff's 2004 annual performance review state, "Officer Grissom worked for my shifts this entire period. He's performed several post assignments including pod officer, escort and master control. Grissom works well with other officers as well as inmates and his overall performance has been very good." Exhibit 3, Deposition of Jeff Coonrod 33:4-10; Exhibit 24; Plaintiff's 2004 annual performance review.

**RESPONSE**:     The review speaks for itself.

125.     Plaintiff's 2002 annual performance review was very good. Exhibit 3, Deposition of Jeff Coonrod 33:16-18.

**RESPONSE**:     The review speaks for itself.

126.     Plaintiff was an above, very good performing employee. Exhibit 3, Deposition of Jeff Coonrod 33:19-24.

**RESPONSE**:     Objection.  The asserted fact is overly broad in that it is not limited to any particular time period.  Without waiving the objection, Defendants deny the statement in that the reference cited does not support the fact that Plaintiff was always an above and very good performing employee.

127.     The day after Plaintiff received a written counseling report, Mr. Grissom was demoted and was placed on six months probation. Exhibit 3, Deposition of Jeff Coonrod 50:23-25, 53:22-54:1-2.

**RESPONSE**:     Admit.

128.     Giving somebody one day to meet five goals and objectives is insufficient time to see if they improve before demotion. Exhibit 3, Deposition of Jeff Coonrod 66:14-17.

**RESPONSE**:     Objection.  The statement of fact is a conclusion as to what is "insufficient time".  Furthermore, the statement of fact omits that Plaintiff was counseled on March 28, 2009, and therefore Defendants deny that Plaintiff was given only one day to meet five goals and objectives.  Exhibit 1, Affidavit of James Jenkins previously filed with this Court, ¶¶5-11 and Exhibits attached thereto.

129.     Written reprimands are more serious than written counseling reports. Exhibit 3, Deposition of Jeff Coonrod 52:16-22.

**RESPONSE**:     Admit.

130.     Even though Plaintiff was demoted the day after receiving a written counseling, employees who received written reprimands were not demoted. Exhibit 3, Deposition of Jeff Coonrod 53:7-11.

**RESPONSE**:        Objection.  This statement is overly conclusionary and self-serving in that Plaintiff does not state what employees received written reprimands, when those reprimands were given, for what those reprimands were given, and whether those reprimands were given for behavior which occurred while Defendant Arnott was the sheriff.  Because of this, Defendants simply do not have enough information to admit and therefore, Defendants must deny the fact asserted.

131.        None of the employees who received written reprimands for their involvement in the photographs attached as Exhibit 13 received days off without pay or were placed on probation. Exhibit 3, Deposition of Jeff Coonrod 53:12-21.

**RESPONSE**:        Objection.  This fact relies on photographs for which there has been no foundation as to when the photographs were taken and whether they were taken during, before or after Defendant Arnott became sheriff.

132.        Defendant Jenkins made errors in the reports he prepared regarding Plaintiff's alleged misconduct. Exhibit 3, Deposition of Jeff Coonrod 81:8-17.

**RESPONSE**:        Admit.

133.        Defendant Jenkins was not disciplined for the errors in the reports he prepared regarding Plaintiff's alleged misconduct. Exhibit 20, Defendants' Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, interrogatories number 3, 4, 7, 8, 11-14 and corresponding Bates stamped documents produced by defendants 1646-1654, 1655-1671, 1773, and 1672-1673.

**RESPONSE**:        Admit.

134.        The counseling report does not record a single incident that should have been reported by Plaintiff, but was not. Exhibit 3, Deposition of Jeff Coonrod 83:10-14.

34

**RESPONSE**:       The counseling report speaks for itself.

135.       The counseling report does not identify a single rumor spread by Plaintiff. Exhibit
3, Deposition of Jeff Coonrod 84:8-10.

**RESPONSE**:       The counseling report speaks for itself.

136.       Plaintiff was not allowed to work in booking and release because Sergeant Smith
did not feel comfortable with Plaintiff working in booking and release. Exhibit 3,
Deposition of Jeff Coonrod 88:15-23.

**RESPONSE**:       Defendants deny for the reason that the fact as stated assumes only one of
the reasons Plaintiff was not allowed to work in booking and release. Plaintiff was provided
other reasons. Exhibit 1, Affidavit of James Jenkins previously filed with this Court, ¶¶5, 6,
7, 8, 9 and Exhibits attached thereto.

137.       Prior to terminating Plaintiff, Defendant Arnott reviewed Plaintiff's performance
log for the time period after Plaintiff's demotion which included Plaintiff's allegations of
age discrimination, threats to sue the County for age discrimination, and the fact that
Plaintiff had contacted an attorney about his age discrimination claim. Exhibit 3,
Deposition of Jeff Coonrod 91:6-14; Exhibit 7, Deposition of Defendant Arnott 14:7-13.

**RESPONSE**:       Defendants admit this fact and further state that the fact does not claim
that Defendant Arnott terminated Plaintiff because he made allegations of age discrimination.
To the extent that Plaintiff asserts that Defendant Arnott retaliated against him for his age
complaints, then Plaintiff has admitted that Plaintiff's age (status) was not the exclusive
reason for his termination, but rather Plaintiff's conduct in complaining.

138.     Defendant Coonrod would have expected the lieutenant and sergeant to investigate Plaintiff's allegations that someone was removing items from Plaintiff's logs. Exhibit 3, Deposition of Jeff Coonrod 126:17-127:1.

**RESPONSE**:     Admit.

139.     Defendant Coonrod is not aware of the existence of any documents that show that anyone investigated Plaintiff's allegations that someone was removing items from Plaintiff's logs. Exhibit 3, Deposition of Jeff Coonrod 128:8-19.

**RESPONSE**:     Admit.

140.     Before January 2009, there are no entries in Plaintiff's personnel file suggesting that Plaintiff had any deficiencies in his reports. Exhibit 3, Deposition of Jeff Coonrod 130:3-9.

**RESPONSE**:     Admit.

141.     The March 28, 2009 communication between Defendant Jenkins, Sergeant Smith, and Plaintiff did not say that Plaintiff needed to improve in certain areas to keep his job. Exhibit 3, Deposition of Jeff Coonrod 174:18-22; Exhibit 2, Plaintiff's performance log, p. 00088-00089.

**RESPONSE**:     The March 28, 2009 communication speaks for itself.

142.     The only two **new events** that occurred after Plaintiff received the written counseling and before the recommendation was made to demote Plaintiff was Plaintiff calling in sick with a kidney stone and Plaintiff stating that he would file suit for age discrimination. Exhibit 11, Deposition of Thomas Canter, 116:5-14.

**RESPONSE**:     Deny.   Plaintiff denies that he said he would file suit for age discrimination.  Exhibit 2, Deposition of Stanley Grissom, 168:11-15.

143.     Defendant Arnott made the decision to terminate Plaintiff on the recommendation of Defendant, [sic] Kevin Spaulding. Exhibit 7, Deposition of James Arnott 3:5-7, 10-11.

**RESPONSE**:     Admit, but Plaintiff asserts that the recommendation was connected to the "Mansfield event."  ¶64 of Plaintiff's Affidavit attached as Exhibit 1 to Plaintiff's Response to Defendants' Motion for Summary Judgment.

144.     Defendant Arnott is not aware of any investigation to determine if anyone was, in fact, altering Plaintiff's reports. Exhibit 7, Deposition of James Arnott 106:2-8.

**RESPONSE**:     Admit.

145.     Sergeant Canter received no discipline for the errors he made in the written counseling report. Exhibit 12, Defendant's First Supplemental Answers to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott, Interrogatories 11 and 12; Bates stamped documents 1672 and 1673.

**RESPONSE**:     Admit.

146.     The employees disciplined for their roles in the photographs attached as Group Exhibit 13 each received written reprimand. Exhibit 4, Deposition of Defendant Jenkins 139:22-24.

**RESPONSE**:     Objection.  This fact is based on photographs for which no foundation has been laid as to the date the photographs were taken and whether those photographs were taken during the time that Defendant Arnott was the sheriff.  Without waiving the objection, Defendants admit this fact.

147.     At the time of Plaintiff's termination, he was one of the oldest employees at the Greene County Jail. Exhibit 1, Affidavit of Stanley Grissom, ¶22.

**RESPONSE**:     Admit.

148.     On March 27, 2009, Plaintiff requested that he be able to participate in training to working the booking and release area of jail. Exhibit 2, Plaintiff's performance log, p. 00088, 3/27/09 entry.

**RESPONSE**:     Admit.

149.     Being trained in booking and release would have helped Plaintiff acquire the skills necessary to be promoted to a sergeant position. Exhibit 3, Deposition of Jeff Coonrod 165:3-8; Exhibit 4, Deposition of Defendant Jenkins 170:1-12.

**RESPONSE**:     Deny.  The references cited by Plaintiff do not support the assertion.

150.     Defendant Arnott admitted that one of the reasons he can make erroneous decisions is if his decision is based on inaccurate information. Exhibit 7, Deposition of Defendant Arnott 110:11-15.

**RESPONSE**:     Admit.

151.     Sheriff Arnott is responsible for hiring and firing at the jail and has been since he was sworn in on December 31, 2008. Exhibit 1, Affidavit of Stanley Grissom, ¶90.

**RESPONSE**:     Admit.

152.     Exhibit 15 is a true and accurate demonstrative summary of the employment data for employees disclosed by Sheriff Arnott in his responses to Plaintiff's Second Interrogatories and Requests for Production of documents.  Exhibit 15 Summary of Employment Data; Exhibit 27 Affidavit of Donna Aasby (Donna Aasby reviewed the data and created the demonstrative summary Exhibit 15; her affidavit sets forth the foundation for the summary exhibit).

**RESPONSE**:    Objection.  Defendants initially object to Plaintiff proving Exhibit 15 by referring to Exhibit 15.  Furthermore, Exhibit 15 is not true and accurate in that it does not include hire dates that were specifically provided to Plaintiff.

153.    As of 10/7/11, there were 164 workers that either worked at the jail or were hired to work at the jail.  Of these 164 workers, 39 are 40 and over (24.07%) and 123 are under (75.93%).  Their average (mean) age on this date is 34.5.  Exhibit 15, Summary of Employment Data.

**RESPONSE**:    Objection.  This statement of fact is based on Exhibit 15 which is not verified.  Additionally, there are many positions in the jail, and to the extent that Exhibit 15 includes each and every employee working at the jail or hired to work at the jail regardless of their position, said information is irrelevant.

154.    In addition to the 17 individuals listed in Sheriff Arnott's affidavit, he also fired 50 year old Yvonne Lassley who was fired 7/8/09.  Exhibit 15, Summary of Employment Data.

**RESPONSE**:    Objection to relevancy or materiality.  Without waiving the objection, Defendants admit that the employee mentioned in this fact was fired.  Sheriff Arnott's Affidavit only referred to correctional officers and there is no evidence that the person named in Plaintiff's Fact 154 was a correctional officer.  Exhibit 4, Arnott Affidavit ¶24.

155.    For 2008 and 2009, 18 jail employees were fired and/or asked to resign.  Of this group, 9 were 40 and over and 9 were under.  Exhibit 15; Exhibit 26, Std. Dev. Calculation (Exhibit 26 is simply a mathematical calculation using the formula set forth by the 8th Circuit as discussed more fully herein).

**RESPONSE**:    Objection.  Plaintiff supports his fact with Exhibit 26.  Defendants object to Exhibit 26 for the reason that there is no foundation as to how the calculations were made and/or the variables used in said calculation.  Defendants further object to Exhibit 26 for the reason that standard deviation calculations are the subject of expert testimony and Plaintiff has not disclosed any experts, either retained or non-retained, and should not now be allowed to disclose such experts.  Additionally, 17 or 18 employees is too small a sample to make an appropriate standard deviation calculation.  For all of these reasons, Defendants object to Exhibit 26 and any facts based on Exhibit 26.

156.    The Sheriff's Department's actual firings from 2008 through 2009 of employees 40 and over is 2.6 standard deviations from the expected amount.  Exhibit 26, Std. Dev. Calculation.

**RESPONSE**:    Objection.  Plaintiff supports his fact with Exhibit 26.  Defendants object to Exhibit 26 for the reason that there is no foundation as to how the calculations were made and/or the variables used in said calculation.  Defendants further object to Exhibit 26 for the reason that standard deviation calculations are the subject of expert testimony and Plaintiff has not disclosed any experts, either retained or non-retained, and should not now be allowed to disclose such experts.  For all of these reasons, Defendants object to Exhibit 26 and any facts based on Exhibit 26.

157.    Based on the empirical rule of normal distribution, there is only an approximate 1 in 100 probability that chance, and not age was the factor in terminating these older, protected employees. http://en.wikipedia.org/wiki/Standard_deviation; *See Ottaviani v. State Univ. of New York at New Paltz*, 875 F.2d 365, 372 (2d Cir. 1989).

**RESPONSE**:         Objection.  The matters asserted in Fact 157 require expert testimony as to empirical rules of normal distribution and standard deviation calculations.  Additionally, to the extent that the matters asserted in Fact 157 are proven by the case cited by Plaintiff, either legal testimony would be required or additional expert testimony would be required.  Additionally, Fact 157 appears to be based on Exhibit 26, and for the reasons set forth in Paragraphs 155 and 156, Defendants object to Exhibit 26.

158.         From 1/1/08 to present, the Greene County Sheriff discharged 28 individuals, with 16 being 40 and over.  Exhibit 15, Summary of Employment Data.

**RESPONSE**:         Objection.  This assertion relies on Exhibit 15 which is not a self-proving document and for which no foundation has been provided in Fact 158.

159.         Based upon the average age of the male population, only 7 of the 40 and over discharges were expected during the 1/1/08 to present time period.  Exhibit 26, Std. Dev. Calculation.

**RESPONSE**:         Objection.  Plaintiff supports his fact with Exhibit 26.  Defendants object to Exhibit 26 for the reason that there is no foundation as to how the calculations were made and/or the variables used in said calculation.  Defendants further object to Exhibit 26 for the reason that standard deviation calculations are the subject of expert testimony and Plaintiff has not disclosed any experts, either retained or non-retained, and should not now be allowed to disclose such experts.  For all of these reasons, Defendants object to Exhibit 26 and any facts based on Exhibit 26.

160.         The actual number of 40 and over discharges from 1/1/08 to present varies from the expected result by 4.1 standard deviations. Exhibit 26, Std. Dev. Calculation.

**RESPONSE**:  Objection.  Plaintiff supports his fact with Exhibit 26.  Defendants object to Exhibit 26 for the reason that there is no foundation as to how the calculations were made and/or the variables used in said calculation.  Defendants further object to Exhibit 26 for the reason that standard deviation calculations are the subject of expert testimony and Plaintiff has not disclosed any experts, either retained or non-retained, and should not now be allowed to disclose such experts.  For all of these reasons, Defendants object to Exhibit 26 and any facts based on Exhibit 26.

161.    The odds of the 1/1/08 to present discharges being chance and not related to age where the Z score is 4.1 standard deviations less than 1 in 15,787. http://en.wikipedia.org/wiki/Standard_deviation.

**RESPONSE**:  Objection.  The matters asserted in Plaintiff's Fact 161 require expert testimony as to chance, Z scores, empirical rules of normal distribution and standard deviation calculations.  Additionally, Fact 161 appears to be based on Exhibit 26, and for the reasons set forth above, Defendants object to Exhibit 26.

162.    Since 1/1/08, there were 15 individuals working at the Greene County Jail that were disciplined.  10 were 40 and over and 5 were under 50.  Exhibit 15, Summary of Employment Data.

**RESPONSE**:  Objection.  The allegations asserted in Plaintiff's Fact 162 are based on Exhibit 15, Summary of Employment Data, but nothing in Plaintiff's Statement of Fact 162 provides the foundation for Exhibit 15.  Additionally, Exhibit 15 appears to be incomplete.

163.    Based upon the age distributions of males in the US population, the difference in standard deviation is 3.86.  Exhibit 26, Std. Dev. Calculation.

**RESPONSE**:      Objection.  Plaintiff supports his fact with Exhibit 26.  Defendants object to Exhibit 26 for the reason that there is no foundation as to how the calculations were made and/or the variables used in said calculation.  Defendants further object to Exhibit 26 for the reason that standard deviation calculations are the subject of expert testimony and Plaintiff has not disclosed any experts, either retained or non-retained, and should not now be allowed to disclose such experts.  For all of these reasons, Defendants object to Exhibit 26 and any facts based on Exhibit 26.

164.      A standard deviation difference (or Z score) of 3.89 translates into a probability fraction of approximately 1/10,000 and accounts for 99.99% of all outcomes. http://en.wikipedia.org/wiki/Standard_deviation.

**RESPONSE**:      Objection.  Plaintiff appears to support his fact with Exhibit 26. Defendants object to Exhibit 26 for the reason that there is no foundation as to how the calculations were made and/or the variables used in said calculation.  Defendants further object to Exhibit 26 for the reason that standard deviation calculations are the subject of expert testimony and Plaintiff has not disclosed any experts, either retained or non-retained, and should not now be allowed to disclose such experts.  For all of these reasons, Defendants object to Exhibit 26 and any facts based on Exhibit 26.

165.      In 2010, of the working age population age 20 - 64, 45% were 39 and below and 55% were 40 and above.  http://www.census.gov/compendia/statab/2012/tables/12s0.

**RESPONSE**:      Objection.  Lack of foundation and irrelevant as Plaintiff was terminated in 2009.

166.      From 2008 to present, 121 individuals were hired to work in the Jail.  Exhibit 15, Summary of Employment Data.

**RESPONSE**:       Objection.  The allegations asserted in Plaintiff's Fact 166 are based on Exhibit 15, Summary of Employment Data, but nothing in Fact 166 provides the foundation for Exhibit 15.  Defendants further state that the information is immaterial to the extent that it does not separate out job positions.

167.       Of those hired to work at the jail from 2008 to present, only 20 out of 120 were 40 or older.  Exhibit 15, Summary of Employment Data.

**RESPONSE**:       Objection.  The allegations asserted in Plaintiff's Fact 167 are based on Exhibit 15, Summary of Employment Data, but nothing in Fact 167 provides the foundation for Exhibit 15.  The information is immaterial to the extent it does not separate out job positions.

168.       The actual number of 40+ hires from 2008 to present was 9.08 standard deviations less than it was expected to be based upon the percentage of 40+ individuals in the U.S. population.  Exhibit 26, Std. Dev. Calculation.

**RESPONSE**:       Objection.  Plaintiff supports his fact with Exhibit 26.  Defendants object to Exhibit 26 for the reason that there is no foundation as to how the calculations were made and/or the variables used in said calculation.  Defendants further object to Exhibit 26 for the reason that standard deviation calculations are the subject of expert testimony and Plaintiff has not disclosed any experts, either retained or non-retained, and should not now be allowed to disclose such experts.  Additionally, Plaintiff does not appear to have taken into consideration the age of applicants.  For all of these reasons, Defendants object to Exhibit 26 and any facts based on Exhibit 26.

169.    The chances of the number of 40 and over hires from 2008 to present being random where the Z score is 8.4 and not due to age bias is less than 1 in 500 billion. http://en.wikipedia.org/wiki/Standard_deviation.

**RESPONSE**:    Objection.  Plaintiff supports his fact with Exhibit 26.  Defendants object to Exhibit 26 for the reason that there is no foundation as to how the calculations were made and/or the variables used in said calculation.  Defendants further object to Exhibit 26 for the reason that standard deviation calculations are the subject of expert testimony and Plaintiff has not disclosed any experts, either retained or non-retained, and should not now be allowed to disclose such experts.  For all of these reasons, Defendants object to Exhibit 26 and any facts based on Exhibit 26.

170.    No prior certification or degree is required to assume the role of correctional officer.  Exhibit 1, Affidavit of Stanley Grissom, ¶88.

**RESPONSE**:    Admit.

171.    From 2008 to present, the Sheriff's department only hired individuals 40 and over to work in the jail division 16.5% of the time.  However, jail division employees 40 and over have been fired 57% of the time.  Exhibit 15, Summary of Employment Data.

**RESPONSE**:    Objection.  The allegations asserted in Plaintiff's Fact 171 are based on Exhibit 15, Summary of Employment Data, but nothing in Plaintiff's Statement of Fact 171 provides the foundation for Exhibit 15.

172.    Younger employees were routinely permitted to train in the booking and release areas of jail when older employees, like Plaintiff, were not. Exhibit 1, Affidavit of Stanley Grissom, ¶91; Exhibit 11, Deposition of Thomas Canter 128:15-18.

**RESPONSE**:    Objection.  This assertion is conclusionary and self-serving and is vague in that it does not define "younger employees", "routinely", or "older employees".  Without waiving this objection, Defendants deny the allegation and further state that the citing references do not support the assertion.

173.    Each of the areas in which Plaintiff worked at the Greene County Jail and where Defendants claim Plaintiff failed to fulfill my responsibilities were covered by video surveillance. Exhibit 1, Affidavit of Stanley Grissom, ¶89.

**RESPONSE**:    Objection.  Plaintiff does not set forth the specific areas where he worked or the time frame he worked those areas.  Without more information, Defendants cannot admit this fact.  Additionally, Plaintiff testified that there may have been cameras in the jail but that they didn't all work.  Exhibit 2, Deposition of Stanley Grissom, 34:20-22.

174.    The written counseling report was attached to Major Spaulding's memo to Defendant Arnott recommending Plaintiff's demotion. Exhibit 7, Deposition of Defendant Arnott 43:19-44:11.

**RESPONSE**:    Admit.

175.    Plaintiff's performance log was attached to the memorandum recommending Plaintiff's termination. Exhibit 6, June 16, 2006 memorandum from Major Spaulding to Defendant Arnott recommending Plaintiff's termination.

**RESPONSE**:    Admit.

176.    Mr. Grissom suffered demotion days after he made his first age-related complaints. Exhibit 9, May 14, 2006 memorandum from Sergeant Canter; Exhibit 2, Plaintiff's performance log p. 00091, 5/20/09, 5/20/09 entry.

**RESPONSE**:    Objection.  Defendants object on the basis that the assertion is vague as to "demotion days".   Without waiving the objection, Defendants deny the assertion as Plaintiff's Exhibit 9 was dated May 14, 2009 but the memorandum from Major Spaulding to Sheriff Arnott was dated May 11, 2009, three days prior to the May 14, 2009 memorandum. Exhibit 4, Affidavit of Arnott previously filed, and Exhibit A attached thereto.  Additionally, Plaintiff denied making the statement contained in Plaintiff's Exhibit 9.   Exhibit 2, Deposition of Stanley Grissom, 168:11-15.   Additionally, this fact, if true, shows that Plaintiff was not terminated for his age but because of his conduct.

177.    After Plaintiff was fired, the Sheriff hired two 30 year old male jailers on July 8, 2009—Benjamin Julina and Nicholas Shepard.  That month he also hired 35 year old Jason Humphrey, 36 year old Donnell Evans, 35 year old David Carnagey, and 28 year old Christopher Sowers. He also hired 24 year old Matthew Roper on August 5, 2009. Exhibit 15, Summary of employment data.

**RESPONSE**:    Objection, irrelevant and immaterial and is a new fact and made beyond the time for responding to Defendants' Motion for Summary Judgment.  Not only is this a new fact added after Plaintiff's original time to respond to summary judgment had passed, this fact is immaterial in that it does not show that these jailers were hired to replace Plaintiff. Defendants admit that the above-named individuals were hired by Sheriff Arnott. Defendants also state that Exhibit 15 shows Defendant Arnott hired David Wheeler in July of 2009 and that Mr. Wheeler was actually older than Plaintiff.

## III.   DEFENDANTS' REPLY TO PLAINTIFF'S FACTUAL SUMMARY.

After setting forth statements of allegedly uncontroverted material facts, Plaintiff provides a "factual" summary.  Plaintiff's "factual" summary contained in his Suggestions in

Opposition to Defendants' Motion for Summary Judgment filed on November 8, 2011 (Doc. 103) is substantially different than his "factual" summary filed on October 11, 2011. Doc. 92. According to the "factual" summary judgment contained in Document 92, everything was going fine until February of 2009 when Plaintiff allegedly observed a number of jailers abuse and mistreat a prisoner at the jail. Doc. 92, p.94. Plaintiff alleges he refused to participate in the abuse and expressed his disapproval of the other jailers' conduct in a way made clear to those involved. Doc. 92, pp.94-95.According to Plaintiff, he reported that incident as well as age discrimination to the City of Springfield Mayor's Commission on Human Rights. Thereafter "Plaintiff's colleagues embarked upon a Kafkaesque crusade to force Plaintiff out of his job at the Greene County Jail." Doc. 92, p.95. Plaintiff's original factual summary, which was not pled in the alternative, makes it clear that age was not the exclusive cause of Plaintiff's problems.

As can be seen from Defendants' Response to Plaintiff's Additional Uncontroverted Material Facts and in this reply, Defendants disagree with much of the statements contained in the new "factual" summary. Additionally, Plaintiff should not be allowed to remove himself from admissions made in his original response to Defendants' Motion for Summary Judgment when it is clear that the statements made in the original Motion for Summary Judgment were not made in the alternative. Plaintiff's new "factual" summary, should be disregarded.

Additionally, Plaintiff's "factual" summary asserts matters for which there is no support in the record. In his current "factual" summary, Plaintiff alleges that discrimination included "altering Plaintiff's reports to make it appear as though Plaintiff was incompetent." (Doc. 103, p.51). Plaintiff can point to no one who has altered his reports to make it appear as though he were incompetent. Moreover, Plaintiff has admitted that he made mistakes in his reports. Grissom Dep. 39:9-25.

## IV.    REPLY TO PLAINTIFF'S INTRODUCTION.

In his introduction, Plaintiff states that Count II of his Amended Complaint is an action brought under the Age Discrimination in Employment Act, 29 U.S.C. §623 ("ADEA"). While Count II alleges age discrimination with respect to the "compensation, terms, conditions, and privileges of his employment", Count II actually contains allegations that defeat his claim of age discrimination.

Count II of Plaintiff's Second Amended Complaint incorporates the first 37 paragraphs of Plaintiff's Second Amended Complaint. These paragraphs consist of general allegations (1-29) and the allegations contained in Count I (30-37). Doc. 23, p.1-4. By incorporating the first 37 paragraphs of his Second Amended Complaint into Count II, Plaintiff includes an allegation that Defendant retaliated against Plaintiff for reporting inmate abuse to the Springfield, Missouri Commission on Human Rights. Doc. 92, p.96. Because Count II incorporates reasons other than age for his alleged discrimination, Plaintiff cannot show, nor does he plead, that age was the exclusive reason for his demotion or termination. For the reasons contained in Defendants' original Motion for Summary Judgment, and for the reasons set forth in this reply, Defendants are entitled to summary judgment on Count II of Plaintiff's Second Amended Complaint.

## V.    **ARGUMENT**

### A.    **PORTIONS OF THE AFFIDAVIT OF PLAINTIFF STANLEY GRISSOM ARE INADMISSIBLE AND SHOULD BE DISREGARDED.**

#### 1.  **The affidavit is not based on personal knowledge and does not show that the affiant or declarant is competent to testify on the matters stated.**

In his response to Defendants' Motion for Summary Judgment, Plaintiff relies in substantial part on his affidavit. Much of Plaintiff Stanley Grissom's affidavit contains evidence

49

that would be inadmissible at trial, and thus, should be disregarded for purposes of determining Defendants' Motion for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure states that "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(3). Plaintiff Stanley Grissom's affidavit is replete with unsupported statements for which he has no personal knowledge, statements that are purely speculative, statements that lack foundation, and are hearsay. Such statements should be disregarded for purposes of this Motion for Summary Judgment. *Howard v. Columbia Public Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004). Specifically, paragraphs 4, 8, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 62, 67, 73, 74, 75, 79, and 80 are not based on any personal knowledge and most of those statements contain hearsay. "When an affidavit contains an out-of-court statement offered to prove the truth of a statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Jenkins v. Winter*, 540 F.3d 742, 749 (8th Cir. 2008).

**2. Portions of the affidavit are completely inconsistent with Plaintiff's own prior pleadings and deposition testimony.**

Portions of Plaintiff's affidavit should be excluded for the reason that it contradicts Plaintiff's Second Amended Complaint and his deposition testimony. For instance, in paragraph 4 of his affidavit, Plaintiff states that age was the exclusive reason for his discharge from the Greene County Sheriff's Office. Doc. 92-1, ¶4. In his Second Amended Complaint, however, Plaintiff states that his whistle blowing was the exclusive cause of his discharge. Doc. 23, ¶49.

At his deposition, Plaintiff was given the opportunity to read his Second Amended Complaint. After a break was taken to allow Plaintiff time to read his the Second Amended Complaint, Plaintiff was asked if there was anything in the Second Amended Complaint that he believed was untrue. Plaintiff testified that there was nothing in the Second Amended Complaint that he believed was untrue. Since Plaintiff testified that the whistle blowing was the exclusive cause of termination, Plaintiff should not now be allowed to testify that his age was the exclusive cause of his termination. Defendant's Response to Plaintiff's SOF 31.

Additionally, in his deposition, Plaintiff was specifically asked whether he believed that he was terminated because he blew the whistle on what happened in the Mansfield incident. At his deposition, the following testimony took place:

Q    But part of your lawsuit against Greene County says that you were terminated because you blew the whistle on what happened in the Mansfield incident; right?

A    Yes, sir.

Q    And you believe that?

A    Yes, sir.

Grissom Dep. 95:16-22; Defendants' Response to Plaintiff's SOF 31.

When confronted with deposition testimony and a subsequent affidavit, a court should determine whether the deposition testimony and affidavit are in conflict. *Orthoarm, Inc. v. Forestadent USA, Inc.*, 2007 W.L. 4457409 at *2 (E.D. Mo. 2007). The Eighth Circuit has held "That a plaintiff does not create a genuine issue of material fact simply by submitting an affidavit that contradicted testimony at a prior deposition where there were no 'legitimate reasons' for the filing of an inconsistent affidavit." *See, Frevert v. Ford Motor Co.*, 614 F.3d 466, 474 (8th Cir. 2010). As the Eighth Circuit noted, if testimony under oath can be abandoned many months later

by the filing of an affidavit, probably no cases would be appropriate for summary judgment. *Id.* quoting *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983).

Plaintiff's deposition testimony is in direct contradiction with his affidavit. When confronted with deposition testimony and a subsequent conflicting affidavit, the court should consider whether the deposition testimony reflects confusion on the part of the witness and whether the subsequent affidavit explains why the earlier testimony is in conflict with the affidavit. *Orthoarm,* at *2. The court should also consider the circumstances surrounding the filing of the affidavit. For example, a contradictory affidavit filed on the same day the party's opposition to a motion for summary judgment is due is "highly suspicious." *Id.* As was true in *Frevert, Supra*, and *Orthoarm, Supra*, the timing of plaintiff's affidavit, combined with other factors including contradictory statements in plaintiff's pleadings and deposition testimony, indicates that the plaintiff "engaged in last-minute effort to create a genuine issue of material fact to preclude summary judgment." *Id.* Plaintiff now realizes that the only way he can prevail on Count III of his Second Amended Complaint is by alleging that age was the exclusive cause of any discrimination. The Affidavit provides no justification for being inconsistent with his prior deposition testimony. Based on the foregoing, Defendants respectfully submit that Plaintiff's affidavit should be disregarded as it both conflicts with Plaintiff's Second Amended Complaint as well as Plaintiff's unequivocal deposition testimony.

## B. PLAINTIFF'S OFFER OF EVIDENCE, DIRECT OR INDIRECT, DOES NOT DEFEAT DEFENDANTS' ENTITLEMENT TO SUMMARY JUGMENT.

### 1. Plaintiff's evidence does not refute Plaintiff's own admissions that reasons other than age lead to his demotion and termination.

Plaintiff begins the argument portion of his response by asserting there is direct and indirect evidence which defeats Defendants' entitlement to summary judgment. Although the

statistical evidence should be rejected, the evidence, even if accepted by the Court, does not refute Plaintiff's own admissions that other reasons lead to his demotion and termination.

### a. Plaintiff's pleadings establish that age was not the exclusive factor.

In Count III of Plaintiff's Second Amended Complaint, Plaintiff alleges that his whistle blowing was the "exclusive cause" of Plaintiff's discharge. Doc. 23, ¶49. Not only does Count III of Plaintiff's claim establish that age was not the exclusive cause of Plaintiff's termination, but Count II of Plaintiff's Second Amended Complaint establish that age was not the exclusive reason for Plaintiff's demotion and termination.

Paragraphs 1 through 29 are general allegations of Plaintiff's Second Amended Complaint, while paragraphs 30 through 37 are paragraphs provided under Count I of Plaintiff's Second Amended Complaint. Each of those paragraphs are incorporated into Count II of Plaintiff's Second Amended Complaint. Doc. 23, ¶38.

In his general allegations, Plaintiff alleges he observed a Greene County Sheriff Deputy abusing and/or mistreating a Greene County Jail prisoner in his cell while the prisoner was restrained. Plaintiff states that he made it clear to his colleagues and superiors that he would not go along with this abuse and mistreatment. Plaintiff states he was retaliated against and/or treated differently by his colleagues and superiors and that he reported this discrimination and retaliation to the Springfield, Missouri Mayor's Commission on Human Rights. Plaintiff then alleges that thereafter Defendants discriminated against Plaintiff by denying him opportunities to be promoted to sergeant, demoted him from his rank as corporal, placed him on six months probation, and discriminated against him by discharging him. Doc. 23, ¶¶12-22.

After setting forth the aforementioned general allegations, Plaintiff incorporates those general allegations into Count II of his Complaint and then provides that Defendants had a

53

policy, practice and procedure of violating the rights of similarly situated employees in the Greene County Sheriff's Department, within the jail, patrol and reserve divisions. Doc. 23, ¶35. Plaintiff also alleges in Count III of his Complaint after incorporating all of the paragraphs from Counts I and II, that "Defendants have a policy, practice and procedure that is generally established of retaliating against jailers and deputies that either report inmate/prisoner abuse or refuse to go along with it." Doc. 23, ¶47. While Plaintiff seeks damages due to discrimination based on his age, the paragraphs incorporated into Count II of his Complaint constitute admissions by Plaintiff that he was disciplined, demoted, discharged and otherwise treated differently as to the terms and conditions of his employment due to the fact that he reported inmate abuse.

> **b. Plaintiff's deposition testimony established that age was not the exclusive reason for his discipline and termination.**

As discussed above, Plaintiff was asked at his deposition if there was anything in the Complaint that was untrue. Plaintiff responded to that question in the negative. Defendants' Response to Plaintiff's SOF 31.

Plaintiff was later questioned about specific portions of his Complaint where he alleged that he was terminated because of his reaction to the alleged abuse. Plaintiff was first asked whether part of his lawsuit said that he had been terminated because he blew the whistle on what happened in the Mansfield incident to which Plaintiff responded affirmatively. Plaintiff was further questioned if he believed that he was terminated because he blew the whistle on what happened in the Mansfield incident, to which he also responded affirmatively. Defendants' Response to Plaintiff's SOF 31.

Later on, Plaintiff was shown a document completed in his own handwriting that was filed with the Missouri Human Rights Commission. Specifically, Plaintiff was asked the following questions and provided the following answers:

Q      Why is it that in the complaints that you fill out in your own handwriting that you don't mention age at all?

A      I don't know why, sir.

Q      Could it be that you thought you were terminated for the incident with Mansfield?

A      I believe that was part of it.

Q      You believe that was the biggest part of it, don't you?

A      I can't put down what percentage I think it is, but I believe it's part of it, yes.

Defendants' Response to Plaintiff's SOF 31; Grissom Dep. 108:12-20.

### c.  Plaintiff's Affidavit attached as an exhibit to his Response to Defendants' Motion for Summary Judgment establishes that age was not the exclusive reason for his termination.

In paragraph 61 of his affidavit, Plaintiff states that one of the reasons he did not document any misconduct in his report about the inmate abuse incident is that he knew that if he reported the abuse, Defendant Jenkins would take steps to have him terminated. In paragraphs 63 and 64, Plaintiff alleges that his demotion and termination were motivated and connected to the Mansfield event. Doc. 103-1, ¶¶61, 63 and 64.

### d.  Plaintiff's original Response to Defendants' Motion for Summary Judgment establishes that age was not the exclusive reason.

On page 138 of his original Response to Defendants' Motion for Summary Judgment Plaintiff argues that the information which Major Spaulding and Defendant Arnott relied on to base their decision to demote and terminate Plaintiff was tainted by Defendant Jenkins' bias

against older employees *and* by Jenkins' personal bias against Plaintiff, which arose out of Plaintiff's refusal to participate in the abuse and mistreatment of inmate Mansfield. Doc. 92, p.138. (emphasis added). Plaintiff does not argue his "refusal to participate in the abuse and mistreatment of inmate Mansfield" as an alternative reason for his demotion and termination. Rather, Plaintiff states the Mansfield incident combined with Plaintiff's age led to his demotion and termination. Plaintiff specifically states "[b]ecause of Plaintiff's age *and* his stance against the mistreatment of Mansfield, Defendant Jenkins and other (sic) set out to sabotage Plaintiff's career at the jail by papering his personnel file with the baseless accusations of misconduct and discipline." Doc. 92, p.138. (emphasis added). Plaintiff then states that he was acting as a citizen when he reported the inmate abuse to the Mayor's Commission on Human Rights. Doc. 92, p.148. According to Plaintiff the "proximity in time of the adverse employment action to Plaintiff's complaint to the Mayor's Commission on Human Rights establishes that the Defendants demoted and terminated Plaintiff because of his complaint. . . . It was only after he voiced his disapproval of the treatment of inmate Mansfield and only after he reported the misconduct to the Mayor's Commission on Human Rights that Defendants took the adverse action against Plaintiff." Doc.92, p.148. Based on Plaintiff's original Response to Defendants' Motion for Summary Judgment, age was not the exclusive reason for Plaintiff's demotion and termination.

**e. Plaintiff's Second Response to Defendants' Motion for Summary Judgment establishes that age was not the exclusive reason.**

On March 24, 2011, Defendants filed a Motion for Summary Judgment and Suggestions in Support of their Motion for Summary Judgment. Doc. 51 & 52. On October 11, 2011, Plaintiff filed his Suggestions in Response to Defendants' Motion for Summary Judgment. Doc.

92.  At the time Plaintiff filed his Suggestions in Response to Defendants' Motion for Summary Judgment, all three counts of Plaintiff's Second Amended Complaint were pending.

On October 26, 2011, the parties' counsel and the Court held a telephone conference where the Court discussed with the parties several matters of concern.  The Court noted that since the filing of the Defendants' Motion for Summary Judgment (Doc. 51) and Plaintiff's Suggestions in Opposition to that Motion (Doc. 92), Counts I and III of the Second Amended Complaint had been dismissed.  Accordingly, the Court ordered Defendants to file a pleading indicating which undisputed facts were relevant to their Motion for Summary Judgment, given the dismissal of Counts I and III, and further ordered Plaintiff to file a revised opposition to the Motion for Summary Judgment.  Doc. 100.

Although Plaintiff has known since March 24, 2011 that Defendants were arguing that age was not the exclusive reason for Plaintiff's discrimination, Plaintiff still asserts that the recommendations for counseling, demotion and termination were connected to the Mansfield event.

In their alleged uncontroverted material facts, Defendants assert that the recommendation that Plaintiff be counseled, demoted and terminated had nothing to do with Stanley Grissom shaking his head or voicing concern about the treatment of inmate Mansfield.  Doc. 52, Facts 44, 45, 48, 76, 77, 78, 88, 92, 93, 94, 95 and 96.  Rather than simply concede that his counseling, demotion and termination were not related to his report of the alleged abuse concerning inmate Mansfield, Plaintiff remains steadfast that the decisions to counsel, demote and terminate Plaintiff were based upon information that was "tainted by the bias and prejudice and retaliatory motives of the individuals who were present at the incident involving the abuse of inmate Mansfield and knew the tenor and import of Plaintiff's head shaking while the abuse was

57

occurring." According to Plaintiff, the decision to counsel, demote and terminate Plaintiff was "connected to the Mansfield event." Doc. 103, Plaintiff's Response to Defendants' Facts 44, 45, 48, 76, 77, 78, 88, 92, 93, 94, 95 and 96.

### 2. Plaintiff's statements, if taken as true, justify summary judgment in favor of Defendants.

The United States Supreme Court has held that to establish a disparate-treatment claim under the plain language of the ADEA, a plaintiff must show that his age was the "but-for" cause of the employer's adverse decision. *Gross v. FVL Financial Services, Inc.*, 129 S.Ct. 2343, 2352 (2009). The Eighth Circuit has held that under the ADEA a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision. The ADEA requires that age must have been "the reason" for the adverse employment action, while a cause of action under the Missouri Human Rights Act merely requires that age was "a reason" for the action. *Clark v. Matthews Int'l Corp.*, 639 F.3d 391 (8th Cir. 2011). Under the holdings in *Gross*, and *Clark*, it is clear that age must be the exclusive reason for any adverse employment actions suffered by Plaintiff.

### 3. Plaintiff does not plead alternative theories of liability.

In their original Motion for Summary Judgment, Defendants argue that the allegations in Plaintiff's Second Amended Complaint preclude liability under the ADEA because the Second Amended Complaint shows that the whistle blowing was the exclusive reason for termination. In response, Plaintiff argues that he can plead alternative theories of liability. Specifically, Plaintiff states that "the inclusion of two different exclusive causes for Plaintiff's discharge in Plaintiff's Second Amended Complaint, does not establish that Defendant is entitled to summary judgment on Plaintiff's ADEA claim; rather it simply shows that Plaintiff has alternate theories of liability." Doc. 92, p.143.

Defendants wholeheartedly agree that a plaintiff is entitled to plead alternative theories of liability. Plaintiff, however, is just plain wrong when he states that he has pled "two different exclusive causes for discharge" in his Second Amended Complaint. He does not. In fact, Plaintiff never alleges in his complaint that he was terminated due to his age.

29 U.S.C. §623 provides that it shall be unlawful for an employer: (1) to fail or refuse to hire *or to discharge any individual* or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. §623. (emphasis added)

While Plaintiff quotes part of 29 U.S.C. §623 in paragraph 42 of Count II of his Complaint, Plaintiff does not quote that portion of 29 U.S.C. §623 pertaining to discharge. Instead, Plaintiff only says he has been discriminated against with respect to the "compensation, terms, conditions and privileges of his employment because of his age." Doc. 23, ¶42. The fact that Plaintiff quotes part of 29 U.S.C. §623 without including that part pertaining to discharge shows he was not pleading in the alternative. The fact that Plaintiff did not plead alternative theories is further supported by the fact that he incorporates Count II into Count III and then states in Count III that whistle blowing was the exclusive cause of his discharge.

Rather than plead alternative theories, Plaintiff, as shown above, has pled, testified, provided an affidavit, and provided two responses to Defendants' Motion for Summary Judgment claiming that his demotion and termination was motivated not only by his age but by an incident involving his response to the alleged abuse of an inmate. For these reasons, Plaintiff simply cannot show that age was **the** reason for his demotion and termination. Accordingly, Defendants are entitled to summary judgment.

### C. PLAINTIFF'S RELIANCE ON STATISTICAL EVIDENCE SHOULD BE EXCLUDED.

Plaintiff spends a great deal of time arguing that statistical evidence establishes that age was a "determining factor" in Plaintiff's discharge. As set forth above, it is not sufficient that age be a determining factor. Rather, age must be the only factor. Nevertheless, Plaintiff's argument regarding statistical evidence should now be disregarded.

Plaintiff has never disclosed any expert to testify concerning his statistical evidence. Defendants have no idea who conducted the statistical analysis or what variables were used in that statistical analysis. Reports concerning statistical analysis should not be admitted absent statistical expert testimony. *See, Janes v. Chicago Board of Education*, 2002 W.L. 31557619 (N.D. Ill. 2002). The court held that a school board's reports concerning a board's hiring practices could not be admitted absent statistical expert testimony. "Having looked at the proffer and the response of the Board, the court finds that the proffered statistical evidence would not be admissible unless supported or interpreted somehow by an expert pursuant to Rule 702. The suggestion that somehow it would be admissible and more or less speak for itself is rejected by the court." *Id*. at *3.

Plaintiff asserts that "[d]istrict and appellate courts regularly perform statistical calculations *sua sponte* upon age and race data produced by parties." Doc. 103, p.53. Plaintiff provides absolutely no case support for its position the district and appellate courts regularly perform statistical calculations *sua sponte*.

Plaintiff argues that the Second Circuit provided a detailed analysis of the use of statistical calculations in ADEA cases in *Ottaviani v. State Univ. of N.Y. at New Paltz*, 875 F.2d 365, 371 (2nd Cir. 1989). In *Ottaviani*, the parties had statistical experts. *Id*. at 875 F.2d at 367. ("In this case, the parties' statistical experts each determined what factors they thought were

relevant to the setting of salaries and rank at the University, and used those factors as independent variables in their multiple regression analyses.")  In a footnote, Plaintiff also cites the cases of *Hameed v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 637 F.2d 506 (8th Cir. 1980) and *Truesdale v. Sabourin*, 2006 W.L. 118370 and *E.E.O.C. v. W. Elec. Co., Inc.*, 713 F.2d 1011 (4th Cir. 1983).

In *E.E.O.C. V. W. Elec. Co., Inc.*, *Supra*, a case that Plaintiff alleges contains the precise method to perform the calculation, the *E.E.O.C.* had a statistical expert.  713 F.2d at 1016.  Even in that case, however, the Fourth Circuit reversed a judgment against the employer, the Fourth Circuit noted that the usefulness or weight of statistical evidence depends on all the surrounding facts and circumstances.  *Id*. at 1018.  The Fourth Circuit further noted that like any other type of circumstantial evidence, the statistical evidence must not be accepted uncritically and courts must give "close scrutiny to the empirical proof" on which the models are erected.  *Id*.

*Hameed*, 637 F.2d 506, *Supra*, was a hiring case and not a termination case.  Although Defendants cannot tell if experts were used in *Hameed*, it is clear that *Hameed* contained a group that Plaintiff has not included in its statistical analysis.  Specifically, *Hameed* not only looked at those who were hired, but also looked at those who applied for the position.  *Hameed*, 637 F.2d at 513.  Nothing in Plaintiff's analysis shows that Plaintiff took into consideration the ages of those who completed the application process.

Finally, Plaintiff cites *Truesdale v. Sabourin, 2006 W.L. 118370.  Truesdale* was not an age discrimination case but a "Batson" objection to a jury pool.  In *Truesdale*, unlike the present case before this Court, the court had all the facts, and in fact a record to determine whether a "Batson" challenge was sufficient.  In the present case before this Court, Plaintiff's statistical

analysis includes neither the number of applicants, the type of position held, or any non-age discrimination reasons for separation. *Truesdale* does not help Plaintiff.

While Defendants do not question whether statistical and other evidence is relevant to individual claims, the evidence as presented by plaintiff is simply not enough to establish a jury issue of age discrimination. *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir. 1996).

In *Sheehan, Supra*, an employee brought age discrimination against his former employer. The district court entered summary judgment for the employer and an appeal was taken. The Seventh Circuit Court of Appeals noted that the listing of birthdates cannot without more be evidence of age discrimination. *Sheehan*, 104 F.3d at 941.

In *Sheehan*, the plaintiff at least had an expert conduct a statistical analysis. The court, however, noted that the analysis was not admissible under the standard of *Daubert*. *Id*. at 942. The court, in rejecting the analysis, noted that the expert failed to "correct for any potential explanatory variables other than age. Completely ignored was the more than remote possibility that age was correlated with a legitimate job-related qualification, such as familiarity with computers." . . . What is more, he ignored the fact that the seventeen employees held a variety of jobs. . . . The expert's failure to make any adjustment for variables bearing on the decision whether to discharge or retain a person on the list other than his age--his equating a simple statistical correlation . . . indicates a failure to exercise the degree of care that a statistician would use in his scientific work, outside of the context of litigation. *Id*. The court went on to hold that since the expert's statistical study would not have been admissible at trial, it was entitled to zero weight in considering whether to grant or deny summary judgment.

Such is the case with Plaintiff's statistics. Although Plaintiff obtained the information for the statistics from the Defendants, Plaintiff has provided no analysis for those statistics. For

instance, the unknown individual who prepared the analysis does not appear to have made corrections for any potential explanatory variables other than age. The unknown statistician does not identify the reason each individual was terminated or take the reason for termination into consideration.

Moreover, it appears that the unknown analyst has ignored the fact that these employees hold a variety of jobs. While some of the employees considered in Plaintiff's analysis may hold a correctional officer position like Plaintiff, others held different jobs. It appears that Plaintiff's analysis ignores the fact that the employees all held a variety of jobs. Additionally, the unknown analyst failed to make any adjustments for variables bearing on the decision whether to discharge or retain a person other than age. As stated in *Pippin v. Burlington Resources Oil & Gas Co.*, 440 F.3d 1186 (10th Cir. 2006), "Statistical evidence which fails to properly take into account non-discriminatory explanations does not permit an inference of pretext." *Id*. at 1197-1198. As further stated by the court in *Pippin, Supra*, a "Plaintiff's statistical evidence must focus on eliminating non-discriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals."

This Court has the obligation to act as a gatekeeper and exclude invalid and unreliable evidence. Not only is Plaintiff's analysis invalid and unreliable for the reason that no one has come forward claiming to have performed the analysis, but the analysis itself is flawed. The analysis appears to be conducted only on the basis of age. Plaintiff's failure to rule out the possibility that factors other than age, such as skill, performance, position, account for the reported disparity, is fatal to the reliability and admissibility of the analysis.

After going through the statistical analysis, Plaintiff attempts to address the statistical analysis to the areas of discharge, discipline, and hiring. For the reasons stated above, the

statistical analysis should be completely disregarded. Defendants, however, find it necessary to reply to misstatements and mischaracterizations in the portion of Plaintiff's suggestions addressing discharge, discipline and hiring.

In his section under discharge (Doc. 103, p.55), Plaintiff is critical of Sheriff Arnott's own affidavit. According to Plaintiff, Sheriff Arnott's affidavit states that he fired seventeen individuals. Plaintiff then states that he left off one jail employee that was discharged, (50 year old Yvonne Lassley). Plaintiff is incorrect in his facts. Defendants' Response to Plaintiff's SOF 80.

According to the affidavit filed by Sheriff Arnott, Sheriff Arnott fired or asked seventeen individual correctional officers to resign. Without providing any facts that Yvonne Lassley was a correctional officer, Plaintiff assumes that Sheriff Arnott's affidavit is incorrect. Yet, Plaintiff provides no statement of fact or other evidence suggesting Yvonne Lassley was a correctional officer. Additionally, Plaintiff provides no analysis as to why either Lassley or any of the other correctional officers were fired. Mere statistics showing the number of individuals fired without addressing why they were fired does not provide an appropriate statistical analysis.

After addressing the discharged employees, Plaintiff turns his attention to those employees who were disciplined. Plaintiff does not set forth one reason any of the individuals were disciplined. Moreover, Sheriff Arnott did not discipline or demote all of the individuals set forth in Plaintiff's Second Interrogatories as Sheriff Arnott was not the sheriff until 2009. Again, there are too many problems from Plaintiff's statistical analysis prepared by an unknown person for Plaintiff's statistics regarding discipline to be admissible.

After addressing discharge and discipline, Plaintiff turns his attention to an application of the statistical analysis on hiring. Plaintiff clearly uses census data of the working population age

20 to 64 to make his analysis.  Of course, just because 55% of the working age population was 40 and above, does not mean that 55% of the people applying for a position at the Greene County Jail were 40 and above.  Plaintiff's analysis does not seem to take into consideration the actual ages of those applying for work.  Without knowing that fact, Plaintiff's analysis is fatally flawed.

Plaintiff who, in his original response, accused Defendants of omitting dates of hire for 60 employees, (Doc. 92, p.107, fn.5) now asserts that Defendants have omitted six dates of hire (Doc. 103, p.57, fn.6).  At least two of these individuals have different names, i.e. Routh is actually Rennison and Holliday is actually Ussary.  Those dates of hire were provided to Plaintiff.

Plaintiff argues that inferences about missing dates of hire should be resolved against the Sheriff due to his failure to provide the requested dates.  Even assuming that inferences about those missing dates of hire are made against the Sheriff, the statistical analysis is still devoid of the necessary variables including application information and reasons for discharge.  Nevertheless, given the fact that age is not the exclusive reason, any inference drawn against Defendants does not defeat Defendants' Motion for Summary Judgment.

> **D.**     **PLAINTIFF'S ANECDOTAL PROOF DOES NOT DEFEAT DEFENDANTS' CLAIM FOR SUMMARY JUDGMENT.**
>
> **1.**     **Much of the anecdotal evidence is based on inadmissible photographs.**

To support his argument of discrimination, Plaintiff states that "many employees were involved in a "series of scandalous photographs" for which they received less severe discipline than Plaintiff."  Doc. 103, p.59.

Defendants have objected to the photographs for the reason that there is no foundation concerning then the photographs were taken.  In order to be admissible, a photograph must be

shown to be an accurate representation of the thing depicted as it appeared at the relevant time. *Maze v. Regions Bank, Inc.*, 2009 W.L. 2565141 (E.D. Mo. 2009). Plaintiff has provided no affidavit or other evidence that the photographs were taken at the relevant time. It is inappropriate to use photographs to justify that Defendants discriminate on the basis of age without laying a foundation as to when the photographs were taken. For instance, if the photographs were taken during any time prior to 2009 while Plaintiff was still receiving good reviews, the photographs do not in any way establish that Plaintiff was being discriminated on the basis of age. Likewise, if the photographs were taken before Sheriff Arnott became Sheriff, they would be irrelevant. Without providing the dates of the photographs, Plaintiff cannot assert that the photographs are relevant. As such, the photographs included in Plaintiff's Exhibit 13 and discussed at length by Plaintiff are inadmissible and do not prevent summary judgment.

### 2. Plaintiff's anecdotal evidence ignores the totality of the circumstances.

Even if the Court considers the photographs, Plaintiff's anecdotal evidence does not defeat Defendants' Motion for Summary Judgment for the reason that Plaintiff ignores the totality of the circumstances. Plaintiff, unlike the other individuals including Sergeant Smith, set forth by Plaintiff, never attempted to improve his attitude. For instance, Plaintiff focuses on isolated incidents such as Sergeant Canter making an error in a tray count at mealtime. Plaintiff, however, was not disciplined merely because he made an error with regard to a tray count or he made a spelling error. Rather, Plaintiff was demoted and terminated for a pattern of behavior that was not improving. Evidently Plaintiff had decided that he was going to play the age card and rather than improving his behavior, engaged in a pattern of conduct that he knew would lead to his demotion and termination so that he could then file this lawsuit.

E.    **PLAINTIFF WAS NOT MEETING HIS EMPLOYER'S LEGITIMATE EXPECTATIONS AT THE TIME OF THE ADVERSE EMPLOYMENT ACTION.**

To show that Plaintiff was meeting his employer's expectations at the time of his demotion and termination, Plaintiff suggests that he had good reviews. While Defendants do not dispute that Plaintiff had good reviews, it became clear in January of 2009, the same month that Sheriff Arnott became sheriff, that Plaintiff was not meeting his employer's expectations at the time he was demoted. From January of 2009 to the date of his termination, Plaintiff engaged in insubordination and poor performance, as more fully set forth in Defendants' original Motion for Summary Judgment. While the actions of Plaintiff may have met his employer's expectations at the time prior to Sheriff Arnott taking office in January of 2009, Plaintiff cannot show that he was meeting the expectations of Sheriff Arnott during the year 2009. Thus, while Plaintiff goes to great lengths to show what he did prior to 2009, he cannot show that he was meeting his employer's expectations at the time Sheriff Arnott became the Greene County Sheriff.

Plaintiff then argues that there is no evidence that he engaged in misconduct to justify being subject to discipline and termination. Plaintiff argues that there was surveillance footage that should have shown Plaintiff engaging in misconduct. While Plaintiff wishes to argue how much cameras could show now, he testified in his deposition that the cameras frequently were not working. Defendants' Response to Plaintiff's SOF, ¶1.

Plaintiff then argues that there was a lack of evidence related to his report writing in that Defendants did not produce a single report authored by Plaintiff containing a single error. While he would like to suggest to this Court that there is no report showing that he ever made mistakes, his own testimony substantiates Defendants' claim that he made frequent mistakes in his reports. Defendants' Response to Plaintiff's SOF, ¶6. In order to withstand a motion for summary

judgment, Plaintiff argues that Defendants did not show him any of his reports containing errors. Yet, when giving deposition testimony, Plaintiff stated that he was in fact notified of the reports that contained errors. Defendants' Response to Plaintiff's SOF, ¶6.

Plaintiff then argues that the hiring data shows that Plaintiff was replaced by several young correctional officers. Plaintiff's evidence, however, does not establish that any of these individuals were hired to replace Plaintiff. Plaintiff merely lists individuals with younger dates of birth that were hired during 2009. Moreover, Plaintiff ignores the hiring of David Wheeler in July of 2009. Mr. Wheeler was actually older than Plaintiff. Plaintiff simply cannot show that he was replaced with a younger correctional officer after his firing. Defendants' Response to Plaintiff's SOF 177.

Because Plaintiff has failed to satisfy the first prong of the *McDonnell Douglas* analysis, Defendants would be entitled to summary judgment even if Plaintiff asserted that age was the exclusive reason for his demotion and termination, which he does not. Furthermore, even if the Court finds that Plaintiff has satisfied the first prong of the *McDonnell Douglas* analysis, Defendants have shown that there was a legitimate non-discriminatory reason for terminating Plaintiff.

   **F.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT SHOW THAT DEFENDANTS' OFFERED REASONS FOR ADVERSE EMPLOYMENT ACTION ARE PRETEXTUAL.**

In his response to Defendants' Motion for Summary Judgment, Plaintiff argues that Defendants' reasons for terminating Plaintiff are pretextual. As Plaintiff notes, employees are similarly situated only when they are involved in or accused of the same offense and are disciplined in different ways. Plaintiff, however, doesn't compare his total behavior with the total behavior of other employees. Rather, Plaintiff picks out one of the myriad reasons for his

demotion and termination and compares it to an isolated event with another employee. The problem with Plaintiff's analysis is that Plaintiff was not demoted and terminated simply because he had spelling reports. Plaintiff was not demoted and terminated simply because he made a mistake in counting trays. Plaintiff was not demoted and terminated simply because he needed to be more proactive in the pod. Plaintiff was not demoted and terminated simply because he needed to pay better attention to detail. Plaintiff was not demoted and terminated simply because he locked down a pod. Plaintiff was not demoted and terminated simply because he called in sick to avoid having to work with a fellow corporal. Instead, Plaintiff was demoted and terminated for all of the above reasons, his lack of improvement, and his insubordination by failing to respond to his superiors. Plaintiff cannot show another employee that engaged in the same myriad of behavior Plaintiff engaged in that was not terminated.

Plaintiff then argues that Defendants failed to follow the Sheriff's Office policies and procedures when they disciplined Plaintiff. Of course, Plaintiff does not suggest to this Court nor provide any evidence to this Court that Defendants followed their procedures with regard to other employees. The mere fact that Defendants may have failed to follow some policies does not establish that the reasons given for Plaintiff's demotion and termination were a pretext.

In support of his arguments that Defendants' offered reasons are pretextual, Plaintiff cites the cases of *Spulak v. K-Mart Corp.*, 894 F.2d 1150 (10th Cir. 1990), *E.E.O.C. v. Kohler Co.,* 335 F.3d 766 (8th Cir. 2003), *Roush v. K of C Nat. Mgt. Co.,* 10 F.3d 392 (6th Cir. 1993), and *Corneveaux v. CUNA Mut. Inc. Group*, 76 F.3d 1498 (10th Cir. 1996). For the reasons that follow, these cases do not apply.

First, each of the cases cited by Plaintiff predate *Gross, Supra*. Accordingly, these cases do not defeat Defendants' Motion for Summary Judgment for the reason that even if

discrimination of age is a "determining factor, it is not the factor in light of Plaintiff's own admissions that the decision to counsel, demote and terminate was connected to the Mansfield incident." Moreover, each of the cases cited by Plaintiff are determined upon unique individual facts and are simply not applicable to the unique facts presented by this Court.

Defendants concede that they have not faithfully followed policies and procedures. Although Plaintiff emphasizes that fact, Plaintiff cannot show any individual where the policies and procedures were followed prior to this lawsuit. Unlike some of the cases cited by Plaintiff, this Court is not presented with a situation where the policies were enforced against Plaintiff but not against anyone else or where the policies were not followed with Plaintiff but were followed with everyone else.

While there is no video footage of Plaintiff on April 10 or 11, 2009, showing Plaintiff committed the policy violations, it is because Plaintiff chose to switch his shift with someone else.

Plaintiff states that Plaintiff didn't start or spread any particular rumors, but Plaintiff has provided nothing in his Affidavit denying that he started or spread rumors.

Plaintiff claims that Defendants have not produced any reports authored by Plaintiff containing errors. Those errors, however, were corrected therefore there were no reports to produce. Even Plaintiff admits he has made mistakes in his reports since he started. Defendants' Response to Plaintiff's SOF 6-8. Plaintiff alleges that someone else must be altering his reports, but can provide Defendants no individual who would be altering the reports. Instead, Plaintiff merely criticizes Defendants for not going off on an investigation to check the reports when Plaintiff has made mistakes in his reports for years.

Plaintiff then claims that Major Spaulding recommended to Defendant Arnott that he be terminated after Major Spaulding learned that Plaintiff intended to bring an age discrimination claim. Doc. 103, p.76. Plaintiff, however has not made a retaliation claim. Moreover, any retaliation claim might actually disprove his age discrimination claim. If, as Plaintiff alleges, he was terminated because he was making age-related complaints, Plaintiff was not terminated because of his age (status) but if true, Plaintiff was terminated for his conduct in complaining.

Plaintiff then claims that Defendant Arnott made the final decision to demote and terminate Plaintiff and relied on information provided by Major Spaulding, Defendant Jenkins, Sergeant Canter, Defendant Clayton and others. Doc. 103, p.78. As Plaintiff has stated in his Response to Defendants' Statement of Facts, however, the information provided by Major Spaulding, Defendant Jenkins, Defendant Clayton and others was, in part, based upon the Mansfield incident. As such, Plaintiff has shown that age is not the exclusive reason for his termination. Accordingly, summary judgment should be granted in favor of Defendants.

G.  **DEFENDANTS CANNOT BE HELD INDIVIDUALLY LIABLE UNDER THE AGE DISCRIMINATION AND EMPLOYMENT ACT.**

In their Motion for Summary Judgment, Defendants argue that they cannot be held individually liable under the Age Discrimination and Employment Act. Plaintiff responds that Count II of his Second Amended Complaint should not be dismissed because it contains claims against Defendants in their official capacities. Plaintiff argues that a suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity.

Defendants are not claiming that a suit brought against Sheriff Arnott in his official capacity as the Greene County Sheriff should be dismissed. Rather, Defendants argue that none of the Defendants should be brought in their individual capacities. Plaintiff cites no cases

showing that Defendants are individually liable. For the reasons set forth in Defendants' Motion for Summary Judgment, all Defendants should be dismissed in their individual capacity.

### H. PLAINTIFF'S ALLEGATIONS IN HIS SECOND AMENDED COMPLAINT PRECLUDE DEFENDANTS' LIABILITY.

The next argument Plaintiff makes in his response to Defendants' Motion for Summary Judgment is that the allegations in Plaintiff's Second Amended Complaint do not preclude Defendants' liability under the ADEA because Plaintiff is entitled to plead alternative theories of liability. Doc. 103, p.80. The problem with Plaintiff's argument is that Plaintiff did not plead alternative or inconsistent theories of liability and never alleged that age was the exclusive cause for his discharge. Defendants have addressed this issue at length on pages 52 through 59 of this Reply and incorporate it by reference.

Although Plaintiff's original response to Defendants' Motion for Summary Judgment on whether Plaintiff's Second Amended Complaint precluded liability was only three paragraphs, Plaintiff has now increased his response on this issue to more than three pages.

Plaintiff cites *Renfrow v. Sanborn Map Co. Inc.,* 2011 W.L. 1102834 (E.D. Mo. 2011) to support his claim that he can plead alternative theories. Defendants do not disagree that Plaintiff is entitled to plead alternative theories of liability. *Renfrow v. Sanborn Map Co., Inc.*, 2011 W.L. 1102834 (E.D. Mo. 2011) cited by Plaintiff states as much. In *Renfrow*, however, the court dismissed the age discrimination claim, in part, because the Plaintiff did not specifically state that his counts were in the alternative. *Id*. at 4.

Plaintiff also cites *Renfrow* for the proposition that where the presence of mixed motives defeats all or some part of plaintiff's claim are trial issues not summary judgment issues. *See, Renfrow, Supra* at *8 citing *King v. Hardesty*, 517 F.3d 1049, 1058 (8th Cir. 2008).

*Hardesty*, however, was a mixed motives case. Before finding that the presence of additional motives did not entitle the defendant to summary judgment, the court said as follows: "At the summary judgment stage, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was *a* motivating factor in the defendant's adverse employment action." (*Hardesty*, 517 F.3d 1049 at 1058.) (emphasis in the original). *Hardesty* was not an age discrimination case. The present case is an age discrimination case and as set forth above, age must be *the* motivating factor not just *a* motivating factor. Neither *Renfrow* nor *Hardesty* stand for the proposition that an ADEA plaintiff can claim he was demoted and terminated for multiple reasons without pleading in the alternative and still survive summary judgment.

Plaintiff had the right to plead alternative theories but did not do so. In fact, Plaintiff incorporates its first 37 paragraphs addressing the issue of inmate abuse within Count II of his Second Amended Complaint. *Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.*, 976 F.2d 58, 61-62 (1st Cir. 1992) (Court held that where plaintiff expressly incorporated a factual allegation from a prior count into another count, that the privilege of alleging inconsistent facts in alternative pleadings provided no aid to plaintiff).

In addition to the above cases, Plaintiff cites the case of *Henry v. Daytop Village, Inc.*, 42 F.3d 89 (2nd Cir. 1994). In *Henry*, the court noted that they did not believe the plaintiff's claims were inconsistent. *Henry*, 42 F.3d at 94 and 96.

After citing the above cases, Plaintiff then states that like "the case cited above, Plaintiff has pleaded alternative and inconsistent theories of liability." Doc. 103, p.82. Although Plaintiff makes that assertion, Plaintiff has clearly not pled alternative theories of liability. There is nothing to suggest that Count I, Count II or Count III are alternative to each other. Additionally,

Plaintiff has not pled inconsistent theories of liability in that Plaintiff has never specifically pled age was the exclusive cause, or for that matter any cause, of his termination.

Plaintiff also cites *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531 (8th Cir. 1970). Interesting, the Eighth Circuit specifically noted that the third count did not incorporate any such facts from the prior two counts. *Id.* at 536. Count II and III of Plaintiff's Complaint, however, incorporates the facts from the prior counts.

Plaintiff asserts that Count II of his Second Amended Complaint alleges that Plaintiff's age was the cause of termination. Doc. 103, p.83. Specifically, Plaintiff quotes those portions of his Second Amended Complaint which state that "In violation of 29 U.S.C. §623, Defendants discriminated against Plaintiff with respect to the compensation, terms, conditions and privileges of his employment because of his age. As a direct and proximate result of Defendants' violation of 29 U.S.C. §623, Plaintiff suffered damages." Doc. 103, p.83.

Nothing in the language cited by Plaintiff alleges that Plaintiff claims he was terminated or discharged because of his age. Although Plaintiff chose to quote portions of 29 U.S.C. §623 in Count II of his Complaint, Plaintiff specifically chose not to include the "discharge" phrase contained in 29 U.S.C. §623.

Even if this Court believes that Plaintiff's Second Amended Complaint is in the alternative, this Court should not ignore Plaintiff's deposition testimony or the portions of Plaintiff's affidavit and responses to Defendants' Motion for Summary Judgment, where Plaintiff asserts that his demotion and termination were connected to the Mansfield incident.

## VI.    CONCLUSION

Defendants are entitled to summary judgment on Plaintiff's Second Amended Complaint as a matter of law. Count I has been dismissed. Count III has been dismissed. While those

counts have been dismissed, paragraphs 1 through 37 of Plaintiff's Second Amended Complaint have been incorporated into Count II of Plaintiff's Second Amended Complaint. Moreover, Plaintiff has judicially admitted that age was not the exclusive cause for his demotion and termination. In fact, Plaintiff alleged that his whistle blowing concerning alleged inmate abuse was the exclusive reason for his termination. Even if this Court finds that Plaintiff has somehow abandoned that judicial admission by having his case dismissed with prejudice, Plaintiff's own deposition testimony, his affidavit, and his two separate Responses to Defendants' Motion for Summary Judgment makes it clear age was not the exclusive reason for his termination.

Plaintiff should not be allowed to avoid summary judgment by creating inconsistent testimony and offering that testimony into the record for the purpose of demonstrating a genuine issue of fact. To the extent that his affidavit filed on the day a response to summary judgment was due contradicts his pleadings and prior deposition testimony, such paragraph should be stricken and summary judgment entered in favor of Defendants.

**WHEREFORE**, Defendants pray for judgment on Plaintiff's Second Amended Complaint, for their attorney fees and costs, and for such further relief as the Court deems just and proper in the premises.

Respectfully Submitted,

OFFICE OF GREENE COUNTY COUNSELOR

By: ___/s/ Theodore L. Johnson, III_____
     Theodore L. Johnson, III
     Missouri Bar No. 20357
     tjohnson@lowtherjohnson.com


By: ___/s/ John W. Housley_____
     John W. Housley
     Missouri Bar No. 28708
     jhousley@lowtherjohnson.com


By: ___/s/ Greggory D. Groves_____
     Greggory D. Groves
     Missouri Bar Number 35526
     901 St. Louis, 20th Floor
     Springfield, Missouri 65806
     ggroves@lowtherjohnson.com
     Telephone 417-866-7777
     Facsimile 417-866-1752
     **Attorneys for Defendants**


## CERTIFICATE OF SERVICE


     I hereby certify that on November 22, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Craig R. Heidemann
Nathan A. Duncan
Douglas, Haun & Heidemann, P.C.
111 W. Broadway, P.O. Box 117
Bolivar, MO 65613


          /s/ Greggory D. Groves_____