IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

STANLEY GRISSOM,                    )
                                    )
              Plaintiff,            )
                                    )
v.                                  )      Case No. 09-03244-CV-S-SWH
                                    )
JAMES ARNOTT, et al.,               )
                                    )
              Defendants.           )

ORDER

I. BACKGROUND

Plaintiff, Stanley Grissom, was a correctional officer with the Greene County, Missouri Sheriff's Department from 2002 until his termination in June of 2009. Defendant James Arnott was sworn in as Sheriff on December 31, 2008. In March of 2009, defendant Jenkins and a sergeant, not a defendant in the case, spoke to the plaintiff concerning his job performance and attitude. In May of 2009, plaintiff received a written counseling report, was demoted and put on six months probation. In June of 2009, Sheriff Arnott terminated plaintiff's employment. Plaintiff filed a charge of discrimination with the EEOC in September of 2009. In July of 2010, plaintiff filed suit against Sheriff James Arnott, and three other Sheriff's Department employees, James Jenkins, Jeff Coonrod and Kenneth Clayton. Defendants were sued in both their individual and official capacities.

On March 24, 2011, defendants filed a motion for summary judgment on counts I, II and III of Plaintiff's Second Amended Complaint. (Doc. #51) Counts I and III have since been dismissed pursuant to a motion for voluntary dismissal. (Doc. #98) Count II, which is a claim under the Age Discrimination in Employment Act (hereafter "ADEA"), is the only remaining claim in this case.

In their motion, defendants contend that plaintiff cannot establish a prima facie case of age discrimination and that even if a prima facie case of discrimination were to be assumed, Sheriff Arnott had legitimate non-discriminatory reasons for his actions in demoting and ultimately terminating plaintiff. Plaintiff alleges that he has both direct and indirect evidence of discrimination and that he can demonstrate that any of the reasons advanced by defendants for his demotion and termination are pretextual.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party has the burden of showing that there are no genuine issues of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. In determining whether a fact is material, courts must determine what facts under the substantive claim are necessary to sustain the cause of action. Anderson, 477 U.S. at 248.

If the moving party has met their initial burden, then the burden shifts to the nonmoving party to produce specific evidence to demonstrate the existence of a "genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. When considering a motion for summary judgment, a court

2

must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991).

## III.  UNDISPUTED FACTS

The following relevant facts are uncontroverted unless otherwise noted:

A.    The Parties

1.    James Arnott ( hereafter "Arnott") is the Sheriff of Greene County, Missouri, and has held that position since January of 2009. (Arnott Affidavit, ¶¶ 1 and 2, attached as Defendant's Exhibit 6) (Defendants' Uncontroverted Facts (hereafter "DUF") #1)

2.    Arnott is responsible for hiring and firing at the jail and has been since he was sworn in on December 31, 2008.[1] (Plaintiff's Uncontroverted Facts (hereafter "PUF") #151)

3.    After Arnott became the Sheriff of Greene County, Missouri, he wanted the Greene County Sheriff's Department to operate at high standards. (Arnott Affidavit, ¶3, attached as Defendants' Exhibit 6) (DUF #2)

4.    When he became the Sheriff of Greene County, Missouri, Arnott instructed the supervisors of the employees of the Greene County Sheriff's Department to keep track of the performance of the employees they supervise. (Arnott Affidavit, ¶4, attached as Defendants' Exhibit 6) (DUF # 3)

5.    James Jenkins (hereafter "Jenkins") is a Shift Lieutenant with the Greene County Sheriff's Department and was a supervisor of Grissom. (Jenkins Affidavit, ¶1, attached as Defendants' Exhibit 8) (DUF #4)

6.    Jeff Coonrod (hereafter "Coonrod") is a Captain with the Greene County Sheriff's Department and is responsible for the jail operations. (Coonrod Affidavit, ¶¶1 & 2, attached as Defendants' Exhibit 9) (DUF ##5 & 6)

7.    Kenneth Clayton (hereafter "Clayton") is a Captain with the Greene County Sheriff's Department. (Clayton Affidavit, ¶1, attached as Defendants' Exhibit 10) (DUF #7)

8.    Plaintiff Stanley Grissom (hereafter "Grissom") began working for the Greene

---

[1]This fact has been admitted by defendants, however, the Court notes that the evidence cited by Grissom in support of the factual statement does not support the factual statement.

3

County Sheriff's Department in April of 2002 as a corrections officer. (Arnott Affidavit, ¶5, attached as Defendants' Exhibit 6) (DUF #8)

9. No prior certification or degree is required to assume the role of correctional officer.[2] (PUF #170)

10. On June 1, 2006, Grissom was promoted to the position of Corrections Officer IV (Corporal). (Arnott Affidavit, ¶6, attached as Defendants' Exhibit 6; Coonrod Deposition, 25:15-21, attached as Plaintiff's Exhibit 3) (DUF #9 & PUF #107)

B. Grissom's Work Performance January to May 2009

11. On January 4, 2009, one of Grissom's supervisors spoke with Grissom regarding allegations that Grissom was calling in sick if a fellow corporal by the name of William Friend was the acting housing sergeant. Grissom denied the allegations.*[3] (Jenkins Affidavit, ¶3, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendant's Exhibit 8)) (DUF #11 & Plaintiff's Response to DUF #11)

12. On January 28, 2009, Jenkins spoke with Grissom about singling out individuals who were violating rules as opposed to locking down an entire pod. Grissom felt he was justified in locking down the pod because the inmates were making vulgar and obscene comments to one of the jail nurses and individual discipline was not effective in controlling the situation.* (Jenkins Affidavit, ¶4, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8); Grissom Affidavit, ¶19 attached as Plaintiff's Exhibit 1) (DUF #12 & Plaintiff's Response to DUF #12)

13. On March 27, 2009, it was noted in Grissom's 2009 Performance Log that while

_____

[2]This fact has been admitted by defendants, however, the Court notes that the evidence cited by Grissom in support of the factual statement is self-serving. See Gander Mountain Co. v. Cabela's, Inc., 540 F.3d 827, 831 (8th Cir. 2008) (finding that a self-serving affidavit cannot be used to defeat summary judgment).

[3]The wording of this factual statement is not verbatim from Defendants' Statement of Uncontroverted Material Fact. Instead, the language has been changed to more accurately describe the evidence and/or to include Grissom's response to Defendants' Statement of Uncontroverted Material Fact. Hereinafter, the Court will note by use of an asterisk (*) when the Court has substantially changed the wording and/or incorporated Grissom's response into the statement of undisputed fact. The Court notes, however, that many of Grissom's responses do not directly contradict Defendants' Statement of Uncontroverted Material Fact and are being included only to provide a fuller understanding of the facts presented. It should also be noted that a plaintiff's self-serving affidavit cannot be used to defeat a "properly supported motion for summary judgment[.]" Gander Mountain Co. v. Cabela's, Inc., 540 F.3d 827, 831 (8th Cir. 2008).

4

Grissom was on duty, the multipurpose door was open and two inmates were doing push ups near the officer's desk. Grissom denies the multipurpose room was open and two inmates were doing push ups near the officer's desk, but does admit that a notation was made to such effect on his 2009 Performance Log.* (Jenkins Affidavit, ¶6, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8); Grissom Affidavit, ¶44, attached as Plaintiff's Exhibit 1) (DUF #14 & Plaintiff's Response to DUF #14)

14. On March 27, 2009, Grissom requested to work and train in booking and release. Jenkins informed Grissom that he would need to show more motivation and pay better attention to detail in order to be considered for the opportunity to work in release. (Jenkins Affidavit, ¶5, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8)) (DUF #13 & PUF # 148)

15. Jenkins and Sergeant Smith refused to permit Grissom to train in the booking and release department of the jail. (Grissom Affidavit, ¶11, attached as Plaintiff's Exhibit 1; Jenkins Deposition, 185:1-6[4], attached as Plaintiff's Exhibit 4) (PUF #29)

16. One of the reasons that Grissom was not allowed to work in booking and release was because Sergeant Smith did not feel comfortable with Grissom working in booking and release. (Coonrod Deposition, 88:15-23, attached as Plaintiff's Exhibit 3) (PUF #136 & Defendants' Response to PUF #136)

17. On March 28, 2009, Sergeant Smith and Jenkins had a meeting with Grissom. In that meeting, Sergeant Smith explained the job requirements for release and further explained to Grissom that the job was very detail oriented and required extreme multi-tasking skills. (Jenkins Affidavit, ¶7, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8)) (DUF #15)

18. At the March 28, 2009 meeting, Jenkins also informed Grissom that he had heard him make the statement that if he did not get put into booking, he would go up front and complain to administration. Jenkins explained to Grissom that he could go to administration if he wished. (Jenkins Affidavit, ¶8, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8)) (DUF #16)

19. At the March 28, 2009 meeting, Jenkins also explained to Grissom that he would like to see Grissom exercise more self motivation in his job performance and that he

_____

[4]Grissom's citations to the relevant portions of the record are not always accurate. At times, Grissom leaves out relevant portions of deposition answers or cites to the wrong page number. The citations that appear in this Order have been changed to reflect the correct citation to the relevant material.

should inspire and not conspire as an officer and a corporal. Jenkins explained to Grissom that his name often came up in rumors being started. Grissom understood the comments by Jenkins as changes needed to be made by Grissom in order to be moved to booking and release, and not in the context of his overall job performance.* (Jenkins Affidavit, ¶9, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8); Grissom Affidavit, ¶45, attached as Plaintiff's Exhibit 1) (DUF #17 & Plaintiff's Response to DUF #17)

20.     In the meeting of March 28, 2009, Jenkins gave Grissom a list of items to improve upon including: 1) improving the quality of reports, spelling and proper words; 2) using proper forms for reports such as incidents and memos; 3) paying attention to detail in daily rosters and reports; 4) using more proactive performance in the pods and not simply staying behind the desk while other pod officers make all the rounds, pass out mail, etc. Grissom understood the list by Jenkins as a list of changes needed to be made by Grissom in order to be moved to booking and release, and not in the context of his overall job performance.* (Jenkins Affidavit, ¶10, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8)) (DUF #18 & Plaintiff's Response to DUF #18)

21.     The March 28, 2009,entry in Grissom's 2009 Performance Log discusses the communication between Jenkins, Sergeant Smith, and Grissom, and does not say that Grissom needed to improve in certain areas to keep his job. (Grissom's 2009 Performance Log, attached as Plaintiff's Exhibit 2) (PUF #141)

22.     While Jenkins said Grissom's failure to make his assigned rounds was continuous, he was unable at his deposition to identify a single day or shift on which Grissom failed to make any rounds. (Jenkins Deposition, 40:19-25, 45:1-4, attached as Plaintiff's Exhibit 4) (PUF #80 & Defendants' Response to PUF #80)

23.     On May 10, 2009, Sergeant Smith, Sergeant Cantor and Jenkins spoke with officers assigned to work with Grissom to see how Grissom had improved since the discussion with him on March 28, 2009. (Jenkins Affidavit, ¶12, attached as Defendant's Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8)) (DUF #20)

24.     The officers Jenkins, Sergeant Smith and Sergeant Cantor spoke with informed them that Grissom was disgruntled and that they did not feel safe and considered him a liability when they were assigned to work with him.[5]  In his affidavit, Grissom

_____

        [5]Plaintiff objects to this statement of fact arguing that the statement contains inadmissible hearsay.  The statement is not inadmissible hearsay.  Hearsay is a statement made by a third-party being offered in "evidence to prove the truth of the matter asserted in the statement." Fed.

6

denied that he was disgruntled, dangerous, or a liability to other jail employees.* (Jenkins Affidavit, ¶13, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8); Grissom Affidavit, ¶50-51, attached as Plaintiff's Exhibit 1; Jenkins Deposition 75:13-16, attached as Plaintiff's Exhibit 4) (DUF #21 & Plaintiff's Response to DUF #21) However, he admitted being "disgruntled" in his deposition testimony. (See UF # 73, *infra*)

25.   The officers informed Jenkins that Grissom did not perform security rounds, did not go to the top tier, and avoided writing reports.[6]  Grissom denies that he did not perform security rounds, did not go to the top tier, and avoided writing reports.* (Jenkins Affidavit, ¶14, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8); Grissom Affidavit, ¶51, attached as Plaintiff's Exhibit 1) (DUF #22 & Plaintiff's Response to DUF #22)

26.   The officers further informed Jenkins that Grissom did not perform at the level of a corporal, did not display leadership qualities expected of a corporal, and felt that others were more deserving of the rank.  Grissom denies that he did not perform at the level of a corporal, did not display leadership qualities expected of a corporal, and felt that others were more deserving of the rank.* (Jenkins Affidavit, ¶15, attached as Defendants' Exhibit 8;  Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8); Grissom Affidavit, ¶¶ 52-53, attached as Plaintiff's Exhibit 1) (DUF #23 & Plaintiff's Response to DUF #23)

27.   After meeting with the officers and determining that Grissom had not improved since the conference with him on March 28, 2009, a Counseling Report, written by Sergeant Canter and signed by Jenkins, was prepared for Grissom.  A copy of that Counseling Report is attached to Jenkins Affidavit as Exhibit "A" and incorporated herein by reference.  Plaintiff denies that the improvements in his job performance

---

R. Evid. 801(c).  The statement is not being offered to prove that Grissom was dangerous and a potential liability.  Instead the statements are being offered to show why Jenkins and Arnott believed it was necessary to take particular action with respect to Grissom's employment.  See Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO, 507 F.Supp.2d 93, 99 n.10 (D.D.C. 2007) (finding that the "testimony of [two executives with NALC] as to the third-party statements concerning the plaintiff's performance are offered not for the truth of the matters asserted therein, but as an explanation of why [the two executives] believed that terminating the plaintiff's employment with the NALC was necessary and appropriate.")  Therefore, the statements are not inadmissible hearsay.

   [6]Plaintiff objects to this statement of fact arguing that the statement contains inadmissible hearsay.  This Court finds the statements are not inadmissible hearsay for the same reasons as set forth in footnote 5, *supra*.

suggested during the March 28, 2009, meeting were necessary and further denies that his job performance did not objectively improve.(Jenkins Affidavit, ¶16, attached as Defendants' Exhibit 8; Grissom Counseling Report, attached as Exhibit A to Jenkins Affidavit (Defendants' Exhibit 8); Jenkins Deposition, 53:15-17, attached as Plaintiff's Exhibit 4) (DUF #24, Plaintiff's Response to DUF # 24 & PUFs ##23 & 24)

28.    The Counseling Report was given to Grissom, and he signed the same on May 20, 2009. (Jenkins Affidavit, ¶17, attached as Defendants' Exhibit 8; Grissom Counseling Report, attached as Exhibit A to Jenkins Affidavit (Defendants' Exhibit 8)) (DUF #25)

29.    Grissom did not make any written comments on the Counseling Report dated May 10, 2009 although he did sign it.* (Jenkins Affidavit, ¶18, attached as Defendant's Exhibit 8; Grissom Counseling Report, attached as Exhibit A to Jenkins Affidavit (Defendants' Exhibit 8)) (DUF #26)

30.    The May 10, 2009 Counseling Report did not state that Grissom would be terminated if he did not meet the goals and objectives set forth in the report. (Jenkins Deposition, 57:11-23, attached as Plaintiff's Exhibit 4; May 10, 2009 Counseling Report, attached as Plaintiff's Exhibit 5) (PUF #50)

31.    The May 10, 2009 Counseling Report stated that on March 28, 2009, Jenkins and Sergeant Smith spoke with Grissom about Grissom's performance level and general attitude. (May 10, 2009 Counseling Report, attached as Plaintiff's Exhibit 5) (PUF #61)

32.    The May 10, 2009 Counseling Report references the March 28, 2009 communication between Jenkins, Sergeant Smith, and Grissom, but does not say that it was communicated to Grissom on March 28, 2009, that Grissom needed to improve in certain areas if he wanted to get the booking and release position. (May 10, 2009 Counseling Report, attached as Plaintiff's Exhibit 5; Grissom's 2009 Performance Log, attached as Plaintiff's Exhibit 2; Coonrod Deposition, 174:23-25, 175:1-13) (PUF #62)

33.    The May 10, 2009 Counseling Report stated that on March 28, 2009, Grissom had been given four areas of improvement:

        1. Improve quality of report spelling and proper words.
        2. Use proper forms for reports such as incident and memo.
        3. Attention to detail in daily rosters and again reports.
        4. More pro-active performance in the pods and not staying behind the desk, having the other [sic].

8

(May 10, 2009 Counseling Report, attached as Plaintiff's Exhibit 5) (PUF #63)

34. Grissom's May 10, 2009 Counseling Report indicates that other officers noted that Grissom avoided writing reports, but does not provide examples, such as a single incident that should have been reported, but was not. (Coonrod Deposition, 83:10-14, attached as Plaintiff's Exhibit 3; May 10, 2009 Counseling Report, attached as Plaintiff's Exhibit 5) (PUF #134)

35. One of the goals or objectives listed in Grissom's May 10, 2009 Counseling Report is not to spread rumors, but the Counseling Report does not identify a single rumor spread by Grissom. (Coonrod Deposition, 84:8-10, attached as Plaintiff's Exhibit 3; May 10, 2009 Counseling Report, attached as Plaintiff's Exhibit 5) (PUF #135)

C.   Grissom's Demotion

36. In May of 2009, Major Spaulding recommended to Arnott that Grissom be demoted, put on six months of probation, and be prohibited from off duty and extra duty assignments. (Spaulding Affidavit, ¶¶2 & 3, attached as Defendants' Exhibit 7; May 11, 2009 Memorandum from Major Spaulding to Arnott, attached as Exhibit A to Arnott Affidavit (Defendants' Exhibit 6); Spaulding Deposition, 75:10-16, attached as Plaintiff's Exhibit 8) (DUF #27 & PUF #39)

37. Major Spaulding recommending that Sheriff Arnott demote plaintiff in the following memorandum:

I have reviewed the Counseling Report dated 5/10/09 of Cpl. Stanley Grissom submitted by Lt. Jenkins and Sgt. Smith. As you can clearly see in this report Cpl. Grissom continues to fail to improve in the key areas as directed. He apparently refuses to modify his work habits, clearly failing to lead by example and placing himself and others in a dangerous situation.

This clearly sets a very poor example for his subordinates, and I believe we are past a point to remedy this situation. Cpl. Grissom has been afforded several opportunities to rectify his shortcomings and has shown to be unwilling to comply.

It is therefore my recommendation that he be reduced in rank and placed on a six month probation period, prohibited from off duty or extra duty assignments, and clearly make improvements in the areas mentioned in the counseling report. I believe this is the appropriate action and will demonstrate consistency in the application of our ever increasing standards across the department.

(May 11, 2009 Memorandum from Major Spaulding to Arnott, attached as Plaintiff's

9

Exhibit 16) (PUF #82)

38.     Jenkins never saw Grissom place himself or others in a dangerous situation. (Jenkins Deposition, Exhibit 4, Deposition of James Jenkins 75:5-16) (PUF #83)

39.     The written counseling report was attached to Major Spaulding's memo to Arnott recommending Grissom's demotion. (Arnott Deposition, 43:19-25, 44:1-11, attached as Plaintiff's Exhibit 7) (PUF #174)

40.     The May 10, 2009 Counseling Report does not contain any reference to any dangerous situations Grissom placed himself or others in. (May 10, 2009 Counseling report, attached as Plaintiff's Exhibit 4) (PUF #84)

41.     Grissom's 2009 Personnel Log does not reference any dangerous situations Grissom placed himself or others in. (Grissom's 2009 Performance Log, attached as Plaintiff's Exhibit 2) (PUF #85)

42.     Based on the recommendation of Major Spaulding, Arnott demoted Grissom from a Corrections Officer IV (Corporal) to a Corrections Officer III. (Jenkins Affidavit, ¶¶ 7, 8, 9 & 10, attached as Defendants' Exhibit 8; May 11, 2009 Memorandum from Major Spaulding to Arnott, attached as Exhibit A to Arnott Affidavit (Defendants' Exhibit 6)) (DUF #28)

43.     The day after Grissom received a written counseling report, Grissom was demoted and was placed on six months probation. (Coonrod Deposition, 50:23-25, attached as Plaintiff's Exhibit 3) (PUF #127)

44.     Arnott and Major Spaulding never personally observed any deficiencies in Grissom's job performance. (Spaulding Deposition, 189:19-25, 190:1-3, attached as Plaintiff's Exhibit 8) (PUF #25)

45.     After Grissom was provided the Counseling Report his performance and attitude was monitored, but his performance and attitude did not improve.  Plaintiff denies this fact citing ¶ 55 of his Affidavit for the proposition that his performance and attitude did improve.[7] (Jenkins Affidavit, ¶19, attached as Defendant's Exhibit 8)) (DUF #29)

46.     Grissom's 2009 Performance Log indicates that on June 1, 2009 and June 2, 2009, Grissom failed to properly complete inspection forms.  Grissom denies that he failed to properly complete inspection forms.* (Jenkins Affidavit, ¶22; Grissom's 2009

_____

[7]Paragraph 55 of Plaintiff's Affidavit does not support this fact, but instead states: "Even though I did not make any written comments concerning the written counseling, I provided verbal comments at the May 20, 2009 meeting."  Plaintiff actually took the position in his affidavit that "there were no improvements he needed to make in his job performance." (See ¶ 53 of Plaintiff's Affidavit, Ex. 1)

Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8); Grissom Affidavit, ¶¶57 & 59, attached as Plaintiff's Exhibit 1) (DUF #31 & Response to DUF #31)

47. On June 4, 2009, an inmate requested grievances for the way that Stanley Grissom had spoken to the inmate. Grissom claims that the inmate's grievance was meritless.* (Jenkins Affidavit, ¶23, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendant's Exhibit 8); Grissom Affidavit, ¶58, attached as Plaintiff's Exhibit 1) (DUF #32 & Plaintiff's Response to DUF #32)

48. On June 4, 2009, Officer Grissom was asked why it was that there were only problems when Grissom was working, and Grissom simply sat and looked at the sergeant without replying. (Jenkins Affidavit, ¶24, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendant's Exhibit 8)) (DUF #33)

49. On June 5, 2009, Lieutenant Howell noted in the Grissom's 2009 Performance Log that Grissom had to be informed of the proper procedure for moving an inmate including noting the move in the computer. (Jenkins Affidavit, ¶25, attached as Defendant's Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8)) (DUF #34) Plaintiff admits this notation was made, but denies that he needed to be informed of the proper procedure. (Plaintiff's Response to DUF # 34)

50. On June 7, 2009, Lieutenant Jenkins noted that the daily log reports were incomplete including the fact that the reports did not have the date recorded at the top and that entries cut off at 1700 hours although the shift lasted until 1900 hours. Grissom admits this notation as made, but denies that the daily log reports were incomplete.* (Jenkins Affidavit, ¶26, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8); Grissom Affidavit, ¶1, attached as Plaintiff's Exhibit 1) (DUF #35 & Plaintiff's Response to DUF #35)

51. On June 10, 2009, Sergeant Wallace spoke with Grissom about his incomplete log report of June 7, 2009. Grissom did not admit having any problems but claimed that somebody must be "f****** with him" and removing items from his log to get him fired. (Jenkins Affidavit, ¶27, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8)) (DUF #36)

52. Grissom admits that his logs were incomplete, but contends that they were incomplete because other jail employees were gaining unauthorized access to his forms and changing them in an effort to get him fired.* (Grissom Deposition, 30:23-

11

25 to 31:1-6, attached as Defendants' Exhibit 2; Grissom's 2009 Performance Log, attached as Plaintiff's Exhibit 2; Jenkins Deposition, at 46:7-25 to 47:1-22, attached as Plaintiff's Exhibit 4) (DUF #42 & Plaintiff's Response to DUF #42)

53. Any correctional officers had access to Grissom's daily logs and could have made changes to Grissom's daily logs. (Jenkins Deposition, 44:16-25, 45:1, attached as Plaintiff's Exhibit 4) (PUF #81)

54. Major Spaulding did not order an investigation into whether Grissom's reports were being altered. (Spaulding Deposition, 117:6-19, attached as Plaintiff's Exhibit 8) (PUF #53)

55. Captain Coonrod would have expected the lieutenant and sergeant to investigate Grissom's allegations that someone was removing items from Grissom's logs. (Coonrod Deposition, 126:17-25, 127:1, attached as Plaintiff's Exhibit 3) (PUF #138)

56. Captain Coonrod is not aware of the existence of any documents that show that anyone investigated Grissom's allegations that someone was removing items from Grissom's logs. (Coonrod Deposition, 128:8-19, attached as Plaintiff's Exhibit 3) (PUF #139)

57. Sheriff Arnott is not aware of any investigation to determine if anyone was, in fact, altering Grissom's reports. (Arnott Deposition, 106:2-8, attached as Plaintiff's Exhibit 7) (PUF #144)

58. Before January 2009, there are no entries in Grissom's personnel file suggesting that Grissom had any deficiencies in his reports. (Coonrod Deposition, 129:25, 130:1-9, attached as Plaintiff's Exhibit 3) (PUF #140)

59. On June 10, 2009, Sergeant Wallace discussed with Grissom the fact that there were inmates sitting in chairs in the recreation yard. Sergeant Wallace asked Grissom why the inmates had chairs in the recreation yard and Grissom replied "I don't know. I guess they must have snuck them out there when I wasn't looking." At that time, Grissom got up and told the inmates to return the chairs to the day room. (Jenkins Affidavit, ¶28, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8) (DUF #37)

60. On June 15, 2009, Sergeant Cantor informed Jenkins that Grissom had failed to put the date or the name of the inspecting officers on certain pod inspection reports. Grissom denies that he failed to include the name and dates of the inspecting officers on certain pod inspection reports.* (Jenkins Affidavit, ¶29, attached as Defendants' Exhibit 8; Grissom's 2009 Performance Log, attached as Exhibit B to Jenkins Affidavit (Defendants' Exhibit 8); Grissom Affidavit, ¶1, attached as Plaintiff's

Case 6:09-cv-03244-SWH   Document 106   Filed 04/16/12   Page 12 of 46

Exhibit 1 (DUF #38 & Plaintiff's Response to DUF #38)

D.   Grissom's Termination

61.   On June 16, 2009, Major Spaulding recommended to Arnott that Grissom be
terminated. (Spaulding Affidavit, ¶4, attached as Defendant's Exhibit 7; June 16,
2009 Memorandum from Major Spaulding to Arnott, attached as Exhibit B to
Spaulding Affidavit (Defendants' Exhibit 7)) (DUF #39) The Memorandum from
Major Spaulding to Sheriff Arnott dated June 16, 2009 provided:

> Sheriff,
>
> I have reviewed Officer Grissom's performance review (attached) for
> the thirty day period following his demotion. As you can see Officer
> Grissom clearly has not complied with the action plan set forth in his
> resent [sic] demotion.
>
> | | |
> |---|---|
> | 06/01/09 | Pod inspection reports submitted and incomplete. |
> | 06/04/09 | Grievance from inmates; failed to make razor pass. |
> | 06/05/09 | Failed to follow established procedures. |
> | 06/07/09 | Daily Report Logs incomplete |
> | 06/10/09 | Allowed inmates to have chairs in rec yard. |
> | 06/15/09 | Pod inspection report incomplete. |
>
> Based on Officer Grissom's continued insubordination and lack of
> effort to correct these and other actions I am recommending that his
> employment be terminated.

62.   Arnott received Grissom's performance review and counseling report prior to
making his decision to demote and terminate Grissom. (May 11, 2009 Memorandum
from Major Spaulding to Arnott, attached as Plaintiff's Exhibit 16; June 16, 2009
Memorandum from Major Spaulding to Arnott, attached as Plaintiff's Exhibit 17)
(PUF #27)

63.   Sergeant Canter wrote a memorandum dated May 14, 2009, to Coonrod, Clayton and
Major Spaulding in which he wrote that Grissom told Corporal Hartman, "It's okay.
I've still got an ace up my sleeve. I'm an old man. If they try to do anything, I'll pull
the age card and claim age discrimination." (May 14, 2009 Memorandum from
Sergeant Canter to Coonrod, Clayton, and Major Spaulding, attached as Plaintiff's
Exhibit 9) (PUF ##102 & 103)

64.   Major Spaulding's recommendation that Grissom be terminated was made after
Major Spaulding learned that Plaintiff intended to bring an age discrimination claim
against the county. Defendants deny that the references cited establish that Major

13

Spaulding recommended termination because plaintiff intended to bring an age discrimination claim. (May 14, 2009 Memorandum from Sergeant Canter to Coonrod, Clayton, and Major Spaulding, attached as Plaintiff's Exhibit 9; June 16, 2009 Memorandum from Major Spaulding to Arnott, attached as Plaintiff's Exhibit 6) (PUF #104 & Defendants' Response to PUF #104)

65. The June 11, 2009 entry from Grissom's 2009 Performance Log states, "Lt. Jenkins informed by Officer Figueroa that Grissom has informed him he is going to sue the county for among other things 'age discrimination' and knows he has contacted an attorney. Figueroa stated he does not want to be involved with Grissom in this manner." Prior to termination plaintiff, defendant Arnott reviewed the performance log. However, defendants deny that plaintiff was terminated because he made allegations of age discrimination. (Grissom's 2009 Performance Log, p. 00092, attached as Plaintiff's Exhibit 2; Arnott Deposition, 14:7-13, attached as Plaintiff's Exhibit 7) (PUFs ##52 & 137 and Defendants' Response to PUF # 137)

66. The June 11, 2009 entry from Grissom's 2009 Performance Log, which states that Grissom is going to sue the county for age discrimination, is not included in Major Spaulding's June 16, 2009 memorandum to Arnott. (June 16, 2009 Memorandum From Spaulding to Arnott, attached as Plaintiff's Exhibit 6; Grissom's 2009 Performance Log, attached as Plaintiff's Exhibit 2; Jenkins Deposition, 113:7-21, attached as Plaintiff's Exhibit 4) (PUF #51)

67. Jenkins knew that Grissom was making age-related complaints more than one month before he was terminated. (Jenkins Deposition, 195:10-15, attached as Plaintiff's Exhibit 4) (PUF #105)

68. Coonrod testified at his deposition that he could not name a specific Greene County Sheriff's Department policy that Grissom violated. (Coonrod Deposition, 19:11-23, attached as Plaintiff's Exhibit 3) (PUF #106 & Defendants' Response to PUF #106)

69. On June 16, 2009, Arnott made the final decision to terminate Grissom and terminated Grissom. (Arnott Affidavit, ¶¶11 & 12, attached as Defendants' Exhibit 6) (DUF #40)

70. Arnott based his decision to terminate Grissom on the recommendation of Major Kevin Spaulding as set forth in the June 16, 2009 Memorandum from Major Spaulding. (Arnott Affidavit, ¶¶13 & 14, attached as Defendants' Exhibit 6; June 16, 2009 Memorandum from Major Spaulding to Arnott, attached as Exhibit B to Arnott Affidavit (Defendants' Exhibit 6)) (DUF #41 & PUF # 143)

71. Arnott admitted that one of the reasons he can make erroneous decisions is if his decision is based on inaccurate information. (Arnott Deposition, 110:11-15, attached as Plaintiff's Exhibit 7) (PUF #150)

14

72.    Thirty days had not elapsed from the time that Grissom learned of his demotion to the time the decision was made to terminate him. (Jenkins Deposition, 95:18-24, attached as Plaintiff's Exhibit 4) (PUF #86)

73.    Grissom admits that he was "disgruntled" and "pissed off" in 2009. However, he contends that he was "disgruntled" and "pissed off" because of the discriminatory way he was being treated. (Grissom Deposition, at 42:21-25, 43:1, attached as Defendants' Exhibit 2) (DUF #43 Plaintiff's Response to DUF # 43)

E.    Grissom's Age Discrimination Claim

74.    In September of 2009, Grissom filed a Charge of Discrimination with the Missouri Commission on Human Rights and the EEOC. (Charge of Discrimination, attached as Defendants' Exhibit 4; Grissom Deposition, 94:8-14, attached as Defendants' Exhibit 2) (DUF #104)

75.    Grissom failed to check retaliation as one of the causes of discrimination in the Charge of Discrimination, which has multiple boxes where a charging party may check the basis for the cause of discrimination.* (Charge of Discrimination, attached as Defendants' Exhibit 4) (DUFs ##105 & 106)

76.    At his deposition, Grissom stated that he was not aware of anybody younger than him that made mistakes in his logs that Jenkins did not complain to.[8]* (Grissom Deposition, 45:19-22, attached as Defendants' Exhibit 2) (DUF #109)

77.    Grissom believed that Jenkins was out to get older people if they complained about being treated differently on the basis of age. (Grissom Deposition, 58:25, 59:1-5, attached as Defendants' Exhibit 2) (DUF #110)

78.    At the time of Grissom's termination, he was one of the oldest employees at the Greene County Jail. (Grissom Affidavit, ¶22, attached as Plaintiff's Exhibit 1) (PUF #147)

79.    For the years 2008 and 2009, seventeen correctional officers of the Greene County Sheriff's Department were terminated or asked to resign.[9] (Arnott Affidavit, ¶24,

---

[8]Plaintiff denied DUF # 109, but the evidence cited does not support his denial.

[9]DUF #128 refers to "correctional officers." In denying this fact, plaintiff contends that there were actually eighteen "jail employees" fired during this time period. In support of his contention, Grissom points to Plaintiff's Exhibit 15. For the reasons stated later in this Order, Plaintiff's Exhibit 15 cannot be used to defeat summary judgment as it is not properly authenticated. Nevertheless, Grissom has failed to indicate whether the individual not listed was a correctional officer or some other type of jail employee. From a review of Plaintiff's Exhibit

attached as Defendants' Exhibit 6; 2008-09 Discharge Information, attached as Exhibit C to Arnott Affidavit (Defendants' Exhibit 6) (DUF #128)

80.    Of the seventeen correctional officers terminated during 2008 and 2009, ten of those individuals were under the age of 40 at the time of their termination. (Arnott Affidavit, ¶5, attached as Defendants' Exhibit 6) (DUF #129)

F.    Green County Sheriff's Office's Discipline Policy

81.    The Greene County Sheriff's Department has a formal discipline policy that applies to all of its employees. (Discipline Policy #2-21-1, attached as Plaintiff's Exhibit 10; Arnott Deposition 64:4-15, attached as Plaintiff's Exhibit 7) (PUF #33)

82.    Discipline Policy #2-21-1 provides in part:

All members of the Greene County Sheriff's Department are required to adopt and adhere to sound tactical practices, written or verbal directives, general orders or written established policy and procedures. In the event that a member shall knowingly or directly violate any directive, general order, policy or procedure, or demonstrate any degree of negligence in the performance of their expected duties, it shall be necessary for supervisory personnel to discipline their subordinates.

(Discipline Policy #2-21-1, attached as Plaintiff's Exhibit 10) (PUF #34)

83.    Discipline Policy #2-21-1 defines "misconduct" as "[a]ny violation of the Federal or State constitution, a statute, general order, published rule, or written policy or procedure." (Discipline Policy #2-21-1, attached as Plaintiff's Exhibit 10) (PUF #35)

84.    Section E, Subpart A of Discipline Policy #2-21-1 provides: "In the event that a member of the Greene County Sheriff's Office shall fail to meet the expected level of conduct, but it is not serious misconduct, as the first step in taking corrective action, all employees would be subject to Verbal Counseling." (Discipline Policy #2-21-1(E)(A), attached as Plaintiff's Exhibit 10) (PUF #36)

85.    Whenever verbal counseling takes place, it "will be documented on an Internal Memo." (Discipline Policy #2-21-1 (E)(1)(a)(3), attached as Plaintiff's Exhibit 10) (PUF #37)

86.    The "Internal Memo" must "contain a brief synopsis of the event and any other

20 (Defendant's First Supplemental Answer to Plaintiff's Second Set of Interrogatories) it appears that the employee that Grissom contends was left off the list of terminated employees was in fact an assistant food service administrator, and not a "correctional officer."

information related to the incident, the violation of expected conduct, a plan of action to remedy the said action, and will be kept by the Division Captain." (Discipline Policy #2-21-1 (E)(1)(a)(4), attached as Plaintiff's Exhibit 10) (PUF #38)

87.    Jenkins testified as his deposition that he was only aware of one Internal Memo generated relating to Grissom's performance. (Jenkins Deposition, 130:16-22, attached as Plaintiff's Exhibit 4) (PUF #55)

88.    The next level of discipline following verbal counseling and preceding termination is "Written Counseling." (Discipline Policy #2-21-1(E)(1)(b), attached as Plaintiff's Exhibit 10) (PUF #57)

89.    Written reprimands are more serious than written counseling reports. (Coonrod Deposition, 52:16-22, attached as Plaintiff's Exhibit 3) (PUF #129)

90.    Discipline Policy #2-21-1(E)(1)(b) provides:

In the event that an employee shall continue to conduct themselves in a manner that is inconsistent with the accepted practices, or established policies and procedures of this agency, yet the conduct still does not constitute serious misconduct, the next step in obtaining corrective action would be for the supervisor to conduct Written Counseling with the employee. The following measures shall be used to administer the Written Counseling.

(Discipline Policy #2-21-1(E)(1)(b), attached as Plaintiff's Exhibit 10) (PUF #58)

91.    The written counseling policy further provides that:

(1) The supervisor shall in writing request from the employee a written narrative documenting the employees' actions; (2) The employee shall return to the supervisor a written response to the request. The response shall detail the officer's actions and how the actions would be justified, or if clearly in violation of policy why it was necessary to deviate from the policy. The response should also contain the employees' plan of action to correct the violation; (3) Upon receipt of the written response, the supervisor shall review, and attach the response to the Written Employee Counseling form; (4) The supervisor shall schedule a face-to-face meeting with the employee to discuss the incident. A written plan of corrective actions should be documented on the employee counseling form; (5) The employee and supervisor shall review and sign the counseling form and forward it to the Division Captain for further disposition.

(Discipline Policy #2-21-1(E)(1)(b), attached as Plaintiff's Exhibit 10) (PUF #59)

17

92.    According to the Arnott, the policies are "a big deal." (Arnott Deposition, 72:14-17, attached as Plaintiff's Exhibit 7) (PUF #70)

93.    The Greene County Sheriff's Department policies and procedures create rights and responsibilities and are important. (Arnott Deposition, 72:18-20, attached as Plaintiff's Exhibit 7) (PUF #71)

94.    Arnott expects that where the policies say "shall" then it "will occur in all cases." (Arnott Deposition, 72:21-24, attached as Plaintiff's Exhibit 7) (PUF #72)

95.    The Greene County Sheriff's Department did not follow the written counseling procedures when they disciplined Grissom. (Canter Deposition, 83:4-25, 84:1-25, 85:1-8, attached as Plaintiff's Exhibit 11; Arnott Deposition, 77:1-13, attached as Plaintiff's Exhibit 7; Grissom Affidavit, ¶18, attached as Plaintiff's Exhibit 1) (PUF #60)

96.    Jenkins did not follow the Greene County Sheriff's Department discipline policy regarding written counseling because he did not give Grissom a written request for a written narrative documenting the employee's actions. (Discipline Policy #2-21-1(E)(1)(b)(1), attached as Plaintiff's Exhibit 10; Jenkins Deposition, 134:5-23, attached as Plaintiff's Exhibit 4) (PUF #89)

97.    Grissom did not receive any notice or an opportunity to be heard before he was demoted him and placed on probation. (Spaulding Deposition, 78:7-12, attached as Plaintiff's Exhibit 8) (PUF #40)

98.    The Greene County Sheriff's Department did not require Grissom to submit a written statement about his actions. (Discipline Policy #2-21-1(E)(1)(b)(1), attached as Plaintiff's Exhibit 10; Jenkins Deposition, 134:18-25, 135:1-13, attached as Plaintiff's Exhibit 4) (PUF #74)

99.    There was nothing prepared by Grissom containing anything resembling a narrative or a plan of action that was attached to the written counseling form. (Grissom Affidavit, ¶14, attached as Plaintiff's Exhibit 1; Spaulding Deposition, 85:10-19, 86:6-16, attached as Plaintiff's Exhibit 8) (PUF #75)

F.    Other Misconduct/Policy Violations by Employees

100.    Sergeant Smith, another employee at the Greene County Jail, was disciplined for slapping an inmate. (Spaulding Deposition, 94:9-25, 95:1-12, attached as Plaintiff's Exhibit 8) (PUF #42)

101.    Sergeant Smith's slapping an inmate was considered serious misconduct. (Spaulding Deposition, 96:16-20, attached as Plaintiff's Exhibit 8) (PUF #43)

102. Sergeant Smith's discipline for slapping the inmate was a written reprimand and 90 days probation. (Spaulding, Deposition, 97:11-15, attached as Plaintiff's Exhibit 8 (PUF #44)

103. Prior to the slapping incident, Sergeant Smith had received a written reprimand for inappropriate behavior.[10] (Spaulding Deposition, 100:7-22, attached as Plaintiff's Exhibit 8) (PUF #45)

104. Sergeant Smith is younger than Stanley Grissom. (Grissom Affidavit, ¶15, attached as Plaintiff's Exhibit 1; Date of Birth listings, attached as Plaintiff's Exhibit 19) (PUF #46)

105. The May 10, 2009 Counseling Report, which was written by Sergeant Canter and submitted by Jenkins, contains typographical errors. (May 10, 2009 Counseling Report, attached as Plaintiff's Exhibit 5; Jenkins Deposition, 53:15-17, 67:7-13, attached as Plaintiff's Exhibit 4) (PUF #64)

106. Sergeant Canter received no discipline for the errors he made in the written counseling report.[11] (PUF #145)

107. Sergeant Canter is younger than Grissom. (Canter Deposition, 125:16-18, attached as Plaintiff's Exhibit 11) (PUF #67)

108. Sergeant Canter has made errors in the meal tray count. (Canter Deposition, 105:21-22, attached as Plaintiff's Exhibit 11) (PUF #68)

109. Sergeant Canter was not fired, demoted, suspended, or put on probation for making a mistake in the meal tray count. (Canter Deposition, 105:22-25, 106:1-5, attached as Plaintiff's Exhibit 11) (PUF #69)

110. Major Spaulding was not disciplined for misspelling words in his June 16, 2009 memorandum to Arnott. (Defendant's First Supplemental Answers to Plaintiff's Second Set of Interrogatories to Arnott, ##3, 4, 7, 8, 11-14 (and corresponding attached documents), attached as Plaintiff's Exhibit 20) (PUF #87)

---

[10]Plaintiff contended that Sergeant Smith's written reprimand for inappropriate behavior was two months prior to his disciple for slapping an inmate. The deposition testimony of Sergeant Spaulding cited by plaintiff stated that he did not recall the dates and that it might have been longer than two or three months between these incidents. (Pl. Ex. 8 at 100 lines 20-22) Later, Sergeant Spaulding indicated in referring to Smith's incident reports that "the two incidents happened over a long period of time, several years." (Pl. Ex. 8 at 101 lines 8-10)

[11]This fact has been admitted by defendants, however, the Court notes that the evidence cited by Grissom in support of the factual statement does not support the factual statement.

111.   Jenkins made errors in the reports he prepared regarding Grissom's alleged misconduct. (Coonrod Deposition, 81:8-17, attached as Plaintiff's Exhibit 3) (PUF #132)

112.   Jenkins was not disciplined for the errors in the reports he prepared regarding Grissom's alleged misconduct.[12] (PUF #133)

113.   Grissom locked down the B-Pod early on January 28, 2009, because the inmates were making vulgar and obscene comments to the jail nurses and other jail staff and individual discipline was ineffective to stop the inmates from acting out.* (Grissom Affidavit, ¶19; attached as Plaintiff's Exhibit 1; January 28, 2009 Memorandum from Officer Wade to Clayton, Coonrod, and Lieutenant May, attached as Plaintiff's Exhibit 22) (PUF #90 & Defendants' Response to PUF #90)

114.   B-Pod had been locked down early on January 23, 2009, by Grissom, January 24, 2009 by Officer Haskins, January 25, 2009 by Officers Carr and Gostiac, January 26, 2009 by Corporal Wilcox, and January 27, 2009 by Grissom and Officer Wade. (January 28, 2009 Memorandum from Officer Wade to Clayton, Coonrod, and Lieutenant May, attached as Plaintiff's Exhibit 22) (PUF #91)

115.   Officer Haskins is younger than Grissom. (Canter Deposition, 37:10-13, attached as Plaintiff's Exhibit 11) (PUF #92)

116.   Officer Carr is younger than Grissom.[13]  (PUF #94)

117.   Officer Wilcox is younger than Grissom.[14] (PUF #96)

118.   Officer Wade is younger than Grissom. (Canter Deposition, 37:18-19, attached as Plaintiff's Exhibit 11) (PUF #98)

119.   Officer Gostiac is younger than Grissom. (Canter Deposition, 37:16-17, attached as Plaintiff's Exhibit 11) (PUF #100)

G.     Grissom's Performance Reviews Prior to 2009

---

[12]This fact has been admitted by defendants, however, the Court notes that the evidence cited by Grissom does not support the factual statement.

[13]This fact has been admitted by defendants, however, the Court notes that the evidence cited by Grissom does not support the factual statement.

[14]This fact has been admitted by defendants, however, the Court notes that the evidence cited by Grissom does not support the factual statement and is self-serving.

120.    While Jenkins supervised Grissom, he signed off on Grissom's annual reviews. (Jenkins Deposition, 13:20-22, attached as Plaintiff's Exhibit 4) (PUF #76)

121.    All of Grissom's annual performance reviews were very good before he was counseled in March 2009. (Jenkins Deposition, 15:1-5, attached as Plaintiff's Exhibit 4) (PUF #77)

122.    "Very good" annual performance reviews are above average and mean the employee is doing more than expected. (Jenkins Deposition, 14:20-22, attached as Plaintiff's Exhibit 4) (PUF #78)

123.    Up through his last review, Grissom knew how to do his job, did not receive any negative feedback, knew what was expected, and knew how to fit into the jail environment. (Jenkins Deposition, 15:6-19, attached as Plaintiff's Exhibit 4; Grissom's 2008 Employee Evaluation, attached as Plaintiff's Exhibit 21) (PUF #79)

124.    There are no negative employee reviews in Grissom's personnel file between 2006 and May 2009. (Coonrod Deposition, 26:6-7, attached as Plaintiff's Exhibit 3) (PUF #109 & Defendants' Response to PUF #109)

125.    Grissom was not demoted between 2006 and May 2009.[15] (PUF #108)

126.    There are no counseling reports in Grissom's personnel file between 2006 and May 2009. (Spaulding Deposition, 103:13-17, attached as Plaintiff's Exhibit 8; Coonrod Deposition, 26:8-9, attached as Plaintiff's Exhibit 3) (PUF #48 & 110 & Defendants' Response to PUF #110)

127.    There is no evidence of reprimands in Grissom's personnel file between 2006 and May 2009. (Spaulding Deposition, 103:9-12, attached as Plaintiff's Exhibit 8; Coonrod Deposition, 26:10-11, attached as Plaintiff's Exhibit 3) (PUFs ##47 & 111 & Defendants' Response to PUF #111)

128.    There are no investigative reports in Grissom's personnel file between 2006 and January 4, 2009. (Coonrod Deposition, 26:14-15, attached as Plaintiff's Exhibit 3) (PUF #112 & Defendant's Response to PUF #112)

129.    There are no notations in Grissom's personnel file that he showed up late for work between 2006 and May 2009. (Coonrod Deposition, 26:16-18, attached as Plaintiff's Exhibit 3) (PUF #113)

130.    There are no notations in Grissom's personnel file that he was a bad speller between

_____

[15]This fact has been admitted by defendants, however, the Court notes that the evidence cited by Grissom does not support the factual statement.

2006 and May 2009. (Coonrod Deposition, 26:19-20, attached as Plaintiff's Exhibit 3) (PUF #114)

131. There are no notations in Grissom's personnel file between 2006 and May 2009 that Plaintiff displayed poor leadership qualities. (Coonrod Deposition, 26:21-23, attached as Plaintiff's Exhibit 3) (PUF #115)

132. There are no notations in Grissom's personnel file between 2006 and May 2009 that Grissom was a bad influence or spread rumors. (Coonrod Deposition, 26:24-25, 27:1, attached as Plaintiff's Exhibit 3) (PUF #116)

133. Grissom's 2006 Employee Evaluation shows that his overall performance was marked as very good. (Coonrod Deposition, 28:17-20, attached as Plaintiff's Exhibit 3; Grissom's 2006 Employee Evaluation, attached as Plaintiff's Exhibit 23) (PUF #117 & Defendants' Response to PUF #117)

134. A memorandum included with Plaintiff's 2008 performance review commended Plaintiff for working as housing sergeant with great results was written and signed by Jenkins. (Grissom's 2008 Employee Evaluation, attached as Plaintiff's Exhibit 21) (PUF #118)

135. The memorandum further stated that Grissom "performed background checks for new hire employees and as a field training officer after hiring. He has used 3 days of sick leave for this year. He is punctual for duty arriving early for briefing. He assures all staff gets relief when assigned to escort." (Grissom's 2008 Employee Evaluation, attached as Plaintiff's Exhibit 21) (PUF #119)

136. Grissom's 2007 Employee Evaluation shows that his overall performance was marked as very good. (Grissom's 2007 Employee Evaluation, attached as Plaintiff's Exhibit 25) (PUF #120 & Defendants' Response to PUF #120)

137. Under the "Supervisor's Comments" section of Grissom's 2007 Employee Evaluation, Jenkins noted that "Corporal Grissom has performed as Active Housing Sgt., FTO, as well as assisting with new employee background investigations with positive results. He has improved his use of lead time, since assignment to Shift C. He is punctual for duty and accepts supervisor responsibilities with positive results. He is an asset to Shift C, and this department." (Grissom's 2007 Employee Evaluation, attached as Plaintiff's Exhibit 25) (PUF #121 & Defendants' Response to PUF #121)

138. Grissom's 2004 Employee Evaluation shows that his overall performance was marked as very good. (Grissom's 2004 Employee Evaluation, attached as Plaintiff's Exhibit 24) (PUF #123 & Defendants' Response to PUF #123)

139. Under the "Supervisor's Comments" section of Grissom's 2004 Employee

22

Evaluation, his supervisor wrote: "Officer Grissom worked for my shifts this entire period. Grissom has performed several post assignments including pod officer, escort and master control. Grissom works well with other officers as well as inmates. His overall performance has been very good." (Grissom's 2004 Employee Evaluation, attached as Plaintiff's Exhibit 24) (PUF #124)

140. According to Jeff Coonrod, Grissom's review status for 2002 was very good. (Coonrod Deposition, 33:13-18, attached as Plaintiff's Exhibit 3) (PUF #125)

## IV.    RESOLUTION OF EVIDENTIARY ISSUES

Fed. R. Civ. P. 56(c)(2), concerning procedures for summary judgment provides:

**(2)    Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

In deciding a summary judgment motion, the Court must determine the presence or absence of a material issue of fact on the basis of evidence that would be admissible at trial. Guinan v. Boehringer Ingelheim Vetmedica Inc., 803 F.Supp.2d 984, 991-92 (N.D. Iowa 2011); Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (W.D. Mo. 1993). Defendants object to a number of plaintiff's allegedly uncontroverted facts and the accompanying documents. Specifically, defendants object to photographs for which they claim no foundation has been laid, a summary of data derived from interrogatory responses and statistical analysis offered without the benefit of expert testimony. Before addressing the substantive legal issues raised by the motion for summary judgment, the Court will consider the admissibility of the evidence offered in these areas.

A.    Series of Photographs, Plaintiff's Exhibit 13

Plaintiff's Uncontroverted Facts #11 through #22 relate to Plaintiff's Exhibit 13, which is a set of 21 photographs. Defendants object to the photographs arguing that plaintiff has failed to lay the proper foundation for the photographs. The Eighth Circuit has clearly stated that:

'To be considered on summary judgment, documents must be authenticated by and

23

attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed.R.Civ.P. 56(e). Documents which do not meet those requirements cannot be considered.'

Shanklin v. Fitzgerald, 397 F.3d 596, 602 (8th Cir. 2005)(quoting Stuart v. Gen. Motors Corp., 217 F.3d 621, 635-36 n.20 (8th Cir.2000)). Grissom has failed to provide any information regarding who took the photographs, when the photographs were taken, who the photographs depict, the ages of those individuals in the photographs, the circumstances surrounding the photographs (i.e. whether the individuals were at the end of a shift or on break) and whether the photographs are a true representation of what occurred[16]. Likewise, the Court has no information as to whom the individuals in the photographs reported to and whether the photographs were taken prior or after James Arnott was sworn in as Sheriff in December of 2008. Grissom's failure to authenticate the photographs precludes this Court from considering the photographs as evidence in this matter.

B.   Summary of Employment Data from Defendant's Responses to Second Interrogatories and Requests for Production, Plaintiff's Exhibit 15

Defendants object to Plaintiff's Exhibit 15 entitled "Summary of Employment Data from Defendant's Responses to Second Interrogatories and Requests for Production" because it lacks authentication and is not a true and accurate summary of the evidence. Rule 1006 of the Federal Rules of Evidence permits the admission of summaries, charts or calculations where the evidence is so voluminous that it "cannot conveniently be examined in court ...." Fed. R. Evid. 1006. The decision to admit summaries is left to the discretion of the trial court. United States v. Green, 428 F.3d 1131, 1134 (8th Cir. 2005). Such summaries, however, "must be an *accurate* summarization of the underlying materials involved." White Indus., Inc. v. Cessna Aircraft Co., 611 F. Supp. 1049,

---

[16]Fed. R. Civ. P. 901(a) requires that the proponent of the evidence produce sufficient evidence to support the finding that the document is what it purports to be.

1070 (W.D. Mo. 1985).

Grissom has included an affidavit by a paralegal in plaintiff's attorney's law firm that prepared Plaintiff's Exhibit 15. (Plaintiff's Exhibit 27)  The affidavit states in part:

2.  I read Defendants' responses to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott and Defendants' responses to Plaintiff's Second Request for Production of Documents to Defendants including all of Defendants' supplemental responses.

3.  I read every document produced by Defendants in connection with Plaintiff's Second Set of Interrogatories to Defendant, James Arnott and Plaintiff's Second Request for Production of Documents to Defendants including all documents produced as part of Defendants' supplemental responses.

4.  From the documents produced by Defendants and Defendants' responses to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott and Plaintiff's Second Request for Production of Documents to Defendants, I created the document attached to Plaintiff's Suggestions in Opposition to Defendants' Motion for Summary Judgment as Exhibit 15.

5.  Exhibit 15 is a true, accurate, and complete summary of all the information contained in Defendants responses to Plaintiff's Second Set of Interrogatories to Defendant, James Arnott and Plaintiff's Second Request for Production of Documents to Defendant.

(Plaintiff's Exhibit 27)

The affidavit that purports to authenticate the summary, does not in fact authenticate the document.  The Court is provided with no information as to what the employment data summarizes (such as all employees of the jail versus only correctional officers) or what dates the employment data is from (i.e. all of 2009 versus 2008 to 2009).  Further, the Court was not provided with a key to understanding the chart (for example under two of the columns the answers appear as either "no" or "1" but does not indicate what the "1" means).  Without such information, the summary has not been properly authenticated and is of little use to the Court.

Furthermore, this Court has tried to find certain individuals listed in Plaintiff's Exhibit 22

(Officer Haskins, Officer Gostyuk, and Corporal Wilcox), but has failed to locate those individuals on the employment data summary. Therefore, defendants' claim that the evidence is inaccurate is accorded some weight. Based on the foregoing, this Court finds that Plaintiff's Exhibit 15 and Plaintiff's Uncontroverted Facts relying on Plaintiff's Exhibit 15 cannot be used to defeat summary judgment.

      C.      <u>Standard Deviation and Z Score Calculation, Plaintiff's Exhibit 26</u>

Defendants next object to Plaintiff's Exhibit 26, entitled "Standard Deviation and Z Score Calculation," on the basis that there is no foundation for the exhibit and it appears to require expert testimony, yet no expert has been disclosed. Like Plaintiff's Exhibits 13 and 15, Grissom has failed to authenticate Exhibit 26. There is no affidavit describing who compiled the information, how the information was compiled, the data set analyzed, or what variables were taken into account. Thus, the failure to authenticate the document renders this information useless to this Court.

Additionally, this Court is troubled by Grissom's attempt to submit statistical evidence and calculations without the assistance of an expert. The United States Supreme Court has cautioned that "statistics are not irrefutable; they come in infinite variety and, like any other kind of evidence, they may be rebutted. In short, their usefulness depends on all of the surrounding facts and circumstances." <u>Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 340, 97 S.Ct. 1843, 1856-57, 52 L.Ed.2d 396 (1977). The Ninth Circuit Court of Appeals has noted that "[a]ccurate, demographically adjusted statistics are, of course, relevant to a finding of discrimination. Their use 'is conditioned by the existence of proper supportive facts and the absence of variables which would undermine the reasonableness of the inference of discrimination which is drawn.'" <u>Casillas v. United States Navy</u>, 735 F.2d 338, 345 (9th Cir. 1984) (citations omitted) (quoting <u>White v. City of San</u>

<u>Diego</u>, 605 F.2d 455, 460 (9th Cir. 1979)).

Grissom, citing <u>Ottaviani v. State Univ. of N.Y at New Paltz</u>, 875 F.2d 365, 371 (2nd Cir. 1989), would have this Court believe that there is a standard statistical method that can be utilized to determine whether discrimination has occurred.[17] The United States Supreme Court has rejected a cut and dry approach when it comes to statistical methods in employment discrimination cases, stating that:

> We have emphasized the useful role that statistical methods can have in Title VII cases, but we have not suggested that any particular number of "standard deviations" can determine whether a plaintiff has made out a prima facie case in the complex area of employment discrimination.
>
> Nor has a consensus developed around any alternative mathematical standard. Instead, courts appear generally to have judged the "significance" or "substantiality" of numerical disparities on a case-by-case basis. At least at this stage of the law's development, we believe that such a case-by-case approach properly reflects our recognition that statistics "come in infinite variety and ... their usefulness depends on all of the surrounding facts and circumstances."

<u>Watson v. Fort Worth Bank and Trust</u>, 487 U.S. 977, 995, 108 S.Ct. 2777, 2789, 101 L.Ed.2d 827 n.3 (1988)(citations omitted) (superseded by statute on other grounds).

It is clear from the above mentioned cases that statistics may play a role in employment discrimination cases; however, that role must be relevant to the individual case. In the instant case, it appears the Grissom has failed to take into account different variables and has instead relied on

---

[17]This Court notes that in support of its contention that "courts have p[er]formed the calculation without the use of expert testimony," plaintiff cites <u>Truesdale v. Sabourin</u>, 2006 WL 118370, *12 n.6 (S.D. N.Y. January 17, 2006). <u>Truesdale</u>, however, involved a claim of discrimination in the selection of a jury (commonly referred to as a <u>Batson</u> claim) where the data set is clearly defined. Furthermore, and more troubling for this Court, is that plaintiff failed to note that <u>Truesdale</u> was a report and recommendation that was later rejected by the district court. <u>Truesdale v. Sabourin</u>, 427 F.Supp.2d 451 (S.D.N.Y. 2006). The district court's decision notes that the report and recommendation utilized a standard deviation calculation but does not then go on to utilize a standard deviation calculation. <u>Truesdale</u>, 427 F.Supp.2d at 461. Instead, the court relied on raw comparisons of the data. <u>Truesdale</u>, 427 F.Supp.2d at 461.

Case 6:09-cv-03244-SWH   Document 106   Filed 04/16/12   Page 27 of 46

raw data that may or may not be useful in determining whether Grissom was discriminated against on the basis of age.

For example, to the extent that Plaintiff's Exhibit 26 relies on the data found in Plaintiff's Exhibit 15, it would appear that at least one licensed practical nurse is included in the data found in Plaintiff's Exhibit 15.[18] (Compare Defendants' First Supplemental Answers to Plaintiff's Second Set of Interrogatories to Arnott, Bates Stamp 1655, attached as Plaintiff's Exhibit 20; Summary of Employment Data from Defendants' Responses to Second Interrogatories and Requests for Production, attached as Plaintiff's Exhibit 15, at 1)  A licensed practical nurse is not similarly situated to a corrections officer, and Grissom has shown no reason why a licensed practical nurse is relevant when looking at the employment statistics of the Greene County Sheriff's Department. See Bogren v. Minnesota, 236 F.3d 399, 404 (8th Cir. 2000) (noting that relevant comparison in discrimination cases is to those individuals who are similarly situated to plaintiff).  Additionally, age may be a relevant factor in the type of work performed.  Thus, comparing, as Grissom has, the age of the average worker in the United States to the age of correctional officers at the Greene County Sheriff's Department, might not be a reliable indicator of whether discrimination on the basis of age has occurred.  (See doc. #103 at 55-58)  Therefore, the failure to account for such variables leads this Court to question the relevance of the statistical information.

Grissom's description of the standard deviation calculation is similarly troubling.  In addition to citing cases that have utilized a standard deviation calculation, Grissom has supported his factual

_____

[18]As noted earlier, Grissom has failed to include an affidavit explaining who performed the calculations found on Plaintiff's Exhibit 26 and what data was used in making the calculations.  The document itself indicates that the calculation was from Defendant's Response to Plaintiff's Second Interrogatories and Request for Production, which leads this Court to believe that the data set being used is the data found in Plaintiff's Exhibit 15.

28

statements on standard deviation by citing to a Wikipedia article on standard deviation. (See PUF ##157, 161, 164 & 169) Wikipedia is not a reliable source as anyone – even someone with little knowledge of the subject – can edit an entry. See R. Jason Richards, Courting Wikipedia, 44-APR Trial 62 (Apr. 2008) (discussing the lamentable use of Wikipedia by the bar). Grissom has provided no other information describing standard deviation calculations and how to perform them, other than citations to other cases which are relevant only for that particular case.

For these reasons, Plaintiff's Exhibit 26, the factual statements relying on Plaintiff's Exhibit 26, and the corresponding argument section of plaintiff's brief, cannot be used to defeat summary judgment.

D.    Grissom Affidavit, Plaintiff's Exhibit 1

Defendants object to portions of Grissom's affidavit (Plaintiff's Exhibit 1) for various reasons. First, defendants argue that the statements contained in the affidavit would not be admissible at trial because they are either unsupported statements lacking personal knowledge,[19] are purely speculative, lack foundation or are hearsay. (Doc. #105 at 50) Affidavits that are self-serving, inadmissability hearsay "cannot defeat a motion for summary judgment." Cronquist v. City of Minneapolis, 237 F.3d 920, 927 (8th Cir. 2001). See also Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005) (noting that self-serving affidavits are not enough to overcome a motion for summary judgment). Other district courts in the Eighth Circuit have noted that "[a]ny defects [to

_____

[19]Moreover, "[a]ffidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." El Deeb v. University of Minn., 60 F.3d 423, 428 (8th Cir.1995). An affirmation on "information and belief is insufficient." Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1367 (8th Cir.1983).

an affidavit] are best addressed by reducing the weight accorded to the affidavit and not by striking the document in its entirety." Pekin Ins. Co. v. Tysa, Inc., 2006 WL 3827232, *4 (S.D. Iowa December 27, 2006). This Court agrees that the best way to handle such matters on summary judgment is to reduce the weight accorded to the affidavit, and will do so. This applies both to Grissom's affidavit and the affidavits of Arnott, Jenkins, Coonrod and Clayton which were submitted by defendants, all of which contain self-serving statements that cannot be used to either grant or defeat summary judgment.

Defendants also argue that portions of the affidavit contradict portions of his complaint in that he alleges in his affidavit that age was the exclusive reason for his discharge, yet in his Second Amended Complaint he states that his whistle blowing was the exclusive reason for his discharge. For the reasons set out more fully below, this Court finds that Grissom may plead in the alternative. Therefore, such inconsistencies will not cause Grissom's affidavit to be excluded.

## V. DISCUSSION

### A. Individual Liability Under the ADEA

Defendants first argue that they cannot be held individually liable under the ADEA. (Doc. #52 at 28) While the Eighth Circuit has not directly ruled on whether the ADEA permits individual liability, it has found that "supervisors may not be held individually liable under Title VII." Bonomolo-Hagen v. Clay Central-Everly Cmty. Sch. Dist., 121 F.3d 446, 447 (8th Cir. 1997). Due to the similarities in the definition of employer under various employment discrimination statutes and the ADEA, other courts in this district have found that the ADEA does not permit individual liability. Kelso v. Munter, 2010 WL 5092712, *2 (W.D. Mo. December 7, 2010); Widmar v. City of Kansas City, Mo., 2006 WL 743171, *1 (W.D. Mo.March 20, 2006). See also Kelleher v.

<u>Aerospace Cmty. Credit Union</u>, 927 F.Supp. 361, 362-63 (E.D. Mo. 1996) (citing various opinions finding that individual liability is not permitted under the ADEA).  Thus, this Court finds that the individual defendants cannot be sued in their individual capacities.

Nevertheless, in Grissom's Second Amended Complaint, Grissom stated he was suing each of the defendants in both their individual and official capacities. (Doc. #23, ¶¶6, 7, 8, 10)  The Eighth Circuit has approved of claims against a supervisor in their official capacity.  <u>Bales v. Wal-Mart Stores, Inc.</u>, 143 F.3d 1103, 1111 (8th Cir. 1998) (citing <u>Gary v. Long</u>, 59 F.3d 1391, 1399 (D.C. Cir. 1995), which held that the "employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII.").  Therefore, Grissom's claims against defendants in their official capacities are proper.

      B.      <u>Age as the Exclusive Reason for Grissom's Termination</u>

Defendants argue that Grissom has admitted in the pleadings that his whistle blowing was the exclusive cause of his termination. (Doc. #52 at 29)  Therefore, defendants argue that Grissom cannot show that age was the "but-for" reason for his termination.  <u>See</u> <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S.167, 129 S.Ct. 2343, 2350, 174 L.Ed.2d 119 (2009) (holding that the ADEA does not allow for a mixed-motive age discrimination claim).  Grissom argues that defendants' assertion is against the Federal Rules of Civil Procedure's scheme of allowing pleadings in the alternative. (Doc. #103 at 80-83)

Fed. R. Civ. P. 8(d)(2) of the Federal Rules of Civil Procedure states that "a party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Additionally, Fed. R. Civ. P. 8(d)(3) permits inconsistent claims.

The interplay between these two subsections has led courts to find that the pleadings should not be construed "'as an admission against another alternative or inconsistent pleading in the same case.'" Southern Wine and Spirits v. Mountain Valley Spring Co., 2008 WL 2186176, *2 (W.D. Ark. May 23, 2008) (quoting McCalden v. Cal. Library Ass'n, 955 F.2d 1214, 1219 (9th Cir. 1992)). Furthermore, a plaintiff's complaint alleging a cause of action under the ADEA need not allege that age was the but-for reason for his termination. See Renfrow v. Sanborn Map Co., 2011 WL 1102834 (E.D. Mo. March 23, 2011) (noting that decision in Gross concerned evidentiary standard needed at trial and was not about sufficiency of complaint); see also DeAngelo v. DentalEZ, Inc., 738 F.Supp.2d 572, 578-79 (E.D. Pa. 2010) (finding that plaintiff may pursue alternative theories of discrimination – including age discrimination – through summary judgment stage, but must decide prior to conclusion of trial which theory to base claim upon); but see Culver v. Birmingham Bd. of Educ., 646 F.Supp.2d 1272 (N.D. Ala. 2009) (finding that it is no longer permissible to allege alternative theories in ADEA cases. Based on the forgoing, this Court finds that plaintiff's discussion of his whistle blowing claim in his complaint cannot be used to show that age was not the but-for reason for his termination.

     C.    <u>Sufficiency of Evidence of Age Discrimination</u>

The ADEA prohibits employers from discharging, failing or refusing to hire or "otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In his complaint, Grissom claims that younger jailers were routinely promoted or advanced. (Doc. #23, ¶40) Grissom then states that he was discriminated against "with respect to the compensation, terms, conditions, and privileges of his employment because of his age." (Doc. #23, ¶42) Based on the complaint, it

would thus appear that Grissom's claim of discrimination are based on the failure to promote. Defendants' brief in support of their motion for summary judgment, however, appears to concentrate on Grissom's demotion and eventual discharge. (Doc. #52 at 30-35) In his response, Grissom appears to focus on his demotion, discharge and the failure to promote. (Doc. #103 at 64-79) Thus, in determining whether summary judgment is warranted, this Court will determine if there is a genuine dispute as to any material fact with regard to whether Grissom's age was the reason for his failure to be promoted, his demotion or his discharge.

### 1. Direct Evidence of Age Discrimination

Proof of age discrimination can take two forms: direct and indirect. Direct evidence is "evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004) (quoting Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997)). Direct evidence often consists of "remarks by decision makers that reflect, without inference, a discriminatory bias." McCullough v. Univ. of Arkansas for Med. Scis., 559 F.3d 855, 861 (8th Cir. 2009). Grissom asserts that there is direct evidence in this case and that such evidence consists of statistical evidence and anecdotal evidence.[20] (Doc. #96 at 98-114) With regard to the statistical evidence, Grissom relies on the statistical evidence found in Plaintiff's Exhibits 15 and 26. However, as discussed earlier, Plaintiff's Exhibit 15 and 26 are not properly before this Court. To the extent that there is some remaining statistical evidence, that evidence does not rise to the level of direct evidence. Thus, any remaining statistical evidence will be considered as indirect evidence.

---

[20]This decision should not be read to support the notion that statistical and anecdotal evidence constitutes direct evidence.

Case 6:09-cv-03244-SWH   Document 106   Filed 04/16/12   Page 33 of 46

Similarly, in arguing that there is anecdotal evidence of discrimination, Grissom points to the photographs found in Plaintiff's Exhibit 13, which are not properly before this Court. Other anecdotal evidence includes evidence of misconduct by a younger sergeant who slapped an inmate, for which he received a written reprimand and 90 days of probation. (Undisputed Facts ##100-104, *supra*) Additionally, there was evidence that another sergeant, younger than Grissom, had typographical and spelling errors in his reports and made errors in the meal tray counts. (Undisputed Facts ##107-109, *supra*) Grissom also contends that the May 10, 2009 Counseling Report was also based on his locking down the B-Pod early on January 27, 2009.[21] (Doc. #103 at 61) The anecdotal evidence cited as direct evidence, however, does not provide a direct link between Grissom's age and the failure to promote or to his demotion and discharge. Therefore, such anecdotal evidence will be considered as indirect evidence.

2.    Indirect Evidence of Age Discrimination

In cases where there is no direct proof of age discrimination, courts utilize the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under such an analysis, plaintiff has the burden of establishing a *prima facie* case of discrimination. Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 515 (8th Cir. 2011). To establish a *prima facie* case of discrimination, plaintiff must show 1) that he was at least 40 years old; 2) that he suffered an adverse employment action; 3) he was meeting the applicable job qualifications; and 4) "there is some additional evidence that age was a factor in the employer's

---

[21]Neither, the May 10, 2009 Counseling Report nor Grissom's 2009 Performance Log mention him locking down B-Pod early on January 27, 2009. (Grissom's 2009 Performance Log, attached as Plaintiff's Exhibit 2; May 10, 2009 Counseling Report, attached as Plaintiff's Exhibit 5) Therefore, it does not appear that his demotion was based in any part upon his actions on January 27, 2009.

34

[adverse employment decision]." Rahlf v. Mo-Tech Corp, Inc, 642 F.3d 633, 637 (8th Cir. 2011). If plaintiff is successful in establishing a *prima facie* case, the burden of production moves to the employer to show that it had a legitimate non-discriminatory basis for the adverse employment action. Tusing, 639 F.3d at 515. If the employer meets its burden, the burden of production shifts back to plaintiff to show that the employer's stated reasons are pretextual. Tusing, 639 F.3d at 515.

a. Grissom's *Prima Facie* Case

With regard to the first two elements of the *prima facie* case, it is uncontested that Grissom was at least 40 years old and that he suffered an adverse employment action. As to the third element, defendants contend that Grissom has not shown that he was meeting the applicable job qualifications. (Doc. #52 at 32-34)

Currently, there is a conflict within the Eighth Circuit as to the requisite showing needed in the *prima facie* case to show that the plaintiff was meeting the reasonable expectations of his employer at the time of the adverse employment action. See Haigh v. Gelita USA, Inc., 632 F.3d 464, 469 (8th Cir. 2011) (noting the conflict but not resolving the conflict). In Erenberg v. Methodist Hosp., 357 F.3d 787 (8th Cir. 2004), the Eighth Circuit found that the plaintiff had not met the reasonable expectations of her employer where the employer produced evidence of deficiencies in the employee's work performance and such deficiencies were communicated to the employee. Id. at 793.

In McGinnis v. Union Pac. R.R., 496 F.3d 868 (8th Cir. 2007), however, the Eighth Circuit, without reference to Erenberg, rejected such a higher standard and instead found plaintiff need only show "'that he possesses the basic skills necessary for performance of the job,' not that he was doing it satisfactorily." McGinnis v. Union Pac. R.R., 496 F.3d 868, 874 n.2 (8th Cir. 2007) (quoting

Slattery v. Swinn Reinsurance Am. Corp., 248 F.3d 87, 82 (2nd Cir. 2001)).

The Eighth Circuit in Haigh found the reasoning in McGinnis "more sound ... because the plaintiff should not be tasked with anticipating and disproving his employer's reasons for termination during his *prima facie* case." Haigh, 632 F.3d at 470. The Court in Haigh did not resolve the conflict and instead determined that even if plaintiff had met his burden during the *prima facie* case, plaintiff had failed to show that the employer's articulated reasons for termination were pretextual. Haigh, 632 F.3d at 470. The Haigh Court, thus, utilized the evidence of plaintiff's poor work performance as evidence of the employer's legitimate, nondiscriminatory reason for the plaintiff's termination. Haigh, 632 F.3d at 470. Like the court in Haigh, this Court will assume that Grissom has met the qualification prong and will, thus, review evidence of Grissom's work performance as part of defendants' claim that there were legitimate, nondiscriminatory reasons for Grissom's termination.

In order to establish his *prima facie* case, Grissom must still show that his age factored into defendants' failure to promote Grissom, and their decision to demote and ultimately terminate him. With regard to the failure to promote, there is a complete lack of evidence. Grissom has not identified any promotion for which he applied. Grissom has also failed to present any evidence with regard to other employees, younger employees, who he alleges were promoted. The only evidence Grissom advanced with regard to younger employees and promotion is a reference to younger employees routinely being permitted to train in booking and release. That factual statement was not included in the Undisputed Facts, *supra*, because the deposition testimony relied on to support the factual statement did not in fact support the statement. The deposition testimony was from one individual who was able to train in booking and release and who felt that the training helped him get

36

promoted. (Canter Deposition, 128: 16–25; 129:1-8, attached as Plaintiff's Exhibit 11) The testimony does not support the statement that younger employees were *routinely* permitted to train in booking and release. It only supports the proposition that one employee who was younger than Grissom was allowed to train in booking and release.

Additionally, Grissom relied on his own self-serving affidavit to support the fact. However, self-serving affidavits cannot be used to overcome summary judgment. <u>Frevert v. Ford Motor Co.</u>, 614 F.3d 466, 473-74 (8th Cir. 2010). Even if the factual statement was included in the Undisputed Facts, Grissom has failed to show how training in booking and release was a prerequisite for a promotion. No evidence has been submitted regarding either the Greene County Sheriff's Department's policy on promotions or the job qualifications of the next level of employment. Grissom has provided no other evidence that age played a role in his failure to be promoted. Therefore, Grissom has failed to establish a *prima facie* case of age discrimination in failing to promote him.

With regard to discipline and demotion,[22] the only discussion that other younger employees were not disciplined or demoted is found in the statistical and anecdotal portions of Grissom's brief. Grissom primarily relies on the statistical information that the Court has determined is not properly before it. Nevertheless, in reviewing the evidence properly submitted by Grissom, the Court has determined that between January 1, 2008 to the present, only two other individuals were disciplined. (Defendant's First Supplemental Answers to Plaintiff's Second Set of Interrogatories to Arnott, ##11 & 12 (and corresponding attached documents), attached as Plaintiff's Exhibit 12) Both were younger than Grissom. The record notes that one employee received a demotion, but is silent as to

---

[22]For purposes of this Order, the Court will treat discipline and demotion as one in the same.

Case 6:09-cv-03244-SWH   Document 106   Filed 04/16/12   Page 37 of 46

what discipline the other employee faced. There is no information as to the position of each employee or the reason for the discipline.

Grissom also points to anecdotal evidence that Sergeant Canter, a younger employee, made typographical and spelling errors on reports and made errors in conducting the tray count at meal time and was not disciplined. (Doc. #103 at 61-62; Undisputed Facts ##105-109, *supra*) Additionally, Grissom argues that Sergeant Smith, a younger employee, hit a handcuffed inmate in the face but was not demoted. (Doc. #103 at 58; Undisputed Facts ##100-104, *supra*) It is undisputed that the Greene County Sheriff's Department disciplined Sergeant Smith after he hit a handcuffed inmate in the face, conduct which would be considered serious misconduct. (Undisputed Facts ##100-104, *supra*) It is also undisputed that at the time of the incident, Sergeant Smith already had a written reprimand in his file for inappropriate behavior. (Undisputed Fact #103, *supra*) According to the deposition testimony of Major Spaulding, who was in charge of daily operations of the jail, it was originally recommended that Sergeant Smith be suspended without pay for two days. (Spaulding Deposition, 11:2-12, attached as Plaintiff's Exhibit 8) The Undisputed Facts, however, show that Sergeant Smith only received a written reprimand and 90 days probation. (Undisputed Fact #102, *supra*). At this stage in the analysis, the Court finds that Grissom has provided the minimal showing required to establish a *prima facie* case of age discrimination when it comes to discipline and demotion. See Smith v. Allen Health Sys., Inc., 302 F.3d 827, 833 (8th Cir. 2002) (noting that the McDonnell Douglas system of proof only requires a minimal showing at the *prima facie* stage).

With regard to whether there was additional evidence of age discrimination in Grissom's termination, courts often look to determine whether the plaintiff was replaced with someone

38

substantially younger.  Haigh, 632 F.3d at 468; cf. Carraher v. Target Corp., 503 F.3d 714, 719 (8th

Cir. 2007) (finding that hiring of replacement that is substantially younger than plaintiff may be

sufficient evidence under fourth element to create presumption of discrimination under McDonnell

Douglas, but is not in itself sufficient to meet plaintiff's overall burden of persuasion).  In attempting

to meet this element, Grissom relies on a factual statement he submitted that relies on Plaintiff's

Exhibit 15, which this Court, *supra*, has determined is not properly before the Court.  Nevertheless,

because the conduct described above with regard to a younger employee slapping a handcuffed

employee is considered serious misconduct, sufficient that termination might have been warranted,

the Court will assume that Grissom has met the minimal showing required under the *prima facie*

case to go forward on whether his termination was based on age.

b.     <u>Defendants' Reasons for Demoting and Discharging Grissom</u>

Defendants argue that they had legitimate, non-discriminatory reasons in demoting and

finally terminating Grissom based on his poor work performance and poor attitude. (Doc. #52 at 34)

Starting in January of 2009, defendants began speaking with Grissom regarding his work

performance and attitude.  (Undisputed Facts ## 11-12, 17-20, *supra*)   In May of 2009, Sergeants

Smith and Cantor as well as Lieutenant Jenkins spoke with other employees about Grissom's work.

They were informed by the employees that Grissom was disgruntled, the employees did not feel safe

working with him and they considered him a liability. (Undisputed Fact # 24, *supra)*  The officers

advised that Grissom did not perform security rounds, did not go to the top tier and avoided writing

reports. (Undisputed Fact # 25, *supra*) The other officers advised that Grissom did not perform at

the level of a corporal and did not display the leadership qualities expected of a corporal.

(Undisputed Fact # 26, *supra*) This information was conveyed to Grissom in writing as part of a

39

Counseling Report dated May 10, 2009. (Undisputed Fact # 29, *supra)* In responding to defendants' proposed undisputed facts, plaintiff denied all of these allegations including that he was disgruntled. (Undisputed Facts ## 24-26, *supra*) However, in his deposition, Grissom admitted that during 2009 he was "disgruntled or pissed off" which he attributed to his treatment by defendants. (Undisputed Fact # 43, *supra*)

A written counseling report was provided to Grissom in May of 2009. Under the Goals and Objectives for Improvements section of the Counseling Report, Grissom was to:

1.    Maintain a more positive attitude at work.
2.    Make security rounds during inmate recreation and after evening lockdown, as per policy.
3.    Write reports when necessary. Use the proper reporting forms with better detail and grammar.
4.    Do not complain and spread rumors. Use proper channels to improve morale.
5.    Show pride and initiative in your job performance.

(May 10, 2009 Counseling Report, attached as Plaintiff's Exhibit 5; see Undisputed Facts ## 27-35, *supra*) Based upon Grissom's perceived failure improve in "key areas," as outlined in the counseling report, Major Spaulding recommended that the Sheriff demote plaintiff and place him on six months probation. (Undisputed Facts ## 36 and 37, *supra*)

Less than a month after Grissom's receipt of the Counseling Report, Major Spaulding sent a memo to Sheriff Arnott noting six instances in which Grissom failed to meet the goals and objectives of the counseling report. (June 16, 2009 Memorandum from Spaulding to Arnott, attached as Plaintiff's Exhibit 6, Undisputed Fact # 61, *supra*) The failures included submitting three incomplete reports, failing to pass out razors to inmates, failing to follow established procedures and allowing inmates to have chairs in the recreation yard. (June 16, 2009 Memorandum from Spaulding to Arnott, attached as Plaintiff's Exhibit 6) The memorandum also references

40

Officer Grissom's continued lack of effort. (Undisputed Fact # 61, *supra*)  Based upon this report and the prior performance review which was attached to the memorandum, Sheriff Arnott made the decision to terminate plaintiff. (Undisputed Facts ## 69 and 70)

The Court finds that defendants have successfully articulated legitimate, non-discriminatory reasons for Grissom's termination.  See Hannoon v. Fawn Eng'g Corp., 324 F.3d 1041, 1049 (8th Cir. 2003) (finding poor work performance as a legitimate, non-discriminatory basis for termination); Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1316-17 (8th Cir. 1996) (finding that the plaintiff's negative work attitude was a legitimate, non-discriminatory basis for plaintiff's termination).

### c.  Grissom's Pretext Claim

The next step under McDonnell Douglas is to determine whether the articulated legitimate, non-discriminatory reasons are pretextual.  A plaintiff can prove pretext "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Jones v. Nat'l American Univ., 608 F.3d 1039, 1046 (8th Cir. 2010) (quoting Fitzgerald v. Action, Inc., 521 F.3d 867, 872 (8th Cir. 2008)).  Thus, in order to avoid summary judgment, Grissom must "'present evidence that creates a question of material fact as to whether [the Defendants'] proffered reason[s] [are] pretextual and that creates a reasonable inference that age was a determinative factor in [the] decision to [demote and ultimately] discharge [him].'" Rahlf v. Mo-Tech Corp, Inc, 642 F.3d 633, 638 (8th Cir. 2011)(quoting Regel v. K-Mart Corp., 190 F.3d at 880 (8th Cir.1999)).  The burden of proving age was the "but-for" cause of the adverse employment action remains at all times with the

plaintiff. <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S.167, 129 S.Ct. 2343, 2351 (2009). Thus, Grissom must show that defendants' stated reasons were pretextual and "that age discrimination was the real reason." <u>Tusing v. Des Moines Indep. Cmty. Sch. Dist.</u>, 639 F.3d 507, 516 (8th Cir. 2011).

A plaintiff may show that the stated reasons are pretextual by establishing that similarly situated employees were treated differently. <u>Martinez v. W.W. Grainger, Inc.</u>, 664 F.3d 225, 230 (8th Cir. 2011). However, in order to do so, the similarly situated employees must be similarly situated in all respects. <u>Amini v. City of Minneapolis</u>, 643 F.3d 1068, 1076 (8th Cir. 2011). Thus "the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." <u>E.E.O.C. v. Kohler Co.</u>, 335 F.3d 766, 776 (8th Cir. 2003).

Grissom argues that Sergeant Canter is similarly situated to him and was not disciplined for his actions. Grissom points out that Sergeant Canter made typographical errors on the May 10 Counseling Report and made errors in the meal tray count, but was not terminated, demoted or otherwise disciplined for his misconduct. (Doc. #103, at 71; Undisputed Facts ##105-109, *supra*) Sergeant Canter, however, is not similarly situated to Grissom in all respects. Grissom was demoted and ultimately terminated for multiple reasons, including his poor attitude, failing to make rounds and allowing inmates to have chairs in the recreation yard. There is no evidence that Sergeant Canter failed to make rounds, allowed inmates to have chairs in the recreation yard or had a poor attitude. Therefore, Grissom is not similarly-situated to Sergeant Canter.

Grissom also compares himself with Sergeant Smith who was disciplined for slapping a handcuffed inmate. Without commenting on whether such conduct is of a similar nature, this Court notes that there is no indication of when the incident took place. It is undisputed that when Arnott

became the sheriff in January of 2009, he "wanted the Greene County Sheriff's Department to operate at high standards" and instructed supervisors to keep track of employees' work performance. (Undisputed Facts ##3 & 4, *supra*)  To be similarly situated, there has to be some showing that the slapping occurred after Arnott became sheriff.[23]  Without knowing the date of the slapping incident, this Court is unable to determine whether Sergeant Smith was similarly situated.  While all reasonable inferences should be accorded to the nonmoving party at the summary judgment phase, the nonmoving party must present some evidence in order to justify such inferences.  Grissom has failed to do so in this case.

Additionally, Grissom contends that Defendants failed to follow the written policy on discipline in demoting and terminating him.  However, Grissom makes no showing that the written policies were followed for others, particularly younger employees.  Seventeen employees were terminated between 2008 and 2009, but no information has been provided concerning what procedures were utilized in these terminations.  Thus, in the circumstance of this case,  insufficient evidence has been presented to demonstrate that the failure to follow written policies and procedures is evidence of pretext.

Grissom also contends that the incidents of misconduct used to support his termination never

---

[23] Grissom also argues that the individuals depicted in Plaintiff's Exhibit 13 were not demoted or terminated for their misconduct.  As discussed *supra*, Plaintiff's Exhibit 13 which is a series of photographs has not been properly authenticated and cannot therefore be used to defeat summary judgment.  Because Grissom has failed to provide any indication as to who the individuals in the photographs were, when the photographs were taken (both the date and at what point in the employees' shifts the photographs were taken) this Court cannot determine whether the individuals were similarly situated to Grissom.  In fact, in reviewing the deposition testimony of Jenkins, it appears that at least some of these photographs were taken in 2007, at a time when Arnott was not the sheriff.  (Jenkins Deposition, 60:21-25, 61:1-6)  Thus, even if those photographs could be used to overcome summary judgment, there is not a sufficient showing that the individuals in the photographs were similarly situated.

43

occurred or were the result of another employee tampering with his reports. (Doc. #103, at 75-76, 78-79)  The Eighth Circuit has stated that:

> The normal rule in discrimination cases is that if an employer honestly believes that an employee is terminated for misconduct, but it turns out later that the employer was mistaken about whether the employee violated a workplace rule, the employer cannot be liable for discrimination.  If the employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected status or activity. 'The relevant inquiry is whether the [employer] believed [the employee] was guilty of the conduct justifying discharge.'

Richey v. City of Independence, 540 F.3d 779, 784 (8th Cir. 2008).  Grissom has denied that he committed certain acts of misconduct.  However, the inquiry is not on whether Grissom actually committed the misconduct, but rather whether the articulate reasons were pretextual.  Grey v. City of Oak Grove, Mo., 396 F.3d 1031, 1035 (8th Cir. 2005).  Grissom argues that Defendants failed to show proof of the misconduct, however, Grissom's 2009 Performance Log and the May 10, 2009 Counseling Report were made contemporaneous with his misconduct and are sufficient proof of the misconduct.  Therefore, Grissom's present denials of events and his general allegation that someone was tampering with his reports, is insufficient to show pretext.

Grissom has provided no other evidence of age discrimination.  For example, it does not appear that the defendants' stated reasons for Grissom's demotion and termination shifted over time. Jones, 608 F.3d at 1046-47 (finding that changes in an employer's articulated reasons for the adverse employment decision was sufficient proof of pretext).  Nor has Grissom shown that defendants, or others involved in his demotion and termination, made statements evidencing a preference for younger workers.  See Baker v. Silver Oak Senior Living Mgmt. Co., L.C., 581 F.3d 684, 688 (8th Cir. 2009) (finding, among other things, statements from individuals involved in the termination of plaintiff showing a preference for younger workers was sufficient evidence for the plaintiff to

44

survive summary judgment). In fact, there is no evidence that the defendants independently noted Grissom's age in any manner.[24] See Corneveaux v. CUNA Mut. Ins. Group, 76 F.3d 1498, 1504 (10th Cir. 1996) (noting that the individual making the hiring decision noted the age of the applicants on the applicants' resume or other related documents). Even looking at the limited amount of statistical information properly before the Court regarding disciplined, demoted and terminated employees does not lead this Court to find that the defendants' articulated reasons for demoting and terminating Grissom were pretextual.

Grissom has also offered evidence of his positive performance reviews prior to 2009 as evidence of pretext and/or discrimination. (Undisputed facts ## 120-140, *supra*) However, it is undisputed that Sheriff Arnott, upon being sworn in on December 31, 2008, wanted the Department to operate with high standards. (Undisputed Fact # 3, *supra*) He instructed supervisors to keep track of the performance of the employees they supervised. (Undisputed Fact # 4, *supra*) There is no

---

[24] Grissom's actual age was never brought up in the evidence provided to this Court. Inferences to Grissom's status as an older worker do appear in the written evidence in relation to Grissom's intent to file an age discrimination claim. The first mention was in Grissom's 2009 Performance Log where it indicated that Grissom told another employee that he was going to sue the county for age discrimination. (Grissom's 2009 Performance Log, attached as Plaintiff's Exhibit 2, at Bates Stamp 00092) The second mention was in a memorandum dated May 14, 2009 from Sergeant Canter to Coonrod, Clayton and Major Spaulding. (May 14, 2009 Memorandum from Canter to Coonrod, Clayton and Spaulding, attached as Plaintiff's Exhibit 9) There is no indication that Arnott saw the May 14, 2009 Memorandum prior to making the decision to demote and ultimately terminate Grissom. Neither Grissom's original complaint nor his First and Second Amended Complaints contained a retaliation claim. (Doc. ##1, 11, & 23) On March 9, 2011, nearly twenty months after the filing of his original complaint, Grissom sought leave to file a third amended complaint, adding a claim for retaliation. (Doc. #47) On July 26, 2011, this Court denied Grissom's request to add a retaliation claim finding that Grissom failed to show good cause in order to modify the scheduling order in large part because he failed to show diligence in complying with the scheduling order. (Doc. #72, at 5-7) This Court further noted that Grissom was aware of the possible retaliation claim by the time he received the response to his first request for production, if not earlier. (Doc. #72, at 6-7) A claim for retaliation, therefore, is not part of this case.

evidence that these higher standards were only to apply to older employees. These increased expectations were referenced in the May 11, 2009 Memorandum from Major Spaulding to Sheriff Arnott wherein in recommending demotion, Major Spaulding noted that "I believe this is the appropriate action and will demonstrate consistency in the application of our ever increasing standards across the department." (Undisputed Fact # 62 and Plaintiff's Exhibit 16, *supra*)

Thus, Grissom has failed to present any evidence that the defendants articulated reasons were pretextual and that age discrimination was the real reason for his demotion and termination.[25] For the reasons set forth above, defendants' motion for summary judgment is granted.

## IV. CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment (doc. #51) is granted. It is further

ORDERED that Defendants' Motion for leave to file excess pages (doc. #104) is denied as moot.

_/s/ Sarah W. Hays_
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

---

[25]It should be noted that in analyzing the undisputed facts pursuant to the McDonnell-Douglas analysis, the only named defendant whose actions were at issue is Sheriff Arnott, the acknowledged decision maker. No evidence has been offered that Jeff Coonrod or Kenneth Clayton took any actions with respect to plaintiff's demotion or termination. Defendant Jenkins met with plaintiff in January and March of 2009, concerning performance issues. In May of 2009, Jenkins again spoke with Grissom about his performance and signed a Counseling Report prepared by Sergeant Cantor which Grissom was also required to sign. However, the decisions to demote and terminate plaintiff were made by Sheriff Arnott. In each instance the action taken had been recommended to Sheriff Arnott by Major Spaulding, who is not a named defendant.